**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| MARVELLOUS KEENE, | : *DEATH PENALTY CASE* |
| Petitioner, | : *No Scheduled Execution Date* |
| vs. | : Case No. C-1-00-421 |
| BETTY MITCHELL, *et al.,* WARDEN, | : JUDGE BECKWITH |
| Respondents. | : MAGISTRATE JUDGE MERZ |

## PETITIONER'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

John S. Marshall (0015160)
111 West Rich Street, Suite 430
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

Rayl L. Stepter (0047505)
111 West Rich Street, Suite 430
Columbus, Ohio 43215-5296
(614) 463-9790
Fax: (614) 463-9877
Attorneys for Petitioner

## TABLE OF CONTENTS

Table of Authorities.................................................................................................v

I.  The Magistrate Judge Erred In Denying Petitioner's First, Second, Third, Fourth, Twenty-Second, And Twenty-Third Grounds For Relief When It Ruled That The Ohio Supreme Court's Decision Did Not Result In One That Was Contrary To Or Which Was An Unreasonable Application Of Clearly Established Federal Law.........................................1

    A.  First Ground For Relief.................................................................2

        1.  Due Process Rights.........................................................4

        2.  Equal Protection Violation...............................................7

        3.  Eighth Amendment Rights................................................8

    C.  Second Ground For Relief..............................................................9

    D.  Third Ground For Relief.................................................................9

    E.  Fourth Ground For Relief.............................................................10

II.  Fifth Ground For Relief........................................................................10

    The Magistrate Judge Erred In Refusing To Permit Discovery And A Hearing Upon The Presentation Of Sufficient Evidence Of Selective Prosecution In Montgomery County (Petitioner's Fifth, Sixth, Eighth, And Fourteenth Amendments To The United States Constitution)

    A.  Request For Discovery.................................................................10

    B.  Request For A Hearing................................................................14

III.  Sixth Ground For Relief.......................................................................15

    The Magistrate Judge Erred By Failing To Grant Mr. Keene's Motion To Dismiss The Capital Indictment Against Him On The Basis Of The Montgomery County Prosecutor's Demonstrated Racial Bias In Seeking The Death Penalty In Violation Of The Fifth, Sixth, Eighth, And Fourteenth Amendments To The United States Constitution

i

IV.    Eighth Ground For Relief..............................................................................................17

The Magistrate Judge Erred In Failing To Grant Petitioner's Motion For Change Of Venue, Effectively Forcing Him To Involuntarily Waive His Constitutional Right To A Jury Trial, In Violation Of The Fifth, Sixth, Eighth, And Fourteenth Amendments To The United States Constitution

V.    Ninth Ground For Relief.......................................................................................18

The Trial Court Erred In Failing To Suppress Identification Of Mr. Keene When The Identification Procedures Employed In The Case At Bar Were So Unduly Suggestive As To Give Rise To A Very Substantial Likelihood Of Irreparable Misidentification In Violation Of Mr. Keene's Rights Under The Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution

VI.    Tenth Ground For Relief .......................................................................................20

The Magistrate Judge Erred When It Denied Petitioner's Tenth Ground For Relief. ("When A Trial Court Is Aware Of A Capital Defendant's Propensity To Acquiesce To Authority Figures, It Is Error To Accept A Jury Waiver And Permit A Capital Trial To Proceed Before A Three Judge Panel, In Violation Of The Fifth, Sixth, Eighth, Ninth, And Fourteenth Amendments To The United States Constitution.")

VII.    Eleventh Ground For Relief .................................................................................27

The Trial Court Erred When It Failed To Suppress The Statements Of Mr. Keene To The Dayton Police Department Because The Statements Were Involuntary And Mr. Keene Did Not Make A Knowing And Intelligent Waiver Of His Rights. The Trial Court's Action Denied Mr. Keene His Rights To A Fair Trial, Due Process And A Reliable Determination Of His Guilt And Sentence As Guaranteed By The Fifth, Sixth, Eighth, And Fourteenth Amendments To The United States Constitution

VIII.    Twelfth Ground For Relief ...................................................................................29

The Trial Court Erred By Admitting Evidence Over Objection When The State Failed To Show That Physical Evidence Offered At Trial Was Not Substantially In The Same Condition As It Was At The Time Of The Crime. The Admission Of Such Evidence Violated Mr. Keene's Rights To Due Process, A Fair Trial And A Reliable Verdict Under The Fifth, Sixth, Eighth, And Fourteenth Amendments To The United States Constitution

IX.     The Magistrate Judge Erred When It Denied Petitioner's Fourteenth Ground For Relief.
        ("The State Failed To Introduce Sufficient Evidence To Convict Mr. Keene Of
        Aggravated Murder And Therefore His Conviction Deprived Him Of Substantive And
        Procedural Due Process As Guaranteed By The Fifth, Sixth, Eighth, Ninth And
        Fourteenth       Amendments        To       The       United       States
        Constitution.")..............................................................................................................30

X.      The Magistrate Judge Erred When It Denied Petitioner's Fifteenth Ground For Relief.
        ("The Trial Court Erred By Allowing The State To Repeatedly Introduce Other Acts
        Evidence At Mr. Keene's Trail, And Thus Denied His Rights To A Fair Trial, Due
        Process And A Reliable Determination Of His Guilt And Sentence As Guaranteed By
        The Fifth, Sixth, Eighth, Ninth And Fourteenth Amendments To The United States
        Constitution. [As Noted Above, This Claim Is Dismissed Insofar As It Makes A Claim
        That The Admission In Evidence Of A Pair Of Fila Gym Shoes Was Improper 'Other
        Acts' Evidence].")...........................................................................................................31

XI.     The Magistrate Judge Erred When It Denied Petitioner's Sixteenth Ground For Relief.
        ("The Trial Court Erred By Allowing The State To Introduce Repeated Instances Of
        Victim Impact Testimony During The Culpability Phase Of Mr. Keene's Capital Trail In
        Violation Of Ohio Rev. Code §§2943.041 And 2945.07, And The Fifth, Sixth, Eighth,
        Ninth,     And     Fourteenth      Amendments       To      The      United      States
        Constitution.")..............................................................................................................31

XII.    The Magistrate Judge Erred When It Denied Petitioner's Seventeenth Ground For Relief.
        ("The Prosecutor's Misconduct During Marvallous Keene's Trail Denied Mr. Keene His
        Substantive And Procedural Due Process Right To A Fair Trial As Guaranteed By The
        Fifth, Sixth, Eighth, Ninth, And Fourteenth Amendments To The United States
        Constitution. [As Noted Above, This Claim Is Dismissed  To The Extent That It Is Based
        Upon The Prosecution's Statements Regarding Jones Pettus During The Mitigation
        Phase].") .......................................................................................................................32

XIII.   The Magistrate Judge Erred When It Denied Petitioner's Eighteenth Ground For Relief.
        ("The Trial Court Erred By Admitting The Testimony Of Nicholas Woodson Which Was
        Irrelevant, Highly Prejudicial, Used To Show Propensity, In Violation Of ... Mr. Keene's
        Right To Substantive And Procedural Due Process As Guaranteed By The Fifth, Sixth,
        Eighth, Ninth, And Fourteenth Amendments To The United States Constitution.").......32

XIV.    The Magistrate Judge Erred When It Denied Petitioner's Nineteenth Ground For Relief.
        ("The Ineffective Assistance Of Counsel Provided To Mr. Keene Violated His Rights To
        A Fair And Impartial Jury Trial And Sentence, As Guaranteed By The Fifth, Sixth,
        Eighth, Ninth And Fourteenth Amendments To The United States Constitution.").......32

XV.    The Magistrate Judge Erred When It Denied Petitioner's Twenty-First Ground For Relief. ("Simultaneously Sentencing On The Charges Of Felony Murder And On The Substantive Underlying Felony Charge Violates The Double Jeopardy Clauses Of The United States Constitution In Violation Of Mr. Keene's Right To Due Process, In Violation Of Mr. Keene's Rights Under The Fifth, Sixth, Eighth, Ninth And Fourteenth Amendments To The United States Constitution.") ........................................................33

XVI.    The Magistrate Judge Erred When It Denied Petitioner's Twenty-Second Ground For Relief. ("In The Event That This Court Should Find That The Robbery And Burglary Of Mr. Wilkerson Arose From The Same Act Or Indivisible Course Of Conduct, Then The Trial Court Erred By Refusing Mr. Keene's Request To Merge These Capital Specifications, Thus Artificially Inflating The Number Of Aggravating Circumstances In Violation Of The Fifth, Sixth, Eighth, Ninth, And Fourteenth Amendments To The United States Constitution.") ........................................................33

XVII.    The Magistrate Judge Erred When It Denied Petitioner's Twenty-Third Ground For Relief. ("When An Error In The Trial Record Is Brought To The Attention Of The Trial Court And The Trial Court Denies A Motion To Correct The Record, A Capital Appellant Is Denied His Rights To Due Process Of Law, An Adequate Appellate Review, And A Reliable Determination Of His Guilt And Sentence As Guaranteed By The Fifth, Sixth, Eighth, Ninth And Fourteenth Amendments To The United States Constitution.")........................................................34

XVIII.    The Magistrate Judge Erred When It Denied Petitioner's Twenty-Fifth Ground For Relief. ("Ohio's Death Penalty Scheme Is Unconstitutional And Violated Petitioner Keene's Rights As Guaranteed By The Fifth, Sixth, Eighth, Ninth And Fourteenth Amendments To The United States Constitution. [As Noted Above, This Claim Is Dismissed To The Extent That It Includes A Claim That Ohio's Death Penalty Scheme Violates International Law.]")........................................................34

XIX.    The Magistrate Judge Erred When It Denied Petitioner's Twenty-Eighth Ground For Relief. ("Petitioner Keene Was Denied His Right To Counsel, Due Process, Equal Protection, A Fair Proceeding, An Impartial Tribunal, A Reliable Sentence, And An Adequate Corrective Process During His Post-Conviction Proceedings, In Violation Of Mr. Keene's Rights Under The Fifth, Sixth, Eighth, Ninth And Fourteenth Amendments To The United States Constitution.")........................................................35

Certificate of Service........................................................36

# TABLE OF AUTHORITIES

<u>Cases</u>

*Blystone v. Pennsylvania,* 494 U.S. 299 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Bram v. United States,* 168 U.S. 532 (1897) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Bush v. Gore,* 531 U.S. 98 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*California v. Brown,* 479 U.S. 538 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Chicago Council of Lawyers v. Bauer,* 522 F.2d 242 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Clemons v. Mississippi,* 494 U.S. 738 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965) . . . . . . . . . . . . . . . . . . . 16

*Deloach v. Delchamps, Inc.,* 897 F.2d 815 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Easley v. Empire, Inc.,* 757 F.2d 923 (8th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Eddings v. Oklahoma,* 455 U.S. 104 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ercegovich v. Goodyear Tire and Rubber Co.,* 154 F.3d 344 (6th Cir. 1998) . . . . . . . . . . . . . . 10

*Esparza v. Mitchell,* 2002 WL 31453993 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) . . . . . . . . . . . . . . . . . . . . 16

*Fox v. Coyle,* 271 Fed. 3d. 658 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Glasser v. United States,* 315 U.S. 60 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hall v. Washington,* 106 F.3d 742 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Hicks v. Oklahoma,* 447 U.S. 343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hitchcock v. Dugger,* 481 U.S. 393 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hollander v. American Cyanamid Co.,* 895 F.2d 80 (2nd Cir. 1990) . . . . . . . . . . . . . . . . . . . . . 15

*Humphrey v. Cady,* 405 U.S. 504 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) ...................... 16

*Jells v. Ohio,* 498 U.S. 1111 (1991) ................................................. 22

*Lawson v. Warden, Mansfield Corr. Inst.,* 197 F. Supp. 2d 1072 (S.D. Ohio 2002) .......... 5

*Lockett v. Ohio,* 438 U.S. 586 (1978) ................................................ 9

*Malinski v. New York,* 324 U.S. 401 (1945) ...................................... 27

*McCleskey v. Kemp,* 481 U.S. 279 (1987) ........................................ 10

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) ............................ 15

*McKoy v. North Carolina,* 495 U.S. 433 (1990) .................................... 4

*Miranda v. Arizona,* 384 U.S. 486 (1966) ........................................ 26

*Moore v. Dempsey,* 261 U.S. 86, 43 S. Ct. 265, 67 L.Ed. 543 (1923) ..................... 16

*Murphy v. Florida,* 421 U.S. 798, 95 S.Ct. 2035 (1975) ............................ 16

*Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) ..................... 18

*Ohio Adult Parole Authority v. Woodard,* 523 U.S. 272 (1998) ......................... 7

*Patton v. United States,* 281 U.S. 276 (1930) .................................... 20

*Payne v. Arkansas,* 356 U.S. 560 (1958) ......................................... 27

*Penry v. Johnson,* 532 U.S. 782 (2001) ........................................ 8, 10

*Reardon v. Kempiners,* 831 F.2d 690 (7th Cir. 1987) ............................... 15

*Rideau v. Louisiana,* 373 U.S. 723, 83 S. Ct. 1417, 10 L.Ed.2d 663 (1963) ................ 16

*Robertson v. California,* 493 U.S. 879 (1989) .................................... 22

*Roger v. Richmond,* 365 U.S. 534 (1961) ........................................ 27

*Romano v. Oklahoma,* 512 U.S. 1, 12 (1994) ..................................... 4

*Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) .............. 16

*Simmons v. State,* 75 Ohio St. 346, 79 N.E. 555 (1906) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) . . . . . . . . . . . . 18

*Smith v. Monsanto Chemical Co.,* 770 F.2d 719 (8th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . 10

*Sowell v. Anderson,* 2001 WL 1681142 (S.D.Ohio 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*State v. Clayton,* 61 Ohio St. 3d 234, 574 N.E. 2d 472 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*State v. Cooey,* 46 Ohio St.3d 20, 544 N.E.2d 895 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*State v. Davis,* 38 Ohio St. 3d. 361 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*State v. Lawrence,* 44 Ohio St. 2d 24, 541 N.E. 2d 451 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Armstrong,* 517 U.S. 456 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Hazel,* 696 F.2d 473 (6th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Martin,* 704 F.2d 267 (6th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Wade,* 388 US 218 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Village of Willowbrook v. Olech,* 528 U.S. 562 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Village of Arlington Hghts. v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252 (1977) . . . . . . 14

*Wong Sun v. United States,* 373 U.S. 471 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Woodson v. North Carolina,* 428 U.S. 280 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## Statutes

Ohio Rev. Code § 2903.01 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Ohio Rev. Code § 2903.01(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Ohio Rev. Code § 2903.01(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Ohio Rev. Code § 2923.02(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Ohio Rev. Code § 2929.05(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Ohio Rev. Code § 2943.041 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

<u>Other</u>

Federal Evidence Rule 901(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Ohio Rule of, Evidence 901(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

I.    **THE MAGISTRATE JUDGE ERRED IN DENYING PETITIONER'S FIRST, SECOND, THIRD, FOURTH, TWENTY-SECOND, AND TWENTY-THIRD GROUNDS FOR RELIEF WHEN IT RULED THAT THE OHIO SUPREME COURT'S DECISION DID NOT RESULT IN ONE THAT WAS CONTRARY TO OR WHICH WAS AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW.**

In ruling on Mr. Keene's First, Second, Third, Fourth, Twenty-Second, and Twenty-Third Grounds for Relief, the Magistrate's Report and Recommendation (hereinafter "Report") purports to summarize all of the arguments contained in those grounds with the following sentence:

> The thrust of Mr. Keene's argument with respect to his First, Third, Fourth, Twenty-Second, and Twenty-Third Grounds for Relief is that the trial and the Ohio Supreme Court violated his constitutional rights by erroneously considering invalid and constitutionally vague aggravating circumstances and by not properly weighing the evidence that he presented in mitigation or otherwise failing to properly weigh the aggravating circumstances versus the mitigating factors.

(Report, p. 45)

By thus oversimplifying (and in some respects ignoring) both the facts and the legal analysis set forth in Petitioner's Traverse, the Magistrate Judge was able to declare that "… the Ohio Supreme Court's decision did not result in one that was contrary to or which was an unreasonable application of clearly established federal law and those Grounds for Relief should be rejected." (Report, p. 48)  Below, Mr. Keene addresses each Ground for Relief.

**A.**     <u>**First Ground for Relief**</u>

The Magistrate rejected Mr. Keene's First Ground for Relief because "Mr. Keene has failed to identify any decision by the United States Supreme Court on which the Court held a death sentence violative of the Eighth Amendment under facts materially indistinguishable from the facts of his case." (Report, p. 45) The Report also rejects Mr. Keene's arguments by finding that "similarly, Mr. Keene has failed to establish the Ohio Supreme Court resolved a question of law contrary to a controlling decision in the United States Supreme Court" (Report, p. 45) and finally rejects the argument premised on *Woodson v. North Carolina*, 428 U.S. 280 (1976) by asserting that in the U.S. Supreme Court decision in *Blystone [v. Pennsylvania*, 494 U.S. 299, 309 (1990)] "... does not preclude death sentence statutes  like Ohio's which require the imposition of a sentence of death if the statutory aggravating circumstances outweigh the mitigating factors." (Report, p. 46)

It is passing strange that in his 138-page opinion the Magistrate Judge fails to mention the affidavit of one of the three judges who sentenced Mr. Keene to death.  In that affidavit, Judge Bixler admitted that the panel violated Ohio's capital sentencing statute:

> In the deliberations, we did to go through each count of the Indictment and make a determination as to how and whether the mitigation testimony would impact out decision on each Count. Instead, we applied the mitigation evidence to the Indictment as a whole.  In other words, we weighed the aggravating cicumstances of all the Counts I the indictment collectively, against all the mitigating evidence presented.

The Magistrate Judge has utterly ignored the incontrovertable fact that in about one hour, the panel of three judges sentenced Mr. Keene to death, and did so by considering all five counts with their 13 aggravating factors, cumulatively against the mitigating evidence, in direct violation of

Ohio's capital sentencing statute. While we all may be shocked and deeply disturbed by the senseless deaths of five people, the Constitution mandates a different approach than the "just too many bodies" approach taken by the three-judge panel.

In *Woodson v. North Carolina*, 428 U.S. 280 (1976), the Supreme Court explained the need for individualized sentencing in capital cases and its rationale for affording a defendant great leeway in presenting mitigation evidence:

> A process that accords no significance to relevant facets of the character and record of the individual offender or the circumstances of the particular offense excludes from consideration in fixing the ultimate punishment of death the possibility of compassionate or mitigating factors stemming from the diverse frailties of humankind. It treats all persons convicted of a designated offense not as uniquely individual human beings, but as members of a faceless, undifferentiated mass to be subjected to the blind infliction of the penalty of death.

The opinion in *Woodson* went on to specify that unlike individualized-sentencing procedures in noncapital cases that were simply a matter of policy, but that such procedures in capital cases were of *Constitutional* significance:

> While the prevailing practice of individualizing sentencing determinations generally reflects simply enlightened policy rather than a constitutional imperative, we believe that in capital cases the fundamental respect for humanity underlying the Eighth Amendment . . . requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death.

*Id.* n. 3.

As the Ohio Supreme Court has ruled, "Only the aggravating circumstances related to a given count may be considered in assessing the penalty for that count." *State v. Cooey*, 46 Ohio

3

St.3d 20, 38, 544 N.E.2d 895 (1989). The underlying reason is that "each murder [i]s a separate

offense subject to a separate penalty," *id.*, 46 Ohio St.3d at 38:

> [A]dding together the aggravating circumstances of [the] murders in the penalty
> phase[]...denies 'consideration of ... the circumstances of the *particular* offense...'
> that is 'a constitutionally indispensable part of the process of inflicting the penalty
> of death.' (Emphasis added.) *Woodson v. North Carolina* (1976), 428 U.S. 280,
> 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (plurality opinion).

*Id.*

### 1.    <u>Due Process Rights</u>

In essence, the Magistrate Judge has glossed over the due process argument set forth on

pages 17 – 19 of petitioner's Traverse. In *State v. Davis* 38 Ohio St. 3d. 361, 369 (1988) the

Ohio Supreme Court ruled that the compliance with the sentencing statutes is not optional. The,

State "may not adopt a valid statute then decline to carry it out." *Esparza v. Mitchell* 2002 WL

31453993 at (6th Cir. 11502). See also *Fox v. Coyle*, 271 Fed. 3d. 658, 665-666 (6th Cir. 2001).

("A defendant's due process rights may also be infringed upon by a state's failure to adhere to its

own sentencing statute. See *Hicks v. Oklahoma*, 447 U.S. 343, 346....") This is not a case

where a three-judge panel (as the Magistrate Judge would have it) applied a "constitutionally

narrowed aggravating circumstance" (Report, p. 44). Instead it is about the violation of the

sentencing statute upon which Mr. Keene had a due process right to rely. Both the trial court and

the Ohio Supreme Court failed in this regard. The trial court's failure was obvious, and admitted

by Judge Bixler. The Magistrate Judge, however, found that any such failure was, in fact, cured

by the Ohio Supreme Court:

> Appellate court re-weighing of aggravating circumstances and mitigating factors
> may be used to cure a trial court's consideration of an invalid aggravating

4

> circumstances where other valid aggravating circumstances remain. *Romano* [*v. Oklahoma*, 512 U.S. 1 (1994)],. 512 U.S. at 11; *see also Clemons v. Mississippi*, 494 U.S. 738 (1990). Whenever a sentence of death is imposed by a trial court in Ohio, an independent reweighing of the aggravating circumstances and mitigating factors by the Ohio Supreme Court is mandated by statute. Ohio Rev. Code § 2929.05(A).

(Report, p. 44)

But, Keene's First Ground for Relief is not just about an "invalid aggravating circumstance." Instead, it is about a Constitutional violation, which poisoned Mr. Keene's chances of a sentence less than death. Ironically, the Magistrate Judge's analysis is quite different than the very same Magistrate Judge's ruling in *Bobby T. Sheppard v. Margaret Bagley*, Southern District of Ohio Case No. 1:00CV-493, where the same Magistrate Judge found that prosecutorial misconduct could not be "cured" by a reviewing court:

> Independent re-weighing by a reviewing court, however, at least in the context of prosecutorial misconduct, does not cure the resulting prejudice. Instead, only, curative admonishments, and in some cases jury instructions, have been acknowledged as remedies for prosecutorial misconduct in closing arguments. (citations omitted). Thus, the Ohio Supreme Court appears to have propelled the holding of *Clemons v. Mississippi, 494 U.S. 738 (1990)* - that a jury's consideration of an invalid aggravating circumstance may be deemed harmless error after re-weighing by a reviewing court - into the prosecutorial misconduct context. Moreover, it has been noted that in Ohio:
>
> > [T]he jury has the power to spare the capital defendant's life, a power which no court can override. Anyone familiar with the imposition of the death penalty in Ohio realizes that the jury's power is vital to a capital defendant. This Court could locate no decisions in which the trial court or the intermediate appellate court, after re-weighing the aggravating circumstances and mitigating factors, concluded that the jury erroneously imposed the death penalty. The Ohio Supreme Court has on only two occasions reversed the imposition of the death penalty on the basis that the state had failed to prove beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating factors. *State v. Clayton, 61 Ohio St.* 3d 234, 574 N.E. 2d 472 (1991); *State v. Lawrence*, 44 Ohio St. 2d 24, 541 N.E. 2d 451 (1989).

5

*Lawson v. Warden*, Mansfield Corr. Inst., 197 F. Supp. 2d 1072, 1086 (S.D. Ohio 2002).

Because he prosecutor's comments denigrating the integrity of defense counsel and Dr. Smalldon were improper and flagrant, they violated Sheppard's right to due process of law. No curative admonition or jury instruction negated the prejudice suffered by Sheppard as a result of the prosecutor's improper arguments because no such admonition or instruction was given. In addition, the state court's independent review of Sheppard's sentence could not cure the error.

*Sheppard v. Bagley*, Case No. 1:00CV-493, Report and Recommendation, Doc. #94, at p. 70.

Analytically, there is no material difference between prosecutorial misconduct poisoning a jury, and a sentence of death poisoned by collective weighing of aggravating circumstances by a three judge panel---neither constitutional error can be "cured" by a reviewing court, even if that court undertakes to "re-weigh" the factors. As the Court recognized in *Sheppard v. Bagley,* the Constitutional damage has been done, and cannot be undone on appeal:

The state appellate court's determination that the prejudice from the prosecutor's improper statements was cured by the court's independent re-weighing of the aggravating circumstances against the mitigating factors was objectively unreasonable because it effectively deprived the jury of its opportunity to make the first determination as to an appropriate sentence. Where, as in Ohio, "the jury has the power to spare the capital defendant's life, a power which no court can override," correcting prosecutorial misconduct by appellate court re-weighing is especially troublesome. After all, the appellate court only gets the chance to re-weigh the aggravating circumstances and mitigating factors if the jury returns a recommendation of death, in other words, after the damage has been done to the fairness of the defendant's penalty hearing, or even more appropriately, after the jury's opportunity to irrevocably spare the defendant's life has passed.

*Id.*, Doc. #94, at pp. 73-74.

In *Sheppard v. Bagley*, the Magistrate Judge did note that a jury's consideration of an invalid aggravating factor may be deemed harmless error after re-weighing by a reviewing court, citing *Clemons v. Mississippi,* 494 U.S. 738 (1990). In *Clemons,* the Supreme Court found that it

is constitutionally permissible for a State Supreme Court to apply a harmless error analysis to the jury's consideration of an invalid aggravating circumstance. *Id.* 494 U.S. at 739-740. But that is not what happened in here. Instead, the Ohio Supreme Court re-weighed the aggravators and the mitigators and determined that, in it's view, a sentence of death was appropriate. Just like the Petitioner in *Sheppard,* however, the error here constitutionally deprived the three judge panel of the opportunity to decide that one count's aggravators versus the seventeen mitigating factors did not deserve death,.a decision the panel surely could have made, on each of the five counts, had it followed the Ohio statute.

### 2. <u>Equal Protection Violation</u>

The Magistrate's Report also fails to fully address Mr. Keene's equal protection argument, found on pages 19 and 20 of his Traverse.

Mr. Keene was sentenced to death based upon a standard different from that (1) contained in Ohio's statutes and caselaw; (2) followed in Ohio's other 200 capital cases resulting in death sentences; and (3) followed in Ohio's capital cases not resulting in death sentences. *See Bush v. Gore,* 531 U.S. 98, 104-105, 110 (2000) (requiring non-arbitrary treatment of voters in order to assure their fundamental right to equal protection); *Ohio Adult Parole Authority v. Woodard,* 523 U.S. 272, 292 (1998) (O'Connor, J., concurring in part and dissenting in part) (recognizing Equal Protection right in Ohio's clemency decision: "no one would contend that a Governor could ignore the commands of the Equal Protection Clause and use race, religion, or political affiliation as a standard for granting or denying clemency."). Thus, Mr. Keene was treated differently from similarly situated defendants. *See Village of Willowbrook v. Olech,* 528

U.S. 562, 564 (2000) (recognizing precedent of successful equal protection claims brought by a "class of one"). Ohio's failure to treat Mr. Keene the same as similarly situated defendants violated his Equal Protection rights.

### 3.    Eighth Amendment Rights

The Report rejected Mr. Keene's Eighth Amendment argument because "Mr. Keene has not pointed to any case in which the Supreme Court determined that a state court erred in considering an aggravating circumstance which the state court held to be validly applied under state law or in which the state court otherwise failed to properly perform the weighing process.") (Report, p. 45) The fundamental problem with the Magistrate Judge's analysis is that the state courts' failure with respect to Mr. Keene was not the consideration of an improper aggravating circumstance or failing to properly perform "the weighing process." Instead this is a case where Mr. Keene's constitutional rights (including Eighth Amendment rights) were violated when the state courts ignored their own sentencing laws (which as noted, the Supreme Court of Ohio has ruled its courts are not free to ignore. *State v. Davis*, 30 at Ohio St. 3d. 361 (1988)). The purpose of the Ohio sentencing statute, according to the Ohio Supreme Court in *Davis,* is to avoid death penalty sentencing which occurs "... outside the statute which were designed to guide the sentencer's discretion in order to reduc[e]) the arbitrary and capricious imposition of death sentences". *Id.*, 38 Ohio St. 3d. 361 at 369.

Mr. Keene was Constitutionally prejudiced because the panel's failure to follow Ohio's death penalty statutes resulted in a failure to consider and give effect to all mitigating information, contrary to the mandate of *Penry v. Johnson*, 531 U.S. 1003 (2001). Such a failure

8

mandates the granting of the writ. *Id.; see also Hitchcock v. Dugger*, 481 U.S. 393 (1987) (sentencer refused to consider evidence of nonstatutory mitigating circumstances); *California v. Brown*, 479 U.S. 538, 545 (1987) ("the sentence imposed at the penalty stage should reflect a reasoned *moral* response to the defendant's background, character, and crime.") (emphasis in original); *Eddings v. Oklahoma*, 455 U.S. 104, 114-115 (1982) (sentencer may not decide to give mitigating evidence no weight by excluding it from consideration); *Lockett v. Ohio*, 438 U.S. 586, 604-605 (1978) (death penalty statute must not preclude consideration of relevant mitigating factors).

### C.    Second Ground for Relief.

The Magistrate Judge's ruling here simply overlooks the essential point of Mr. Keene's argument: that all the state courts obviously (and in the case of the three-judge panel admittedly) failed to give effect to mitigating evidence, by violating the sentencing statute, and by confusing the mitigating evidence of Mr. Keene's mental disorders with the standard for an insanity defense. Such an approach violates *Eddings v. Oklahoma*, 455 U.S. 104 (1982). (See Traverse, pp. 22-35.)

### D.    Third Ground for Relief.

Here, the Magistrate Judge disposed of Mr. Keene's argument by finding that "There is no clearly-established federal law which requires a sentencing body to spend a minimum amount of time deliberating...." (Report, p. 48) The Magistrate Judge misses the point: "The key under

*Penry* is that the jury is to consider and *give effect to* [a defendant's mitigating] evidence in imposing sentence." *Penry v. Johnson*, 532 U.S. 782, 784 (2001) (emphasis in original).

Whether the deliberation took one hour, or one and a half hours, logic and common sense require a finding that the panel simply could not have found, then "given effect" to 17 different mitigating factors. Would the Magistrate Judge have rejected this Ground for *habeas* relief had the panel deliberated for five minutes? By the Magistrate Judge's logic -- yes. Here, it is likely that no more than five minutes of serious consideration was given to any one of the counts of murder, given the amount of time the court would naturally take to assemble, deliberate, and find the 17 mitigating factors.

### E.    Fourth Ground for Relief.

Mr. Keene objects that the Magistrate Judge erred in rejecting his Fourth Ground for Relief and submits p. 39 of his Traverse in support of his objection.

## II.    FIFTH GROUND FOR RELIEF

THE MAGISTRATE JUDGE ERRED IN REFUSING TO PERMIT DISCOVERY AND A HEARING UPON THE PRESENTATION OF SUFFICIENT EVIDENCE OF SELECTIVE PROSECUTION IN MONTGOMERY COUNTY (PETITIONER'S FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION).

### A.    Request for Discovery.

The controlling Supreme Court decisions in this area are *United States v. Armstrong*, 517 U.S. 456, 465 (1996) and *McCleskey v. Kemp*, 481 U.S. 279 (1987). In order to obtain discovery

10

on a claim of selective prosecution, the defendant must show some evidence of both discriminatory intent and discriminatory effect. *Armstrong,* at 465. The defendant must make a "credible showing" that similarly situated individuals of a different race were not prosecuted. *Id.* at 645. Petitioner Keene maintains that federal law was not properly applied when the State Courts distinguished the cases cited by the Petitioner. Mr. Keene cited two (2) cases: *State of Ohio v. Howe, Polson, and Elofskey* and *State of Ohio v. Matthews.* Both the state court and the Magistrate improperly applied the *Armstrong* precedent, by finding that these cases were not similarly situated to Mr. Keene's situation. This misapplication of precedent involved an extremely narrow construction of the discovery precedent cited in the federal case law. In the context of discrimination law, "similarly situated" means similarly situated in all *relevant* respects and not necessarily similarly situated in *all* respects. *Ercegovich v. Goodyear Tire and Rubber Co.,* 154 F.3d 344 (6th Cir. 1998); *Smith v. Monsanto Chemical Co.,* 770 F.2d 719 (8th Cir. 1985). The courts have mistakenly concluded that Mr. Keene's case needed to be exactly like the other defendants' cases. Mr. Keene maintains that his case is similar in all relevant respects to the case of the Montgomery County Prosecutor's failure to prosecute three white males in *State of Ohio v. Weston Lee Howe, Walter Polson and Tony Elofsky,* (92 CR 1673, Montgomery Cty.) as capital cases.    (See Petitioner's Motion to Expand the Record, filed contemporaneously with this motion)

In *Polson* and *Elofsky,* two individuals were shot and killed when the three defendants (Weston Lee Howe was the only defendant prosecuted for capital murder) expressly agreed to "rob a fag." Ohio Rev. Code §2903.01(B) provides:

> No person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or

11

attempting to commit kidnapping, rape, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or escape.

ORC 2903.01(D) permits an inference that because an individual defendant engaged in a common design with others to commit the offense by force and violence or because the offense in manner of its commission would be likely to produce death, that the defendant intended to cause the death of any person who was killed. Thus, there was more than sufficient evidence for the Montgomery County Prosecutor to indict both Polson and Elofskey for capital murder based upon the circumstances known to the police and prosecutor at the time of the indictment. For instance, there was testimony received in videotaped interviews by the police that defendant Polson had a gun at the time the plan was formed to rob a homosexual. The first decedent, later identified as Mark McDonald, was shot by co-defendant Howe as he reached across the face of co-defendant Elofsky. Tr. 670. The victim fled after he was shot. Defendant Polson admitted to the police in a videotaped interview that he chased the victim after he was shot. (*Id.* pg. 792). He also admits to going through his billfold. *Id.* pg. 795. Elofskey also attempted to use the money card stolen off of the victim. *Id.* pg. 796. This is clear evidence that Mr. Elofskey could have been indicted for capital murder by being part of a plan or scheme to rob Mr. McDonald through the use of violence or force. He was not so indicted.

Regarding the same victim, defendant Polson was also in the vehicle at the time the plan was made to commit a robbery. Defendant Polson knew that Howe had shot at the victim. *Id.* pg. 670-671. Polson also ran after the victim after he had been shot by co-defendant Howe. Polson tried to use the stolen money card. *Id.* pg. 672. Again, there was more than sufficient evidence to indict for capital murder.

The second killing, of Mark Blazer, was also part of the robbery plan. The plan expressly involved the use of guns. Tr. pg. 678. Defendant Polson admitted to firing a shot while in Mr. Blazer's home. *Id.* pg. 679. Defendant Elofskey agreed to telephone Mr. Blazer and ask for permission to come by for a visit. *Id.* pg. 1089. When he arrived, Elofsky brought along co-defendant Polson. The plan was that Howe would be outside and was to shoot Mr. Blazer as he exited his home. Polson admitted to firing a shot. *Id.* Elofsky admitted to the detective investigating the case that all three agreed to rob Mr. Blazer. *Id.* pg. 1100. Co-defendant Elofsky told the police that both Polson and Howe shot Mr. Blazer. *Id.* pg. 1101. Again, both Polson and Elofsky were intimately involved with the scheme to rob Mr. McDonald involving the use of guns, and a killing resulted as a consequence of the robbery. All three could easily have been indicted and tried for capital murder under Ohio Rev. Code 2923.02(B).

The relevant facts for purposes of the "similarly situated" test are that the elements of the crimes in question were present as well as evidence in support thereof. The Magistrate Judge did not spend sufficient time in analyzing these killings in finding that there was no similarly situated case brought before the Court to warrant discovery on a selective prosecution claim. The evidence about these killings is much more than "some evidence" that the petitioner brought forward that warranted discovery.

A similar argument can be made with regard to Mr. Keene's co-defendant, Heather Matthews. As the Magistrate Judge noted, Ms. Matthews was charged with two (2) of the murders, those of Mr. Wilkerson and Ms. Abraham. The Magistrate Judge maintains that because there was no clear evidence that Ms. Matthews actually intended the deaths of either, she was not therefore similarly situated for purposes of an *Armstrong McClesky* analysis.

13

However, Petitioner maintains that this is a much too narrow reading of that precedent. Instead, the cases are similarly situated because both were indicted under Ohio Rev. Code §2903.01 (B). Ms. Matthews was intimately involved in the planning and execution of the deaths of two individuals. She agreed to the robbery of victim Wilkerson. Tr. 39. She handed the gun to the shooter who killed him. Id. pg. 81. She also gave the gun to the shooter who killed victim Sarah Abraham. Tr. 168. She drove the getaway car and knew of the plan. Tr. 166-167. The Court wrongfully held that because Ms. Matthews did not pull the trigger, her case was different from Petitioner Keene. However, under Ohio statute, the defendant need not be the trigger person but need only be involved in the common plan or scheme which resulted in murder. These cases are therefore similarly situated as it pertains to committing or attempting to commit aggravated robbery, or robbery. If nothing more, the prosecution had the videotape of Mr. Keene, wherein he implicated both himself and Ms. Matthews in the killings. By implication, if Mr. Keene's confession were true, then his implication of Ms. Matthews was also true. Instead of using all that evidence against only the African-American defendant, Mr. Keene, the prosecution could have used some of the evidence it had obtained against the white co-defendant, Heather Matthews, and also indicted and prosecuted her for capital murder. Instead, once again, a white defendant in Montgomery County received a term of life in prison while the African-American defendant is on death row.

### B.    <u>Request For A Hearing</u>

The Sixth Circuit has held that a defendant is entitled to a hearing on a claim of prosecutorial discrimination if he presents "sufficient facts to take the question past the frivolous

state and raises a reasonable doubt as to the prosecutor's purpose." *United States v. Hazel*, 696 F.2d 473, 475 (6th Cir. 1983). Due process requires that the Court undertake a sensitive inquiry into the circumstantial and direct evidence of intent as may be available. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977). The above-cited evidence in the Polson, Elofskey and Matthews cases provides sufficient circumstantial evidence of intent to take the question past a frivolous state and raise a reasonable doubt as to the prosecutor's purpose. The state court failed to conduct a hearing on the selective prosecution claim, in violation of Mr. Keene's constitutional rights.

## III.    SIXTH GROUND FOR RELIEF

**THE MAGISTRATE JUDGE ERRED BY FAILING TO GRANT MR. KEENE'S MOTION TO DISMISS THE CAPITAL INDICTMENT AGAINST HIM ON THE BASIS OF THE MONTGOMERY COUNTY PROSECUTOR'S DEMONSTRATED RACIAL BIAS IN SEEKING THE DEATH PENALTY IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

The Magistrate found Mr. Keene's statistics insufficient to warrant dismissal of the capital indictment under federal law. In addition, the Magistrate did not find that the comparative cases cited warranted a dismissal, upholding the Ohio Supreme Court's rejection of statistical data in that it did not satisfy *Armstrong's* requirement of similarly situated defendants who could have been prosecuted but were not. However, this kind of statistical data is relevant and admissible in discrimination cases. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 805 (1973) ("[S]tatistics as to [defendant's] refusal to hire [Plaintiff] ... conform to a general pattern of discrimination against blacks."); *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 84 (2nd

15

Cir. 1990) (statistical evidence may reveal patterns of discrimination thereby increasing the likelihood that the proffered explanation is a pretext for discrimination); *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 820, 821 (5th Cir. 1990) (Plaintiff's use of statistical data supported a finding that the proffered reasons for discharge were pretextual; *Reardon v. Kempiners*, 831 F.2d 690, 698 (7th Cir. 1987) (statistical evidence is admissible to show intentional discrimination in a sex discrimination case); *Easley v. Empire, Inc.*, 757 F.2d 923, 931 (8th Cir. 1985) (pretext evidenced by statistics) in Mr. Keene's case the statistical evidence was accompanied with examples from the *Polson* and *Elofsky* cases cited above. In addition the *Matthews* case, Mr. Keene's co-defendant, was also cited. This is evidence that the prosecutor's decision to seek the death penalty almost twice as many times against African-Americans than whites in a county that is only 17% African-American is "sufficient evidence" to warrant dismissal of Mr. Keene's indictment on the grounds of selective prosecution.


**SEVENTH GROUND FOR RELIEF**

[RULED PROCEDURALLY DEFAULTED]

Petitioner incorporates the arguments and analysis he submitted in previous memoranda, specifically docket nos. 44, 77 and 81.

IV.    **EIGHTH GROUND FOR RELIEF**

**THE MAGISTRATE JUDGE ERRED IN FAILING TO GRANT PETITIONER'S MOTION FOR CHANGE OF VENUE, EFFECTIVELY FORCING HIM TO INVOLUNTARILY WAIVE HIS CONSTITUTIONAL RIGHT TO A JURY TRIAL, IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

The Fourteenth Amendment's Due Process Clause safeguards a defendant's Sixth Amendment right to be tried by "a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). The requirement of impartiality includes the entire atmosphere in which a trial is conducted. *Moore v. Dempsey*, 261 U.S. 86, 43 S. Ct. 265, 67 L.Ed. 543 (1923). Contrary to the Magistrate's Opinion, Petitioner Keene did argue that the deluge of adverse pretrial publicity had an effect on the three-judge panel. On page 49 of the Traverse, he argues:

> Even though this case was tried before a three judge panel, the judges were undoubtedly aware of the pervasive publicity attendant to this case. Judges can be affected by adverse pretrial publicity against a defendant. "It is true that judges, too, are human." *Cox v. Louisiana*, 379 U.S. 559, 565, 85 S.Ct. 476, 481, 13 L.Ed.2d 487 (1965). Mr. Keene's judicial panel was not comprised of life-tenured judges. The threat of prejudicial publicity is entitled to some weight in a bench trial, See *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242, 256-57 (1975). In such a case, due process requires the trial court to grant defendant's motion for a change of venue, *Rideau v. Louisiana*, 373 U.S. 723, 726, 83 S. Ct. 1417, 1419, 10 L.Ed.2d 663 (1963).

The pretrial publicity created both "presumed prejudice" and actual prejudice to extent that *voir dire* would have been meaningless. *Rideau, supra*, 373 U.S. at 726-27, 83 S.Ct. at 1644-45; *Murphy v. Florida*, 421 U.S. at 798-99, 95 S.Ct. at 2035; *see also Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). The judicial panel was also adversely affected as evidenced

by its quick verdict, its improper weighing of aggravators and mitigators, its reliance on non-statutory aggravating circumstances as its belief that death was mandatory. (See Grounds for Relief 1-4). In a jury trial in another jurisdiction, Mr. Keene would have needed only one vote for acquittal amongst a panel of eight as opposed to one vote on a panel of three. Due to the Court's failure to timely rule on the motion for a change of venue and its ultimate denial of that motion, Mr. Keene was forced to select a bench trial over a jury trial, in violation of this Sixth Amendment rights.

V.    **NINTH GROUND FOR RELIEF**

    **THE TRIAL COURT ERRED IN FAILING TO SUPPRESS IDENTIFICATION OF MR. KEENE WHEN THE IDENTIFICATION PROCEDURES EMPLOYED IN THE CASE AT BAR WERE SO UNDULY SUGGESTIVE AS TO GIVE RISE TO A VERY SUBSTANTIAL LIKELIHOOD OF IRREPARABLE MISIDENTIFICATION IN VIOLATION OF MR. KEENE'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

Mr. Keene was identified in a photo array by witness Kathie Henderson. Petitioner Keene argues that the initial identification in the photo array was unduly suggestive because he was the only person in that spread of approximately five (5) photographs that had a very distinctive box like haircut. The Court found that the identification was not unduly suggestive in violation of federal standards and that even if it was, that its effect was not substantial nor so injurious so to have influenced the verdict. The Court maintains that the identification was not unduly suggestive in spite of this photo array because the witness whom allegedly identified Mr. Keene had a clear opportunity to see him because the area was well lit and because she identified in two subsequent proceedings. What the Court mistakenly overlooks is the fact the initial

identification from the unduly suggestive photo array still would have adversely and substantially impacted her courtroom identification in both the suppression hearing and at trial. Witnesses, once they have identified a suspect from a photo array, are more likely to stick to that identification in subsequent courtroom proceedings even if it is wrong. *United States v. Wade,* 388 US 218 (1967). Hence the fact that the conditions may have favored a clear identification, that entire testimony still occurred after the original unduly suggestive identification made in the photo array. Based upon the case of *Wong Sun v. United States,* 373 U.S. 471 (1963), both the identification and all subsequent testimony regarding an identification must be thrown out. This is an error of constitutional dimension. *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972).

The Magistrate Judge found that the unduly suggestive identification did not have a substantial and injurious effect upon the outcome of the trial. However, the impact of improper eyewitness identification is a noted part of federal jurisprudence. "[T]he influence of improper suggestion upon identifying witnesses probably accounts for more miscarriages of justice than any other single factor-perhaps it is responsible for more such errors than all other factors combined." *United States v. Wade,* 388 U.S. at 229. The fact that Mr. Keene may have been misidentified could very well have impacted the judges determining his guilt or innocence. First of all, the judicial panel returned with a verdict against Mr. Keene in an abnormally short deliberative time span. (See Third Ground for Relief). In addition, the Court hastily lumped all aggregators and weighed them against all mitigators. (See First Ground for Relief). In addition, when weighing the impact against the other evidence presented at trial, the court must consider

19

only properly admitted evidence and not that which has been admitted in violation of the Constitution. Petitioner Keene has cited significant constitutional problems with the other pieces of evidence admitted against him at trial. For instance, his identification was unconstitutional (Ninth Ground), his statements were involuntary and not knowingly and intelligently waived (Eleventh Ground), a victim's gym shoes were improperly admitted against him (Twelfth Ground), photographs were unduly prejudicial (Thirteenth Ground) other acts evidence was improperly admitted against him (Fifteenth Ground) and other testimony was unduly prejudicial (Eighteenth Ground). In combination, the errors created a constitutionally deficient trial.

## VI.    TENTH GROUND FOR RELIEF

**THE MAGISTRATE JUDGE ERRED WHEN IT DENIED PETITIONER'S TENTH GROUND FOR RELIEF. ("WHEN A TRIAL COURT IS AWARE OF A CAPITAL DEFENDANT'S PROPENSITY TO ACQUIESCE TO AUTHORITY FIGURES, IT IS ERROR TO ACCEPT A JURY WAIVER AND PERMIT A CAPITAL TRIAL TO PROCEED BEFORE A THREE JUDGE PANEL, IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.")**

The trial judge conducted the following colloquy with Mr. Keene regarding his right to trial by jury:

| | |
|---|---|
| THE COURT: | First of all, do you understand that you are entitled to have your case tried to a jury of twelve people? |
| MR. KEENE: | Yes, sir. |
| THE COURT: | Do you understand that in that event you could not be convicted of any one or more of these charges unless all twelve jurors were to agree on your guilt? |
| MR. KEENE: | Yes, sir. |

THE COURT:        Now, you have the right under the statutes and the
                  Constitution of the State of Ohio to waive or give up that
                  right by jury [*sic*] and have your case tried to a court
                  consisting of three judges. Do you understand that?

MR. KEENE:        Yes, sir.

THE COURT:        Now, after your discussion with your attorneys, do you
                  understand that this is a constitutional as well as a statutory
                  right to trial by jury?

MR. KEENE:        Yes, sir.

THE COURT:        And * * * you fully understand this right?

MR. KEENE:        Yes, sir.

THE COURT:        And you have discussed this with your attorneys on more
                  than one occasion, I'm sure. Is that right?

MR. KEENE:        Yes, sir.

THE COURT:        And after giving careful consideration to it, is it your
                  Desire to waive--and again by that I mean give up your
                  right to trial by jury and proceed before a three-judge
                  panel?

MR. KEENE:        Yes, sir.

THE COURT:        Do you understand that the panel will consist of the
                  Court—this Court * * * and two other judges to be
                  designated by the Chief Justice * * * ?

MR. KEENE:        Yes, sir.

After Mr. Keene signed the waiver form, the trial judge then continued:

THE COURT:        Before the Court accepts these waivers, Mr. Keene, has anyone
                  promised you anything in order to get you to give up that right?

MR. KEENE:        No, sir.

THE COURT:        Has anyone threatened you or otherwise brought pressure upon

21

|  | you, twisted your arm, to get you to give up that right? |
|---|---|
| MR. KEENE: | No, sir. |
| THE COURT: | * * * I understand, therefore, that it's under careful consideration, consultation * * * with your attorneys that you feel it is in your best interests to proceed in this manner? * * * |
| MR. KEENE: | Yes, sir. |

(Exhibit F to Traverse). This waiver was not knowing, intelligent or voluntary. *Patton v. United States*, 281 U.S. 276, 313 (1930). Every reasonable presumption should be made against a waiver, especially when it relates to a right or privilege deemed so valuable as to be secured by the constitution. *Simmons v. State*, 75 Ohio St. 346, 352, 79 N.E. 555 (1906). The burden of assuring that a jury waiver is knowing, intelligent, and voluntary falls not just upon the defendant and his attorneys, but also upon the trial court. *Patton, supra*, 281 U.S. at 313.

At the time the jury waiver proceeding occurred, the trial court was aware of Mr. Keene's psychological deficits which made it difficult, if not impossible, for him to make knowing and voluntary decisions. Before this proceeding, the trial court heard extensive, undisputed expert testimony from Dr. Eugene Cherry regarding Mr. Keene's ability to act with the requisite knowledge for a proper waiver. Pre-Trial Tr. 243-272 (7/3/93 Hrg.). According to Dr. Cherry, Mr. Keene is a naïve, immature person, as well as a "rather passive, dependent type of individual." *Id.* at 246. In relation to Mr. Keene's purported waiver of his Miranda rights, Dr. Cherry said:

> I feel that **he did not by virtue of the fact of not being required to actively assert his understanding of the rights, knowingly waive those rights**. Now, "intelligently" I think has to do more, I believe, with his particular mental state due to his intoxication at the time, also his particular naivete with this particular situation. ...

22

> I think he's more of a follower. **He's more of a passive, dependent type of person who has complied with what others around him wish to do,** and I think this is a primary reason why .... he would acquiesce to [giving up] these rights. ... I just believe that it's just a genuine personality style of Mr. Keene.

Pre-Trial Tr. 256-258 (7/3/93 Hrg.) (emphasis added).

Similarly, with respect to the jury waiver, Mr. Keene was **not** asked to "actively assert his understanding of the rights" he was giving up, and thus he did not knowingly waive those rights. *Id.* He was instead a mere follower, passively complying with what he thought the judge and his attorneys wanted to hear. By failing to act on the insights into Mr. Keene's personality that it gained from Dr. Cherry, the trial court failed to discharge its constitutional responsibility to "jealously preserve" Mr. Keene's right to trial by jury. *Patton, supra,* 281 U.S. at 312.

Several remarks by the trial court also indicated that it was abdicating its responsibilities and relying on the unfounded assumption that Mr. Keene's attorneys had explained the jury waiver to him. For example, the court noted before accepting the jury waiver that "I'm sure that Mr. Monta and Mr. Adkins, in their very experienced manner, have gone over this several times with you." Pre-Trial Tr. 2 (9/23/93 Hrg.). The trial judge relied upon what he was "sure" Mr. Keene's attorneys had told him about the waiver no less than five (5) times during the short discussion on jury waiver. Pre-Trial Tr. 2, 3, and 5 (9/23/93 Hrg.).

The trial court's duty to inform Mr. Keene of the relevant circumstances and likely consequences of a jury waiver is a "serious and weighty responsibility" that exists independently of the acts or omissions of counsel. *Glasser v. United States,* 315 U.S. 60, 71-72 (1942). Courts should not assume that defense counsel have apprised a capital defendant of the considerations relevant to a decision to waive his right to a jury:

23

> A presumption that defendant's counsel will always inform him of the relevant factors in a decision to waive constitutional rights amounts to a rule that all waivers made after the defendant has retained counsel necessarily will be considered voluntary, knowing, and intelligent. Such a rule offends common sense and impermissibly strips a defendant of constitutional protections long recognized by this Court.

*Jells v. Ohio*, 498 U.S. 1111, 1115 (1991) (Marshall, J., dissenting from denial of certiorari)

(quoting *Robertson v. California,* 493 U.S. 879, 881 (1989)).

Because of the rote, mechanical responses of Mr. Keene, the trial court's failure to take into account undisputed psychological evidence regarding Mr. Keene's inability to make knowing and voluntary waivers, and the trial court's assumption that Mr. Keene's attorneys had adequately informed him of his rights, the jury waiver in this case cannot stand. The transcript does not contain "persuasive evidence" of a knowing, intelligent, and voluntary waiver as required by the constitution. *Humphrey v. Cady*, 405 U.S. 504, 517 (1972).

Additionally, the waiver is invalid because "the trial court failed to inform petitioner or to insure that he understood that a jury in a capital murder case had to unanimously return *two* verdicts against him--one finding him guilty, and the other recommending death--before the trial judge could impose a death sentence." *Sowell v. Anderson*, 2001 WL 1681142 at *1 (S.D.Ohio 2001) (Sargus, J.) (finding waiver colloquy invalid on this basis). The record fails to show that Mr. Keene "understood and comprehended the unique role of a jury in a capital murder trial." *Id*. "Under Ohio law, only in a death penalty case does a jury play an important role in determining the sentence, in addition to determining guilt. Only if a unanimous verdict is reached by all jurors in favor of death may an Ohio court impose a death sentence. Neither the trial court nor petitioner's counsel explained this critical distinction to petitioner before he waived his right to a trial by jury." *Id*. Judge Sargus granted the writ in *Sowell* despite:

24

...the fact that petitioner was convicted of a brutal murder and attempted murder. Further, from the Court's review of the record, the evidence of guilt in this case is strong if not overwhelming. As painful as it may be to issue a writ in this case, the fundamental right to a trial by jury means nothing if such right applies only to sympathetic defendants.

*Sowell*, 2001 WL 1681142 at *3. In granting the writ, he gave the State of Ohio the following

options:

... the State of Ohio may, consistent with this Order, elect to retry Sowell by empanelling a jury, assuming a valid waiver is not made, to decide both guilt and sentencing issues. Alternatively, the State of Ohio may elect to stand on the verdict of conviction returned by the three judge panel and impose any sentence permissible under Ohio law which does not include death, a sentence available only after a jury's recommendation or valid waiver of jury trial, both of which are lacking in this case.

*Id.* (footnotes omitted).

In both the *Sowell* case and the case at bar, the trial court failed to inform the defendant

of (1) his right to participate in the selection of the jurors, *United States v. Martin*, 704 F.2d 267,

273, 272 (6th Cir. 1983); (2) his eligibility for the death penalty despite waiving a jury; (3) that in

a jury trial the jurors would determine whether certain punishment, (*i.e.,* the death penalty),

could be imposed; (4) that the jurors would have to be unanimous before he could be sentenced

to death; (5) that one juror could prevent a recommendation of the death penalty, *Hall v.*

*Washington*, 106 F.3d 742, 753 (7th Cir. 1997), and (6) that a jury recommendation of life was

binding on the court. *Id.* at *6. Because Mr. Keene was uninformed of these essential

ingredients to a valid waiver, this Court must grant the writ and offer the State the same

alternatives as Judge Sargus offered it in *Sowell*.

Should this Court find, contrary to Mr. Keene's position, that the trial court complied

with its duty regarding the jury waiver, then this Court must examine the acts and omissions of

25

defense counsel in this matter.  Counsel, of course, were well aware of Mr. Keene's psychological deficits and limitations.  Counsel should have been well aware of the items of which the court was required to inform Mr. Keene (listed above).  The record in this court does not show that counsel complied with their duty to inform, advise, and counsel Mr. Keene with respect to the jury waiver issue.

The Magistrate failed to follow controlling federal precedent and failed to properly apply that precedent in seeking a case that specifically requires that a change in venue motion be decided prior to the time a defendant makes a decision as to whether or not to waive his right to a jury trial and in seeking a case that specifically requires a court's consideration of a defendant's personality style before he could rule in Mr. Keene's favor.  Even though pursuant to *Patton v. United States*, 281 U.S. 276, 313 (1930), it is evident that the waiver was not knowing, voluntary and intelligently done due to Mr. Keene's propensity for passive acquiescence to authority figures, other critical circumstances were present which were not properly applied by the Court. First of all, the trial court relied, improperly, upon a presumption that the Petitioner's counsel had advised him of the consequences of his waiver.  However, courts should not assume that defense counsel have apprised a capital defendant of the considerations relevant to a decision to waive his right to a jury.   The trial court's duty to inform a defendant of the relevant circumstances and likely consequences of a jury waiver is a "serious and weighty responsibility" that exists independently of the acts or omissions of counsel.  *Glasser v. United States*, 315 U.S. 60, 71-72 (1942).

The trial court failed to inform the defendant of (1) his right to participate in the selection of the jurors, *United States v. Martin*, 704 F.2d 267, 273, 272 (6th Cir. 1983); (2) his eligibility

26

for the death penalty despite waiving a jury; (3) that in a jury trial the jurors would determine whether certain punishment, (*i.e.,* the death penalty), could be imposed; (4) that the jurors would have to be unanimous before he could be sentenced to death; (5) that one juror could prevent a recommendation of the death penalty, *Hall v. Washington*, 106 F.3d 742, 753 (7th Cir. 1997), and (6) that a jury recommendation of life was binding on the court. Lastly, a reviewing court is to seek persuasive evidence of a knowing, intelligent, and voluntary waiver. *Humphrey v. Cady*, 405 U.S. 504, 517 (1972). The Ohio Supreme Court overlooked the lack persuasive evidence in this regard and the Magistrate Judge failed to properly apply this precedent to its review of that Court's analysis.

## VII.    ELEVENTH GROUND FOR RELIEF

**THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS THE STATEMENTS OF MR. KEENE TO THE DAYTON POLICE DEPARTMENT BECAUSE THE STATEMENTS WERE INVOLUNTARY AND MR. KEENE DID NOT MAKE A KNOWING AND INTELLIGENT WAIVER OF HIS RIGHTS. THE TRIAL COURT'S ACTION DENIED MR. KEENE HIS RIGHTS TO A FAIR TRIAL, DUE PROCESS AND A RELIABLE DETERMINATION OF HIS GUILT AND SENTENCE AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

Mr. Keene signed a form indicating that he knew his rights and waived them. Pursuant to *Miranda v. Arizona*, 384 U.S. 486 (1966), an accused must be given Miranda warnings, make an express statement that he deserves to waive his Miranda rights and issue a voluntary, knowing and intelligent waiver of those rights. Id. The Magistrate found that the waiver was knowing and not accomplished with coercion. Unfortunately, the Court's opinion failed to discuss the fact that the waiver form in and of itself was confusing. The form had two parts: an

acknowledgement of rights and a waiver of rights. Pretrial Tr. 168 (7/3/93 Hrg.). However, there was only one place for the accused to sign on the form which was under the waiver section. *Id.* p. 172-173. Mr. Keene testified at his suppression hearing that he believed that signing the form was to acknowledge his rights. He did not believe that he was waiving any rights. *Id.* p. 193. This critical issue was not addressed by the Magistrate Judge's opinion. A second misleading factor was that the police officers, when questioning Mr. Keene, told him that if he answered their questions, that they would let the prosecutor know that he had cooperated with them. This form of trickery is not constitutionally permitted. Trickery renders a confession involuntary. *Bram v. United States,* 168 U.S. 532, 542 (1897). In the context of this trickery and having been misled as to the nature of the waiver form, Mr Keene was also not read his rights. Tr. 193. Thus, the totality of the circumstances shows that the waiver was not voluntary.

In addition Mr. Keene's confession was coerced by improper conduct on behalf of the Dayton police. As noted before, Mr. Keene was interrogated and was denied the use of restroom facilities for seven hours. Pretrial Tr. 52. He was questioned in a small room approximately 6 feet by 6 feet. He was isolated for long periods of time and was intoxicated having drank a significant quantity of wine, and having taken Valium, Xanax, and Roche 30. Pretrial Tr. 186.

In light of all these other factors, a Clinical Psychologist, Dr. Eugene Cherry, testified that Mr. Keene, who was 19 at the time, was naïve and immature. *Id.* p. 246. He testified that Mr. Keene lacked the mental capacity to make a voluntary statement, because he was a passive dependent type of individual who complied with what others wanted and that he was suffering from serious depression and possibly even alcohol dependence at the time of interrogation. *Id.* p. 246. It can only be concluded on the basis of these facts that Mr. Keene's confession was

28

coerced. Where a conviction is founded in whole or in part, upon an involuntary confession, regardless of the truth of falsity of the confession and despite the fact that there is ample evidence aside from the confession to support a conviction, there is deprivation of due process. *Roger v. Richmond*, 365 U.S. 534 (1961); *Malinski v. New York*, 324 U.S. 401 (1945); *Payne v. Arkansas*, 356 U.S. 560 (1958).

## VIII.   TWELFTH GROUND FOR RELIEF

**THE TRIAL COURT ERRED BY ADMITTING EVIDENCE OVER OBJECTION WHEN THE STATE FAILED TO SHOW THAT PHYSICAL EVIDENCE OFFERED AT TRIAL WAS NOT SUBSTANTIALLY IN THE SAME CONDITION AS IT WAS AT THE TIME OF THE CRIME. THE ADMISSION OF SUCH EVIDENCE VIOLATED MR. KEENE'S RIGHTS TO DUE PROCESS, A FAIR TRIAL AND A RELIABLE VERDICT UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

The Magistrate Judge failed to follow controlling law in this area. In his Traverse, Mr. Keene demonstrated that based upon Ohio Rule of Evidence 901(A), which states that proper authentication of evidence is a condition precedent to its admissibility, the evidence should not have been admitted. Ohio Rule of Evidence 901(A) is very much like Federal Rule of Evidence 901(a). That Rule also requires proper authentication of evidence as a condition precedent to its admissibility. However, the Court held that the challenge to the chain of custody in the Twelfth Ground for Relief merely went to the weight of the evidence, and not its admissibility. The question here involves whether or not the Court could have properly convicted Mr. Keene with using the Fila gym shoes which were found not to be physically in the same condition as they were at the time of the crime. The State introduced the gym shoes in support of its claim that they belonged to one of the victims, Ms. Gullette. The testimony of two officers conflicted as to

29

who marked these shoes as evidence. Detective Lawson testified that he marked the shoes, and then gave them to Detective Burke, Tr. 1181-1182. After Detective Lawson was informed by counsel that he had not given the shoes to Burke, Lawson changed his story and said that he had given the shoes to Detective Pearson. Tr. 1182. Detective Pearson, however, testified that he had found the shoes lying alone and unattended, unmarked on his desk and that he marked the shoes himself. Tr. 869. Detective Pearson pointed out his initials and the date on the shoes. Tr. 869. This failure to authenticate the shoes rendered them inadmissible pursuant to Evidence Rule 901(a). The failure to follow the clear Evidence Rule violated Mr. Keene's constitutional rights because the shoes were admitted and they obviously weighed in the Panel's determination of guilt. The Magistrate Judge failed to apply controlling law.

**THIRTEENTH GROUND FOR RELIEF**

[RULED PROCEDURALLY DEFAULTED]

Petitioner incorporates the arguments and analysis he submitted in previous memoranda, specifically docket nos. 44, 77 and 81.

**IX.    THE MAGISTRATE JUDGE ERRED WHEN IT DENIED PETITIONER'S FOURTEENTH GROUND FOR RELIEF.   ("THE STATE FAILED TO INTRODUCE SUFFICIENT EVIDENCE TO CONVICT MR. KEENE OF AGGRAVATED MURDER AND THEREFORE HIS CONVICTION DEPRIVED HIM OF SUBSTANTIVE AND PROCEDURAL DUE PROCESS AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.")**

Mr. Keene objects that the Magistrate Judge erred in rejecting his Fourteenth Ground for Relief and submits pp. 71-74 of his Traverse in support of his objection.

**X.     THE MAGISTRATE JUDGE ERRED WHEN IT DENIED PETITIONER'S FIFTEENTH GROUND FOR RELIEF. ("THE TRIAL COURT ERRED BY ALLOWING THE STATE TO REPEATEDLY INTRODUCE OTHER ACTS EVIDENCE AT MR. KEENE'S TRAIL, AND THUS DENIED HIS RIGHTS TO A FAIR TRIAL, DUE PROCESS AND A RELIABLE DETERMINATION OF HIS GUILT AND SENTENCE AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION. [AS NOTED ABOVE, THIS CLAIM IS DISMISSED INSOFAR AS IT MAKES A CLAIM THAT THE ADMISSION IN EVIDENCE OF A PAIR OF FILA GYM SHOES WAS IMPROPER 'OTHER ACTS' EVIDENCE].")**

Mr. Keene objects that the Magistrate Judge erred in rejecting his Fifteenth Ground for Relief and submits pp. 75-78 of his Traverse in support of his objection.

**XI.     THE MAGISTRATE JUDGE ERRED WHEN IT DENIED PETITIONER'S SIXTEENTH GROUND FOR RELIEF. ("THE TRIAL COURT ERRED BY ALLOWING THE STATE TO INTRODUCE REPEATED INSTANCES OF VICTIM IMPACT TESTIMONY DURING THE CULPABILITY PHASE OF MR. KEENE'S CAPITAL TRAIL IN VIOLATION OF OHIO REV. CODE §§2943.041 AND 2945.07, AND THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.")**

Mr. Keene objects that the Magistrate Judge erred in rejecting his Sixteenth Ground for Relief and submits p. 79-81 of his Traverse in support of his objection.

**XII.  THE MAGISTRATE JUDGE ERRED WHEN IT DENIED PETITIONER'S SEVENTEENTH GROUND FOR RELIEF. ("THE PROSECUTOR'S MISCONDUCT DURING MARVALLOUS KEENE'S TRAIL DENIED MR. KEENE HIS SUBSTANTIVE AND PROCEDURAL DUE PROCESS RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION. [AS NOTED ABOVE, THIS CLAIM IS DISMISSED TO THE EXTENT THAT IT IS BASED UPON THE PROSECUTION'S STATEMENTS REGARDING JONES PETTUS DURING THE MITIGATION PHASE].")**

Mr. Keene objects that the Magistrate Judge erred in rejecting his Seventeenth Ground

for Relief and submits pp. 82-89 of his Traverse in support of his objection.

**XIII.  THE MAGISTRATE JUDGE ERRED WHEN IT DENIED PETITIONER'S EIGHTEENTH GROUND FOR RELIEF. ("THE TRIAL COURT ERRED BY ADMITTING THE TESTIMONY OF NICHOLAS WOODSON WHICH WAS IRRELEVANT, HIGHLY PREJUDICIAL, USED TO SHOW PROPENSITY, IN VIOLATION OF ... MR. KEENE'S RIGHT TO SUBSTANTIVE AND PROCEDURAL DUE PROCESS AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.")**

Mr. Keene objects that the Magistrate Judge erred in rejecting his Eighteenth Ground for

Relief and submits pp. 90-91 of his Traverse in support of his objection.

**XIV.  THE MAGISTRATE JUDGE ERRED WHEN IT DENIED PETITIONER'S NINETEENTH GROUND FOR RELIEF. ("THE INEFFECTIVE ASSISTANCE OF COUNSEL PROVIDED TO MR. KEENE VIOLATED HIS RIGHTS TO A FAIR AND IMPARTIAL JURY TRIAL AND SENTENCE, AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.")**

Mr. Keene objects that the Magistrate Judge erred in rejecting his Nineteenth Ground for

Relief and submits pp. 92-93 of his Traverse in support of his objection.

**TWENTIETH GROUND FOR RELIEF**

[RULED PROCEDURALLY DEFAULTED]

Petitioner incorporates the arguments and analysis he submitted in previous memoranda, specifically docket nos. 44, 77 and 81.

XV.    **THE MAGISTRATE JUDGE ERRED WHEN IT DENIED PETITIONER'S TWENTY-FIRST GROUND FOR RELIEF. ("SIMULTANEOUSLY SENTENCING ON THE CHARGES OF FELONY MURDER AND ON THE SUBSTANTIVE UNDERLYING FELONY CHARGE VIOLATES THE DOUBLE JEOPARDY CLAUSES OF THE UNITED STATES CONSTITUTION IN VIOLATION OF MR. KEENE'S RIGHT TO DUE PROCESS, IN VIOLATION OF MR. KEENE'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.")**

Mr. Keene objects that the Magistrate Judge erred in rejecting his Twenty-First Ground for Relief and submits pp. 94-95 of his Traverse in support of his objection.

XVI.    **THE MAGISTRATE JUDGE ERRED WHEN IT DENIED PETITIONER'S TWENTY-SECOND GROUND FOR RELIEF. ("IN THE EVENT THAT THIS COURT SHOULD FIND THAT THE ROBBERY AND BURGLARY OF MR. WILKERSON AROSE FROM THE SAME ACT OR INDIVISIBLE COURSE OF CONDUCT, THEN THE TRIAL COURT ERRED BY REFUSING MR. KEENE'S REQUEST TO MERGE THESE CAPITAL SPECIFICATIONS, THUS ARTIFICIALLY INFLATING THE NUMBER OF AGGRAVATING CIRCUMSTANCES IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, NINTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.")**

Mr. Keene objects that the Magistrate Judge erred in rejecting his Twenty-Second Ground for Relief and submits pp. 96-97 of his Traverse in support of his objection.

33

XVII. **THE MAGISTRATE JUDGE ERRED WHEN IT DENIED PETITIONER'S TWENTY-THIRD GROUND FOR RELIEF. ("WHEN AN ERROR IN THE TRIAL RECORD IS BROUGHT TO THE ATTENTION OF THE TRIAL COURT AND THE TRIAL COURT DENIES A MOTION TO CORRECT THE RECORD, A CAPITAL APPELLANT IS DENIED HIS RIGHTS TO DUE PROCESS OF LAW, AN ADEQUATE APPELLATE REVIEW, AND A RELIABLE DETERMINATION OF HIS GUILT AND SENTENCE AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.")**

Mr. Keene objects that the Magistrate Judge erred in rejecting his Twenty-Third Ground for Relief and submits pp. 98-99 of his Traverse in support of his objection.

**TWENTY-FOURTH GROUND FOR RELIEF**

[RULED PROCEDURALLY DEFAULTED]

Petitioner incorporates the arguments and analysis he submitted in previous memoranda, specifically docket nos. 44, 77 and 81.

XVIII. **THE MAGISTRATE JUDGE ERRED WHEN IT DENIED PETITIONER'S TWENTY-FIFTH GROUND FOR RELIEF. ("OHIO'S DEATH PENALTY SCHEME IS UNCONSTITUTIONAL AND VIOLATED PETITIONER KEENE'S RIGHTS AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION. [AS NOTED ABOVE, THIS CLAIM IS DISMISSED TO THE EXTENT THAT IT INCLUDES A CLAIM THAT OHIO'S DEATH PENALTY SCHEME VIOLATES INTERNATIONAL LAW.]")**

Mr. Keene objects that the Magistrate Judge erred in rejecting his Twenty-Fifth Ground for Relief and submits pp. 100-121 of his Traverse in support of his objection.

**TWENTY-SIXTH GROUND FOR RELIEF**

[RULED PROCEDURALLY DEFAULTED]

Petitioner incorporates the arguments and analysis he submitted in previous memoranda, specifically docket nos. 44, 77 and 81.

**TWENTY-SEVENTH GROUND FOR RELIEF**

[RULED PROCEDURALLY DEFAULTED]

Petitioner incorporates the arguments and analysis he submitted in previous memoranda, specifically docket nos. 44, 77 and 81.

**XIX.  THE MAGISTRATE JUDGE ERRED WHEN IT DENIED PETITIONER'S TWENTY-EIGHTH GROUND FOR RELIEF.  ("PETITIONER KEENE WAS DENIED HIS RIGHT TO COUNSEL, DUE PROCESS, EQUAL PROTECTION, A FAIR PROCEEDING, AN IMPARTIAL TRIBUNAL, A RELIABLE SENTENCE, AND AN ADEQUATE CORRECTIVE PROCESS DURING HIS POST-CONVICTION PROCEEDINGS, IN VIOLATION OF MR. KEENE'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, NINTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.")**

Mr. Keene objects that the Magistrate Judge erred in rejecting his Twenty-Eighth Ground for Relief and submits pp. 122-124 of his Traverse in support of his objection.

Respectfully submitted,


/s/ John S. Marshall_____
John S. Marshall (0015160) *(marshall@ee.net)*
Lead Counsel for Petitioner
MARSHALL AND MORROW LLC
111 West Rich Street, Suite 430
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780


Rayl L. Stepter (0047505)
Co-Counsel for Petitioner
111 West Rich Street, Suite 430
Columbus, Ohio  43215-4126
(614) 463-9790
Fax:  (614) 463-9780

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon Charles L. Wille, Assistant Attorneys General, Capital Crimes Section, 30 East Broad Street, 26th Floor, Columbus, Ohio  43215-3428 by ECF this 7th day of October 2004.

/s/ John S. Marshall_____
John S. Marshall

rayl/cases/keene/petitioner's objections.doc