1    evidence is abundantly clear that this man is in fact

2    the triggerman in both cases.

3                          Had it not been, had it not

4    been for Lieutenant Steve Miller, those three guys would

5    have gotten away and another man would have been dead

6    just like it happened that morning.  All of these people

7    are cold, cold calculating people.  And for this man to

8    assert in some fashion that he's just along for the ride

9    is totally ridiculous.

10                          You know, another thing you

11   want to take a look at, five bullets.  We will put them

12   right here.

13                          I know it's not the Raven.

14   We know it's the Bryco.  We know the Raven is documented

15   as to Mr. Polson.  We know that the gunshot inside

16   Mr. Blazer's house is the Raven.  I think that's

17   undisputed.  We know that the four bullets that were

18   fired outside all came from the Bryco as testified by

19   Marshal Manning and Carl Haemmerle.  And who's outside,

20   Weston Lee Howe, Junior.  Who's inside, Polson and

21   Elofskey.  You can get down and nitpick all you want to,

22   all these little facts of inconsistencies and whatnot.

23   When you break this case down to its basic elements, who

24   is inside Tennyson and who's outside Tennyson, you got,

25   it's undisputed, is direct uncontroverted evidence, that

1   as to the Tennyson situation, Elofskey goes inside,

2   Polson goes inside, and this man is the one that's

3   outside.  He's the outside man.  He's to be let in.

4   That makes sense.  It's uncontroverted evidence.  Polson

5   is inside, obviously.  He's in there as Tommy.  Elofskey

6   is inside because he knew Mr. Blazer.  And just like

7   that was spoken, Howe is outside to be let in later.

8   They need the two guys to go in under the pretext of

9   what they were going to do, whatever it was.  This guy

10  is waiting outside.

11                        And, you know, if you think

12  about the video, you know the thing that about

13  Mr. Polson, if you recall his video or maybe it was his

14  testimony, I pulled my gun and the guy just looked at

15  me.  I fired the gun.  And he just looked at me.  He

16  scared me.  You know.  Remember that?  Now, is that guy,

17  Walter Polson, so smart that he could put on some show

18  like that and then later on in the thing burp and asked

19  to be excused.  You know, you saw him on the video, you

20  saw it.  The guy -- you know, show me where there is a

21  fabrication.

22                        So I guess the defense

23  would have you believe that Tony ran out and didn't

24  shoot him inside but ran outside and shot him as he came

25  out that door.  Doesn't make sense either as I think

1   about it.  No, because it didn't happen that way.  Tony

2   comes out, yeah, to let Howe in.  Now Blazer is right

3   behind him.  Howe is, Howe is by the bushes, shoots

4   three or four times, right to left, just like the

5   coroner said.  The coroner could not tell us of the

6   position of the shooter or the victim in any situation.

7   We don't know.  Mr. Arntz would have you believe that

8   the guy was standing straight up like parallel like the

9   lawyer was when he was asking the questions.  You will

10  have Mr. Howe, and Mr. Blazer was walking, we don't know

11  exactly whether the shooter was rising up, having risen

12  up.  The first went to the ground and went to him, we

13  don't know.

14                    What else do we know about

15  some physical evidence.  We know from Walter Polson and

16  Tony Elofskey, think about this, from June 23rd when

17  they're being interviewed, you know, talking about the

18  number of shots fired.  You know, one guys says he

19  emptied the clip.  We are not sure that kind of stuff,

20  you know.  And how many shots were fired outside.  Well,

21  one guy says I shot one out, may have fired one outside.

22  How many did your brother shoot?  Four or five.

23  Remember that.

24                    When the Bryco is examined

25  down at the crime lab by Taulbee, we know that the

1    Raven -- the Bryco when fully loaded holds seven in the

2    magazine.  How many did it have when Haemmerle looked at

3    it.  Three.  How many were fired?   Four.

4                              What about the Raven?   The

5    Raven holds fully loaded in the magazine, six.  How many

6    did it have?   Five.  I submit how many were fired?

7    One.  All consistent with what Polson and basically

8    Elofskey said to you.

9                              You know, another thing

10   that is he talks about, the defense lawyer does, did

11   about Mr. Elofskey and Mr. Polson, I forget his exact

12   word, I think it was, I'm sorry, carefully prepared and

13   teammates.  Well, you saw them.  You saw them.  Now you

14   take a look, are those two guys smart enough to

15   fabricate some type of story like this to put all this

16   on Weston Lee Howe and at the same time inculpate

17   themselves totally in both of these crimes where they

18   even have to plead guilty to two counts of aggravated

19   murder.  These guys are no brain trusts.  These guys

20   couldn't concoct the story that Mr. Arntz thinks that

21   they did and wants you to believe that they did if they

22   had to.  You saw them.  You saw them after they've had,

23   I mean, maybe if you add them both together, at least

24   ten hours of cross-examination, ten hours with the

25   cross-examination and those guys, if you think about it,

1     their facts as what they said to you and what they said

2     to the detectives and on their video is fairly close to

3     being the same thing, minor variances, you know.  If,

4     and if there were no variances, what the defense would

5     then be saying, well, they were, by golly, they were so

6     rehearsed, it was like a broken record.

7                              You have to take a look at

8     the basis for their complaints.  And if you take a look,

9     take a look at all the physical evidence, the arguments,

10    the theory of the defense, I submit, is unreasonable.

11                             You know when you take a

12    look at circumstantial evidence, you will be asked to

13    look at it.  When you look at it, you have to look at

14    the theory of defense even to see if and determine

15    circumstantial evidence or other evidence to see if it's

16    reasonable to begin with.  If it's not reasonable, their

17    theory or of defense is not reasonable, you don't even

18    need to be concerned with anything else as to the

19    circumstantial evidence.

20            MR. ARNTZ:        Objection to that comment.

21            THE COURT:        Overruled.

22                              You may proceed.

23            MR. SLAVENS:      You know, this is

24    cross-examination.  You have to compliment Mr. Arntz

25    as to the fact he's doing his job.  He's attempting

1   and has given Mr. Howe a fair trial, a fair argument.

2   But even after ten hours, Polson and Elofskey, they

3   haven't, he hasn't shown any, any major inconsistency,

4   many variances, the basic elements as to who did the

5   shooting from day one.

6                         But I guess he wants you to

7   believe these guys are smart enough to way back even

8   before going into Mr. Blazer's house, that they had

9   this plan to, one, kill him; two, get caught; three,

10  confess; and four, to put it on Howe.  Folks, Polson

11  and Elofskey, they don't think that way.  You use good

12  sense of reason every day of your life.  Does that

13  even have any remote scintilla to being sensible to

14  you as to how these two guys think and operate?

15                         And then if they're going

16  to make a fall guy, this is what the bizarre part of

17  the defense is, they're going to preplan a fall guy,

18  but yet at the same time they're going to implicate

19  themselves in everything that went on.  It doesn't, it

20  doesn't jive here.

21                         We have Polson, you know,

22  he doesn't even try to protect himself, so why does he

23  need a fall guy?  Polson says, yeah, I was part of the

24  plan in Mark McDonald's robbery.  I ducked down in the

25  back seat.  I ran after Mark.  I got the property.  I

1  went to the Green Machine.  Polson also says, Tony

2  Elofskey also planned it.  Tony Elofskey was driving.

3  We all had the joint idea, the idea was to duck.  We

4  drove over -- Tony drove over to the gravel pit,

5  talked to the man and drove the getaway car.  Now,

6  there is no fall guy.  He included himself in

7  everything he said.  But yet the defense lawyer wants

8  you to believe these guys conjured up a fall guy.

9                    Polson is not protecting

10  himself.  He's not protecting Tony Elofskey.  He's not

11  protecting Weston Lee Howe.  He's telling the police

12  officer at that time and he opened up and he said,

13  that the shooting of Mark McDonald was Weston Lee

14  Howe.  And it makes sense.

15                    The lawyer talks about how

16  can you get in a small car.  Another thing about that,

17  the demonstration on the video by Elofskey as to how

18  Howe was situated in that little car, down, and he

19  fires.  And our ballistics man indicated that out of

20  the muzzle of the barrel is going to go, the gun

21  powder, so depending on how close that barrel of that

22  muzzle, not that gun but the muzzle, the very end

23  point is, it's all going to go out the window.  And if

24  Mr. McDonald is 3 feet or so away from that window,

25  and what's 3 feet, arms length, he's not going to get

1  that much on him.  And what did he get, he got a

2  little bit of stippling around the skin area of his

3  mouth and nothing on his clothing and on his hands.

4  It all fits.

5  If these guys are planning

6  a fall guy, why doesn't Polson say, well, Weston Lee

7  Howe and I was there.  And Tony Elofskey wasn't there.

8  You know, see, it just doesn't jive.  It doesn't make

9  sense when you look at it.

10  Same thing with Tony

11  Elofskey.  When he's interviewed by the police, he

12  says, yeah, my car was stolen and these guys stole my

13  car.  Police said, we don't buy that.  Okay, I will

14  tell you the truth.  Same story.

15  Now I'm going to ask, if

16  these guys, you saw them, they're not college

17  graduates, how are they able to do this?  You saw

18  these guys --

19        THE COURT:      We are at time.

20        MR. SLAVENS:    Pardon?

21        THE COURT:      We are at time.

22        MR. SLAVENS:    You take a look at what

23  these guys said.  You take a look at the physical

24  evidence.  Use your own sense of reason, logic and

25  common sense.

1   And remember just a couple

2   of things Walter Polson said when being pressed, said,

3   the truth is my brother shot and killed those two

4   people.  Tony Elofskey said, hey, I was down for a

5   robbery but not a murder.  And that's why these guys

6   are here, these, why these guys are convicted, that's

7   why they're telling you what happened.  Elofskey said,

8   hey, I ain't got a deal, my lawyers weren't even that

9   good.  To him, what has happened is no deal.

10   You take a look at the fact

11   that Elofskey and Polson never once, never once tried

12   to exculpate themselves from what happened and then

13   you take a look over here, take a look at who tried to

14   exculpate themselves from what happened.  What do you

15   think?  Oh, I was there but it was an accident.  Then

16   the second one, Mr. Blazer, I was there but I tried to

17   stop it.  And at a time when he's wearing all of this.

18   Folks, I think after you

19   see it all, analyze it all and listen to all the

20   instructions of the Court, you will be firmly

21   convinced, right here, like this guy, of the truth of

22   all the charges against Weston Lee Howe, Junior, and

23   we ask you to find him guilty of all charges.

24   Thank you.

25   Thank you, your Honor.

1    THE COURT:    Thank you, Mr. Slavens.

2    Ladies and gentlemen of the

3    jury, the next stage in the proceedings is not too

4    lengthy but reasonably lengthy instructions to you on

5    the law.  So let's take a break so you can move around

6    a little bit but don't leave the immediate jury area.

7    We are going to try to keep it down to approximately

8    five, six minutes just so you can get your blood

9    circulating again, get your attention.  And we'll come

10   back in at that point, do the instructions, and then

11   you will have the case and we'll go from there.

12   Remember, we are not done

13   yet, do not form any opinions, do not discuss the case

14   among yourselves or with anybody else.  See you back

15   in about five minutes.

16

17   (WHEREUPON, a recess was taken at the hour

18   of 12:17 p.m.)

19

20

21

22

23

24

25

<u>IN OPEN COURT - BEFORE THE JURY</u>

1

2        THE COURT:      Ladies and gentlemen, I

3  will now give you the instructions that apply to this

4  case. This is the law that involves this entire

5  situation.  Stay calm, listen, I will try to use nice,

6  plain words.  It's very precise, so I must read it to

7  you.  Remember to take the instructions as a whole.

8  Don't highlight one piece of the instruction over

9  another.

10                        Ladies and gentlemen of the

11  jury, you have heard the evidence and the arguments of

12  counsel.  It is now my duty to instruct you on the law

13  which applies to this case.  The Court and jury have

14  separate functions: you decide the disputed facts, the

15  Court provides the instructions of law.  It is your

16  sworn duty to accept these instructions and to apply

17  the law as it is given to you.  You are not permitted

18  to change the law, nor to apply your own conception of

19  what you think the law should be.

20                        A criminal case begins with

21  the filing of an indictment.  The indictment informs

22  the defendant that he has been charged with a crime or

23  crimes.  The fact that it was filed may not be

24  considered for any other purpose.  The plea of not

25  guilty is a denial of the charges and puts in issue

1    all of the essential elements of each charge or crime.

2    The defendant is presumed

3    innocent until his guilt is established beyond a

4    reasonable doubt.  The defendant must be found not

5    guilty unless the State produces evidence which

6    convinces you beyond a reasonable doubt of every

7    essential element of each crime charged in the

8    indictment.

9    Now reasonable doubt is

10    present when, after you have carefully considered and

11    compared all the evidence, you cannot say you are

12    firmly convinced of the truth of the charge.

13    Reasonable doubt is a doubt based on reason and common

14    sense.  Reasonable doubt is not mere possible doubt,

15    because everything relating to human affairs or

16    depending on moral evidence is open to some possible

17    or imaginary doubt.  Proof beyond a reasonable doubt

18    is proof of such character that an ordinary person

19    would be willing to rely and act upon it in the most

20    important of his or her own affairs.

21    If after a full and

22    impartial consideration of all the evidence you are

23    firmly convinced of the truth of the charge, the State

24    has proved its case beyond a reasonable doubt.  If you

25    are not firmly convinced of the truth of the charges,

1    you must find the defendant not guilty of that

2    particular count.  I will get to that in a minute.

3                        Remember we are dealing

4    with several counts, so if I talk in the singular,

5    remember I mean the plural.  All of these instructions

6    apply to each count and I will get into each count

7    specifically in just a little bit.

8                        Evidence is all the

9    testimony received from the witnesses and the exhibits

10   admitted during the trial.

11                       Evidence may be direct or

12   circumstantial, or both.

13                       Direct evidence is the

14   testimony given by a witness who has seen or heard the

15   facts to which he or she testifies.  It includes

16   exhibits admitted into evidence during trial.

17                       Evidence may also be used

18   to prove a fact by inference.  This is referred to as

19   circumstantial evidence.  Circumstantial evidence is

20   the proof of facts by direct evidence from which you

21   may infer other reasonable facts or conclusions.

22   Where the evidence is both direct and circumstantial,

23   the combination of the two must satisfy you of the

24   defendant's guilt beyond a reasonable doubt.  You may

25   not make one inference from another inference but you

1    may draw more than one inference from the same facts

2    or circumstances.  If the circumstances create

3    inferences that are equally consistent with the

4    defendant being guilty or not guilty, such inferences

5    must be resolved in favor of the defendant.

6                          The evidence does not

7    include the indictment or the opening statements or

8    closing arguments of counsel.  The opening statements

9    and closing arguments of counsel are designed to

10   assist you, they are not evidence.

11                         Evidence stricken by the

12   Court or for which you were instructed to disregard is

13   not evidence and must be treated as though you never

14   heard it.  You must not speculate as to why the Court

15   sustained an objection to any question or to what the

16   answer to such question might have been.  You must not

17   draw any inference or speculate on the truth of any

18   suggestion included in a question that was not

19   answered.

20                         You are the sole judges of

21   the facts, the credibility of the witnesses and the

22   weight of the evidence.

23                         To weigh the evidence, you

24   must consider the credibility of the witnesses.  You

25   will apply the tests of truthfulness which you apply

1       in your daily lives.

2                                    These tests include the

3       demeanor and appearance of each witness upon the

4       stand; his or her manner of testifying; the

5       reasonableness of the testimony; the opportunity he or

6       she had to see, hear and know the things concerning

7       that which was testified to; the accuracy of memory;

8       frankness or lack of it; intelligence, interest and

9       bias, if any; together with all the facts and

10      circumstances surrounding the testimony.  Applying

11      these tests, you will assign to the testimony of each

12      witness such weight as you deem proper.

13                                    It is not necessary that

14      the defendant take the witness stand in his own

15      defense.  He has a constitutional right not to

16      testify.  The fact that he did not testify must not be

17      considered by you for any purpose.

18                                    Certain law enforcement

19      officials or officers appeared as witnesses.  The

20      Court simply tells you that their testimony is to be

21      weighed by the same rules that apply to other

22      witnesses and is to be governed by those rules.  Their

23      testimony is entitled to the same credence as any

24      witness under similar or like conditions.

25                                    A number of exhibits and

1    testimony relating to the exhibits have been

2    introduced and received.  You may consider whether the

3    exhibits are the same objects and are in the same

4    condition as originally taken by the particular

5    witness or police officer. You will determine what

6    weight, if any, the exhibits should receive in light

7    of all the evidence.

8                        In this case we have

9    received testimony from expert witnesses.  It is

10   proper for the Court to instruct you with reference to

11   that particular type of testimony.

12                       Generally, a witness may

13   not express an opinion, but these individuals are

14   permitted to express opinions because of their

15   specialized knowledge, education and experience.  The

16   purpose of such testimony is to assist you in arriving

17   at a just verdict.

18                       However, as with other

19   witnesses, upon you alone rests the duty of

20   determining what weight should be given to the

21   testimony of these experts.

22                       You are not required to

23   believe the testimony of any witness simply because he

24   or she was under oath.  You may believe or disbelieve

25   all or any part of the testimony of any witness.  It

1      is your province to determine what testimony is worthy

2      of belief and what testimony is not worthy of belief.

3                          Evidence has been received

4      concerning a statement or statements that are said to

5      have been made by the defendant.  It is for you to

6      determine whether the defendant did in fact make the

7      statement or statements.  If you find that the

8      defendant did make the statements, then you must

9      determine what weight, if any, you feel the statement

10     or statements deserve.  In determining what weight if

11     any should be given the statement or statements, you

12     should consider all the matters in evidence.

13                          In this case you have also

14     heard the testimony from Mr. Tony Elofskey and

15     Mr. Walter Polson, other persons who pleaded guilty to

16     the same crime charged in the case, and they are said

17     to be accomplices.

18                          An accomplice is one who

19     purposely assists another in the commission of a

20     crime.  Whether Mr. Elofskey or Mr. Polson were

21     accomplices and the weight to be given each of their

22     testimony are matters for you to determine from all

23     the facts and circumstances in evidence.

24                          The testimony of an

25     accomplice does not become inadmissible because of his

1    complicity, moral turpitude, or self-interest, but the

2    admitted or claimed complicity of a witness may affect

3    his credibility and make his testimony subject to

4    grave suspicion and require that it be weighed with

5    great caution.

6                         It is for you, as jurors,

7    in the light of all the facts presented to you and

8    from the witness stand, to evaluate such testimony and

9    to determine its quality and worth or its lack of

10   quality and worth.

11                        An accomplice may have

12   special motives in testifying, and you should

13   carefully examine an accomplice's testimony and use it

14   with great caution and view it with grave suspicion.

15                        The law provides two bases

16   that may place criminal responsibility upon this

17   particular defendant.  The first basis is that the

18   defendant did all the acts which make up all the

19   elements of the particular offense charged in a

20   particular count.  Second basis, that the defendant

21   aided and abetted one or more other persons in

22   committing these offenses knowing that he was

23   facilitating the offenses charged in the several

24   counts of the indictment.  Again, the State must prove

25   each and every element beyond a reasonable doubt of

1    only one of the two theories for the defendant to be

2    found guilty as charged to any one or more of these

3    offenses.  If you find that the State proved beyond a

4    reasonable doubt all the essential elements of the

5    offense or offenses charged in the indictment, your

6    verdict must be guilty as to that particular offense.

7    Or if you find beyond a reasonable doubt that another

8    person or persons committed any one or more of the

9    offenses charged in the indictment, then you may

10   consider whether or not the defendant aided and

11   abetted in the offense or offenses that you have found

12   beyond a reasonable doubt to have been committed.

13                    An aider and abettor is a

14   person who purposely aids or associates himself with

15   another person or persons for the purpose of

16   committing an offense.  Such person is regarded as if

17   he were the principal offender and is just as guilty

18   if he personally performed every act constituting the

19   offense.  When two or more persons have a common

20   purpose to commit a crime and one does one part and

21   one does another, those acting together are equally

22   guilty of the crime.

23                    Now I'm going to give you a

24   very brief definition of purpose and I will go into

25   more detail.  Now, I've used purposely.  Now I want to

1       make sure you understand what I'm talking about when I

2       use that word as it relates to aider and abettor.

3                               A person acts purposely

4       when it is his specific intention to cause a certain

5       result.  With regard to the second alternative, it

6       must be established that there was present in the mind

7       of the defendant a specific intention to aid and abet

8       another in the commission of any one or more of the

9       offenses charged and as defined in these instructions.

10      Mere presence at the scene of a crime is not

11      sufficient to establish that the defendant committed

12      any crime himself.

13                              Now at this point I'm going

14      to go through each of the separate counts and define

15      certain words for you.

16                              The defendant is charged

17      with two counts of aggravated murder; two counts of

18      aggravated robbery; and one count of aggravated

19      burglary.  Each count carries a separate firearm

20      specification.

21                              Now as to Count One.  The

22      defendant, Weston Lee Howe, Junior, is charged with

23      aggravated murder in count one of the indictment.

24                              Aggravated murder is

25      purposely causing the death of another while

1    committing or in fleeing immediately thereafter the

2    offense of aggravated robbery.

3                         Before you can find the

4    defendant guilty, you must find beyond a reasonable

5    doubt that Weston Lee Howe, Junior, on or about the

6    22d day of June, 1992, and in Montgomery County, Ohio,

7    that the defendant purposely caused the death of Mark

8    McDonald while the defendant was committing or fleeing

9    immediately thereafter the offense of aggravated

10   robbery.

11                        Now before I go to

12   definitions, I'm going to talk about Count Two.  The

13   defendant, Weston Lee Howe, Junior, is charged with

14   aggravated murder in Count Two of the indictment.

15   Again, aggravated murder is purposely causing the

16   death of another while committing or fleeing

17   immediately thereafter the offense of aggravated

18   robbery.

19                        Before you can find the

20   defendant guilty, you must find beyond a reasonable

21   doubt that Weston Lee Howe, Junior, on or about the

22   22d day of June, 1992, and in Montgomery County, Ohio,

23   purposely caused the death of Richard Blazer while the

24   defendant was committing or fleeing immediately

25   thereafter the offense of aggravated robbery.

1        Now I'm going to define the

2   terms for you as it relates to this charge.  Keep in

3   mind there are two separate counts.  These definitions

4   that I'm about to give you apply to both counts.

5        Purpose - to cause the

6   death of another is an essential element of the crime

7   of aggravated murder.  A person acts purposely when it

8   is his specific intention to cause a certain result.

9   It must be established in this case that at the time

10  in question there was present in the mind of the

11  defendant a specific intention to cause the death of

12  Mark McDonald in Count One, and the specific intention

13  to cause the death of Richard Blazer in Count Two.

14       Purpose is a decision of

15  the mind to do an act with a conscious objective of

16  producing a specific result or engaging in specific

17  conduct.  To do an act purposely is to do it

18  intentionally and not accidentally.  Purpose and

19  intent mean the same thing.  The purpose with which a

20  person does an act is known only to himself unless he

21  expresses it to others or indicates it by his conduct.

22       The purpose with which a

23  person does an act or brings about a result is

24  determined from the manner in which it is done, the

25  means used and all the other facts and circumstances

1   in evidence.

2                              No person shall be

3   convicted of aggravated murder unless he is

4   specifically found to have intended to cause the death

5   of another.  Specific intent to cause the death of

6   another may be inferred from the facts that the

7   defendant engaged in a common design with others to

8   commit the offense of aggravated robbery and that the

9   defendant either knew that an inherently dangerous

10  instrumentality was to be employed to accomplish the

11  offense or that the offense or matter of

12  accomplishment would be reasonably likely to produce

13  death.  The inference is nonconclusive.  The inference

14  may be considered in determining intent.  You may

15  consider all of the evidence to indicate the

16  defendant's intent or lack thereof.

17                              Again, the State must prove

18  the defendant's specific intent to cause death by

19  proof beyond a reasonable doubt.

20                              Cause.  Cause is an

21  essential element of the offense charged.  The State

22  charges that the acts of the defendant caused the

23  death of Mark McDonald in Count One, and caused the

24  death of Richard Blazer in Count Two.

25                              Cause is an act which is in

1    the natural and continuous sequence directly produces

2    the death and without which it would not have

3    occurred.  Cause occurs when the death is a natural

4    and foreseeable result of the act or failure to act.

5                          The death is a result of an

6    act when it is produced directly by an act in a

7    natural and continuous sequence and would not have

8    occurred without the act.  Result occurs when the

9    death is naturally and foreseeably caused by the act.

10                         The causal responsibility

11   of the defendant for an unlawful act is not limited to

12   its immediate or most obvious result.  He is

13   responsible for the natural and logical and

14   foreseeable results that follow, in the ordinary

15   course of events, from the unlawful act.

16                         The test for foreseeability

17   is not whether the defendant should have foreseen the

18   injury in its precise form or as to a specific person.

19   The test is whether a reasonably prudent person, in

20   the light of all the circumstances would have

21   anticipated the death was likely to result to anyone

22   from the performance of the unlawful act.

23                         Now on this count, or

24   Counts One and Two, as in the remaining three counts,

25   there are firearm specifications.  I'm going to get

1    into this now.  I'm going to define it once, but

2    remember, the firearm specification applies to all

3    five counts.

4                    If your verdict is guilty

5    on any count, you will separately determine whether

6    the defendant had a firearm on or about his person or

7    under his control while committing the offense or

8    offenses charged in the indictment.

9                    Firearm means any deadly

10   weapon capable of expelling or propelling one or more

11   projectiles by the action of an explosive of

12   combustible propellant.  A firearm includes any

13   unloaded firearm or any firearm which is inoperable

14   but which can readily be rendered operable.

15                   When deciding whether a

16   firearm is capable of expelling or propelling one or

17   more projectiles by the action of an explosive or a

18   combustible propellant, you may rely on the

19   circumstantial evidence including but not limited to

20   the representations of the individual exercising

21   control over that firearm.

22                   On or about his person

23   means that the firearm was either carried on the

24   defendant's person or was concealed ready at hand.

25                   Ready at hand or under his

1    control means so near to defendant's person as to be

2    conveniently accessible and within his immediate

3    physical reach.

4                          As to Counts One and Two of

5    the indictment, if you find that the State proved

6    beyond a reasonable doubt all the essential elements

7    of the offense of aggravated murder, your verdict must

8    be guilty as charged.

9                          Now remember, these are two

10   separate offenses I will deal with that eventually,

11   but I want to emphasize again, each count is a

12   separate and distinct offense each from the other.

13                         However, if you find that

14   the State failed to prove beyond a reasonable doubt

15   all the essential elements of the offense of

16   aggravated murder in Count One or in Count Two, then

17   your verdicts must be not guilty of that offense, and

18   in that event, you will continue your deliberations to

19   decide whether the State has proved beyond a

20   reasonable doubt all the essential elements of the

21   lesser included offense of involuntary manslaughter.

22                         If all of you are unable to

23   agree on a verdict of either guilty or not guilty of

24   aggravated murder, then you will continue your

25   deliberations to decide whether the State has proved

1    beyond a reasonable doubt all the essential elements

2    of the lesser included offense of involuntarily

3    manslaughter.

4                        The offense of aggravated

5    murder is distinguished from involuntary manslaughter

6    by the absence of the purpose to cause the death.

7                        I'm going to define for you

8    what involuntary manslaughter is.  It's pretty much as

9    basic as that.

10                        Involuntary manslaughter is

11   causing the death of another as a proximate result of

12   committing a felony.  Before you can find the

13   defendant guilty of involuntary manslaughter, you must

14   find beyond a reasonable doubt that on or about the

15   22d day of June, 1992, and in Montgomery County, Ohio,

16   the defendant caused the death of another as the

17   proximate result of committing a felony.  The felony

18   in this situation would be either aggravated robbery

19   as it relates to Mark McDonald, or aggravated robbery

20   or aggravated burglary as it relates to Count Two,

21   Richard Blazer.

22                        I've already defined cause.

23   I won't repeat that now.

24                        If you find that the State

25   proved beyond a reasonable doubt all of the essential

1    elements of the offense of involuntary manslaughter,

2    your verdict must be guilty as to that offense.  If

3    you find that the State failed to prove beyond a

4    reasonable doubt any one of the essential elements of

5    the offense of involuntary manslaughter, your verdict

6    must be not guilty as to that offense.

7                         Now, if the evidence

8    warrants it, you may find the defendant guilty of an

9    offense lesser than that charged in the indictment.

10   However, notwithstanding this right, it is your duty

11   to accept the law as given to you by the Court and if

12   the facts and the law warrants a conviction of the

13   offense charged in the indictment, in this case Counts

14   One and Two of aggravated murder, then it is your duty

15   to make such finding uninfluenced by your power to

16   find a lesser offense.

17                         This provision is not

18   designed to relieve you from the performance of an

19   unpleasant duty.  It is included to prevent failure of

20   justice if the evidence fails to prove the original

21   charge but does justify a verdict for the lesser

22   offense.

23                         The defendant is charged,

24   in addition, with one count of aggravated burglary in

25   Count Five of the indictment.  Before you can find the

1    defendant guilty of Count Five, you must find beyond a

2    reasonable doubt that on the 22d day of June, 1992,

3    and in Montgomery County, Ohio, the defendant by

4    force, stealth, or deception trespassed in an occupied

5    structure with purpose to obtain property owned by

6    Richard Blazer without his consent and to deprive him

7    of that property and that at that time the occupied

8    structure involved was the permanent or temporary

9    habitation of another and in which any person was

10   present or likely to be present.

11                         Some definitions.

12                         You will note there are

13   alternative methods of entrance.  Force.  Force means

14   any violence, compulsion or constraint physically

15   exerted by any means upon or against the person or

16   thing to gain entrance.

17                         Stealth means any secret,

18   sly or clandestine act to gain entrance.

19                         Deception means knowingly

20   deceiving or causing another to be deceived by any

21   false or misleading misrepresentation or by any other

22   conduct, act or omission which creates, confirms, or

23   perpetuates a false impression in another to gain

24   entrance.

25                         Trespass.  Any entrance

1    knowingly made into a residence or dwelling of another

2    is unlawful if it is without authority, consent or

3    privilege to do so.

4                    Knowingly means that the

5    defendant was aware of what he was doing and his lack

6    of authority or privilege.

7                    Occupied structure means

8    any house or building or any portion thereof which is

9    maintained as a permanent or temporary dwelling even

10   though it is temporarily unoccupied and whether or not

11   any person is present.

12                   Purpose.  I've already

13   defined purpose for you.  I will not define that

14   again.

15                   A theft offense.  Simply

16   stated, a theft offense is when a person knowingly

17   obtains or exerts control over property of another

18   with purpose to deprive the owner of such property

19   without the consent of the owner.

20                   Habitation means the place

21   where a person lives.

22                   Now, in addition, the

23   defendant is charged with two counts of aggravated

24   robbery.  I took them out of order.  You understand

25   that I'm going to move back to Counts Three and Four.

1    Aggravated robbery.  Before

2   you can find the defendant guilty of any one or both

3   of these counts, you must find beyond a reasonable

4   doubt that on or about the 22d day of June, 1992, and

5   in Montgomery County, Ohio, the defendant knowingly

6   obtained or attempted to obtain or fled immediately

7   after obtaining or fled immediately after attempting

8   to obtain property owned by another without his

9   consent and for the purpose of depriving him of that

10   property and that the defendant had a deadly weapon on

11   or about his person or under his control.

12    I've already given you the

13   definition of theft offense.  I will not repeat it

14   again.

15    Attempt.  A criminal

16   attempt is when a person does an act or omits to do

17   something which is an act or an omission constituting

18   a substantial step in a course of conduct planned to

19   culminate in his commission of a crime to constitute a

20   substantial step.  The conduct must be strongly

21   corroborative of the actor's criminal purpose.

22    The act of having the

23   deadly weapon on or about his person or under his

24   control or the act of inflicting or attempting to

25   inflict serious physical harm must occur as part of

1    the sequence of acts leading up to or occurring during

2    or immediately after the theft or attempted theft

3    offense.

4                              A deadly weapon.  Deadly

5    weapon means any instrument, device or thing capable

6    of inflicting death and designed or specifically

7    adapted for use as a weapon or possessed, carried, or

8    used as a weapon.

9                              A deadly weapon is any

10   instrument, device, or thing which has two

11   characteristics.  First characteristic is that it is

12   capable of inflicting or causing death.  The second

13   characteristic is in the alternative either the

14   instrument, device, or thing was designed or

15   specifically adapted for use as a weapon or it was

16   possessed, carried or used in this case as a weapon.

17   These are questions of fact for you to determine.

18                              Proof of fear or

19   apprehension on the part of the person against whom

20   the weapon is used or threatened is not required.

21                              I've just defined

22   aggravated robbery.  That is Count Three which relates

23   to Mark McDonald.  Count Four as it relates to Richard

24   Blazer.

25                              Again, I'm going to repeat

1    this again.  If you find that the State proved beyond

2    a reasonable doubt all the essential elements of any

3    one or more of the offenses charged in the separate

4    counts in the indictment, your verdict must be guilty

5    as to such offense or offenses according to your

6    findings.  If you find that the State failed to prove

7    beyond a reasonable doubt any one of the essential

8    elements of any one or more of the offenses charged in

9    the separate counts of the indictment, your verdict

10   must be not guilty as to such offense or offenses

11   according to your findings as to each count.

12                    The charges set forth in

13   each count in the indictment constitute a separate and

14   distinct matter.  You must consider each count and the

15   evidence applicable to each count separately and you

16   must state your findings as to each count uninfluenced

17   by your verdict as to the other counts or any other

18   counts.

19                    The defendant may be found

20   guilty or not guilty of any one or all of the offenses

21   charged.

22                    You may not discuss or

23   consider the subject of punishment.  Your duty is

24   confined to the determination of the guilt or not

25   guilt of the defendant on each separate count.

1   In the event you find the
2   defendant guilty, the duty to determine the punishment
3   is placed, by law, upon the Court.
4   You must not be influenced
5   by any consideration of sympathy or prejudice.  It is
6   your duty to carefully weigh the evidence, to decide
7   all the disputed facts, to apply the instructions of
8   the Court to your findings and to render your verdicts
9   accordingly.  In fulfilling your duty, your efforts
10   must be to arrive at just verdicts.  Consider all of
11   the evidence and make your findings with intelligence
12   and impartiality and without bias, sympathy or
13   prejudice so that the state of Ohio and the defendant
14   will feel that their case was fairly and impartially
15   tried.
16   If, during the course of
17   the trial, the Court said or did anything that you
18   consider an indication of the Court's view on the
19   facts, you are specifically instructed to disregard
20   it.
21   Now you will have with you
22   in the jury room, in addition to the exhibits, several
23   verdict forms.  I'm going to go over these verdict
24   forms with you now and I will read each one of them as
25   it relates to each count.

1    The verdict form is

2  captioned State of Ohio vs. Weston Lee Howe, Junior,

3  Count One.  And it's labeled in the upper right-hand

4  corner, Count One, aggravated murder, and then in

5  parenthesis, Mark McDonald.  That is for

6  identification purposes so you know which count, which

7  situation you're referring to as it relates to your

8  deliberations and ultimate verdict.

9    The verdict reads as

10  follows:  We, the Jury, upon the issues joined in this

11  case, do find the defendant, Weston Lee Howe, Junior,

12  and then there is a space with an asterisk and down

13  below it says:  Insert in ink guilty or not guilty, of

14  the offense of aggravated murder as charged in the

15  indictment.  It goes on to read, and/or, then another

16  asterisk with a blank, insert in ink, guilty or not

17  guilty, of the lesser included offense of involuntary

18  manslaughter.  Stop there.

19    If your finding is one of

20  guilty to the offense of aggravated murder, you don't

21  answer the next question.  That's it.  That's your

22  verdict, guilty of aggravated murder.  If your finding

23  is one of not guilty, according to my earlier

24  instructions, then you go and proceed and consider the

25  lesser included offense of involuntary manslaughter.

1    Attached to Count One,

2    Verdict in Count One is what we have referred to

3    throughout the case as the firearm specification.

4    Again it says, Count One, firearm specification.  We,

5    the Jury, upon the issues joined in this case having

6    found the defendant, Weston Lee Howe, Junior, guilty

7    of Count One, do hereby further find that he, blank

8    space with an asterisk, the asterisk says: insert in

9    ink, did or did not have on or about his person or

10   under his control a deadly weapon, to-wit: a firearm

11   while committing said offense.  If your finding as to

12   the substantive count is one of not guilty, then you

13   do not answer the question as to the firearm.  You're

14   only talking about the firearm.  If there's been a

15   guilty verdict on the substantive count, but they must

16   be separate findings.

17   Down below on both of these

18   forms -- I'm doing a little more detail, on Count One

19   than the other counts, essentially, the form is the

20   same -- we are going to make it -- essentially they're

21   all the same.  Down below there are lines for 12

22   signatures.  You must each of you sign the verdict

23   form in ink, all 12.  We will talk about that in a

24   minute.

25   As it relates to Count Two,

1   again, the caption is State of Ohio against Weston Lee

2   Howe, Junior, Count Two, aggravated murder, again

3   parenthesis, Richard Blazer.  We, the Jury, upon the

4   issues joined in this case, do find the defendant,

5   Weston Lee Howe, Junior, there is a blank with an

6   asterisk.  Down below it says: insert in ink, guilty

7   or not guilty of the offense of aggravated murder as

8   charged in the indictment.

9                   If your verdict is either

10  not guilty or you have not reached a verdict at all in

11  accordance with your earlier instructions, then you

12  proceed, and it says and/or, again asterisk, guilty or

13  not guilty of the lesser included offense of

14  involuntary manslaughter.

15                  Attached to Count Two is

16  the firearm specification.  Again, if there is a

17  finding of guilty on Count Two, the aggravated murder

18  charge, then you will answer the question on the

19  firearm specification.  If your verdicts are those of

20  not guilty on Count Two, then you do not need to

21  answer the firearm specification.  Again, signature

22  lines for 12 jurors.  All 12 jurors must concur.

23                  Count Three, State of Ohio

24  against Weston Lee Howe, verdict, Count Three,

25  aggravated robbery, in parenthesis so you know which

1  of the aggravated robberies you are referring to, Mark

2  McDonald, the form:  We, the Jury, upon the issues

3  joined in this case, do find the defendant, Weston Lee

4  Howe, Junior, there is a space with an asterisk,

5  insert in ink, guilty or not guilty, of the offense of

6  aggravated robbery as charged in the indictment.

7                         If your verdict is one of

8  guilty, then you again proceed to answer the

9  specification as to whether he did or did not have on

10 or about his person or under his control a deadly

11 weapon, to-wit: a firearm.

12                         Count Four, aggravated

13 robbery, parenthesis, Richard Blazer, same caption:

14 We, the Jury, upon the issues joined in this case, do

15 find the defendant, Weston Lee Howe, Junior, again the

16 asterisk, insert guilty or not guilty of the offense

17 of aggravated robbery as charged in the indictment.

18                         Attached thereto is also a

19 firearm specification.  You will answer that question

20 the same as you did the others as to whether or not he

21 had a firearm at the time as previously defined by the

22 Court.

23                         Count Five.  State of Ohio

24 vs. Weston Lee Howe, Junior, verdict, Count Five,

25 aggravated burglary.  Again, so you know which count

1   you're talking about in parenthesis, Richard Blazer:

2   We, the Jury, upon the issues joined in the case, do

3   find the defendant, Weston Lee Howe, Junior, blank

4   space, asterisk, insert in ink the word guilty or the

5   words not guilty of the offense of aggravated burglary

6   as charged in the indictment.

7                         As in the other counts, the

8   attached firearm specification on Count Five, that

9   question would then, either did or did not have the

10  firearm in accordance with our prior discussions on

11  that particular issue.

12                      AT SIDE BAR

13           THE COURT:        First from the State.

14                            Well, let the record

15  reflect that we've had these discussions in chambers.

16  Any additions or corrections to the instructions?

17           MR. SLAVENS:       We have no additions.

18                            We would like to apologize

19  to the Court for my comment in chambers about reading

20  the instructions.

21                            However, there is, I think

22  an addition that needs to be made as to Counts One and

23  Two.  I think the Court when it read from your source,

24  you put while committing or fleeing immediately after

25  committing.

1          THE COURT:        Right.

2          MR. SLAVENS:      But the indictment charges

3    attempting to commit.  It does make a difference as to

4    Mr. Blazer 'cause there was no real theft offense.

5          THE COURT:        All right.

6          MR. SLAVENS:      But it is in the indictment

7    as to both.

8          MR. ARNTZ:        I don't recollect just how

9    the Court read that particular charge.

10          THE COURT:        I do.  And I know that was

11    not put in there.

12          MR. ARNTZ:        All right.

13          THE COURT:        'Cause I was reading, I

14    thought about that at the time I was doing that.  I

15    quickly went right by it.  Well, it doesn't make any

16    difference but since the State brought this to my

17    attention, I will just clarify that with the jury.

18          MR. SLAVENS:      You want this language?

19    You want to keep this?  It has this language in it.

20    Either one of them.

21          THE COURT:        I will read it one time.

22          MR. SLAVENS:      Right.

23          THE COURT:        As it relates to both.

24                            Okay.  Now, Mr. Arntz,

25    anything in addition to what was said in chambers?