**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| MARVALLOUS KEENE, ) | |
| ) | CASE NO. C-1-00-421 |
| Petitioner, ) | |
| ) | JUDGE BECKWITH |
| v ) | |
| ) | Magistrate Judge Merz |
| BETTY MITCHELL, WARDEN, ) | |
| ) | |
| Respondent. ) | |

**THE WARDEN'S MEMORANDUM IN RESPONSE TO
KEENE'S OBJECTIONS TO THE MAGISTRATE JUDGE'S
AUGUST 25, 2004 FINAL REPORT AND RECOMMENDATIONS**

Respectfully Submitted,

**JIM PETRO (0022096)
Ohio Attorney General**

s/Charles L. Wille
**CHARLES L. WILLE (0056444)
Senior Assistant Attorney General**
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 728-7055; (614) 728-8600 (fax)
Email: cwille@ag.state.oh.us

**COUNSEL FOR THE WARDEN**

## STATEMENT OF THE CASE

The Petitioner, Marvallous Keene (hereinafter "Keene"), has been sentenced to death by an Ohio court. On August 19, 1999, Keene notified this Court of his intent to file a petition for a writ of habeas corpus, and moved for an order staying his execution. On September 8, 1999, the Court appointed counsel to act on Keene's behalf, and granted Keene's motion for a stay. On October 27, 1999, the Court issued an order setting forth dates for further pleadings and related proceedings, including a joint appendix containing relevant records of the state courts; Keene's petition; a motion by the Respondent, Warden Betty Mitchell (hereinafter "the Warden"), to dismiss procedurally defaulted claims, and a memorandum in opposition by Keene; motions by Keene for discovery and an evidentiary hearing, and memoranda in opposition by the Warden; and final briefs on non-defaulted claims by both parties. On March 31, 2000, the Court referred the case to United States Magistrate Judge Michael Merz for the conduct of proceedings as set forth in the Court's scheduling order.

In the meantime, on November 29, 1999, the Warden filed a joint appendix, and, on May 26, 2000, Keene filed a petition for a writ of habeas corpus. Thereafter, the Magistrate Judge continued to conduct proceedings consistent with the Court's scheduling order. On September 12, 2000, the Magistrate Judge denied Keene's motion to conduct discovery, except that the Magistrate granted leave to depose Keene's trial counsel, which the Warden did not oppose.[1] On June 27, 2001, the Court overruled Keene's objections to the Magistrate Judge's order denying discovery. On March 5, 2002, the Magistrate Judge issued a report recommending the granting in part of the Warden's motion to dismiss procedurally defaulted claims. On March 6, 2002, the Magistrate Judge denied

---

[1] On June 21, 2001, the Magistrate Judge issued a preclusion order barring Keene from deposing trial counsel, based on Keene's failure to timely conduct the discovery.

Keene's motion for an evidentiary hearing. On June 7, 2002, the Court overruled Keene's objections to the Magistrate Judge's orders denying an evidentiary hearing and dismissing specified claims as procedurally defaulted, and ordered briefing on Keene's remaining claims.[2]

On November 19, 2002, Keene filed his merit brief per the Court's order. On December 10, 2002, the Warden filed a timely brief in reply. On August 8, 2003, the Court amended the original order of reference, directing the Magistrate Judge to issue a report and recommendations with respect to the final disposition of Keene's remaining claims. On August 25, 2004, the Magistrate Judge issued his final report, recommending the dismissal with prejudice of Keene's petition. On October 7, 2004, after obtaining an extension of time, Keene filed objections to the Magistrate Judge's report, and a notice of motion for expansion of the record. On October 12, 2004, per the direction of the Clerk, Keene re-filed his "notice" as a motion for appropriate relief.

## APPLICABLE STANDARDS OF REVIEW

Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts provides, in pertinent part:

> (4) A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is

---

[2] Consistent with the Magistrate Judge's recommendation, the Court dismissed as procedurally defaulted, in whole or in part, Keene's seventh, thirteenth, fifteenth, twentieth, twenty-fourth, twenty-fifth, twenty-sixth and twenty seventh grounds. Keene did not object to the Magistrate Judge's procedural default recommendations with respect to the twenty-fourth, twenty-fifth, twenty-sixth and twenty-seventh grounds. See Order of June 7, 2002, at pages 6-7. Accordingly, insofar as Keene now attempts to object to the dismissal of the twenty-fourth, twenty-fifth, twenty-sixth and twenty-seventh grounds, his objections are untimely, and therefore should not be considered by the Court. See Thomas v. Arn, 474 U.S. 140 (1985) (Court of Appeals has supervisory power to require a party to object to the recommended disposition of a Magistrate Judge in order to preserve for appeal the disputed issue).

made. A judge of the court may accept, reject, or modify in whole or in part any findings or recommendations made by the magistrate judge.

The substantive standard applicable to Keene's claims of constitutional error is set forth by 28 U.S.C. Section 2254, which provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

## STATEMENT OF THE FACTS

The Supreme Court of Ohio described as follows the facts and circumstances leading to Keene's indictment, trial, convictions and adjudged sentence of death:

> In December 1992, appellant was consorting with a group of people, including several juveniles, who at various times stayed at Bill McIntire's apartment at 159 Yuma Avenue, Dayton. This group included Laura Taylor, DeMarcus Smith, Nicholas Woodson, Heather N. Mathews, Wendy Cottrill, Marvin Washington, and Jeffrey Wright.
>
> On December 24, 1992, appellant and Taylor enlisted Mathews to help them rob Joseph Wilkerson, an acquaintance of Taylor's. Taylor told Mathews that she had arranged for the three of them to go to Wilkerson's house on the pretext of having an orgy with Wilkerson. Mathews agreed to take part in the robbery.
>
> Appellant, Taylor, and Mathews walked to Wilkerson's house. After a drink, Wilkerson and Taylor went to the bedroom. After waiting briefly, appellant and Mathews followed them. Wilkerson began to take his clothes off. Taylor and Mathews pretended to do the same.
>
> Appellant began to remove his own pants, then pulled them back up and drew a gun. He ordered Wilkerson onto the bed, then commanded Taylor and Mathews to

3

tie Wilkerson's hands to the bed.

While appellant watched Wilkerson, Taylor and Mathews went through the house, looking for things to steal. They took a microwave oven, a TV, a cordless phone, a curling iron, and a blow dryer, which they loaded into Wilkerson's Buick. Wilkerson told appellant that he kept a .32-caliber derringer in the garage. Appellant found it and brought it back to the bedroom.

Appellant subsequently confessed that he shot Wilkerson in the chest with the derringer, after covering him with blankets to muffle the noise.
Taylor and Mathews, hearing the shot, returned to the bedroom and saw appellant holding the derringer. Wilkerson's feet were shaking. Appellant handed the derringer to Taylor, but it would not fire again. So appellant gave Taylor his own gun, and Taylor shot Wilkerson in the head. Wilkerson stopped shaking. Appellant and his accomplices then left in the Buick. Appellant warned his accomplices not to tell Cottrill and Washington.

Later that evening, appellant, Taylor, and Smith went walking. Appellant and Smith were carrying guns. Appellant later confessed to police that, as they were walking, they saw Danita Gullette at a public telephone. Smith and appellant drew their guns, and Smith forced Gullette at gunpoint to take her shoes off. Smith and appellant then shot Gullette. Smith took her shoes and jacket. When they returned to the apartment, Taylor was wearing Gullette's jacket and Smith was carrying Gullette's shoes.

Later that night, Smith shot Mathews's boyfriend, Jeffrey Wright, outside 159 Yuma. Appellant, Mathews, Taylor, and Smith then left in Wilkerson's Buick.

On December 25, appellant returned to Wilkerson's house and stole more items, including Wilkerson's other car, a Pontiac. Also on December 25, Taylor robbed and murdered her former boyfriend, Richmond Maddox.

Early in the morning of December 26, Mathews drove the Pontiac to a BP service station, where appellant and Smith stole Kathie Henderson's car at gunpoint. Appellant and Smith drove off in Henderson's car; Mathews followed in the Pontiac.

Later that morning, Mathews drove the Pontiac to the Short Stop Mini-Mart, with appellant, Smith, and Taylor in the car. Taylor went into the store, then came back to report that there were [***4] only two people inside. Mathews handed a .32-caliber revolver to Smith; Smith and appellant were also carrying .25-caliber automatic pistols. Appellant and Smith went into the store.

Sarah Abraham, whose family owned the store, was working behind the cash register. Appellant ordered her at gunpoint to open it. Abraham did so and removed $40, which she handed to appellant. Appellant shot Abraham in the head. Several

4

days later, Abraham died of her wound. Smith also shot at two other people, Jones Pettus, a customer, wounding him, and Edward Thompson, a helper, both of whom survived and testified against appellant.

Later that day, Taylor and Mathews discussed "jumping" Cottrill because they "thought she was telling on us." According to Mathews's testimony, there was no discussion of shooting her. However, in a subsequent conversation with appellant, Taylor, Mathews, and Woodson, Smith said, "he was going to unload a clip in [Marvin Washington's] ass." According to appellant's confession, Smith "thought that Wendy and Marvin were going to snitch about [Smith] shooting Jeff Wright." The group discussed picking Washington and Cottrill up and taking them "to a park or something."

The group drove to 159 Yuma and picked up Washington and Cottrill. They dropped Woodson off at his home, and then drove to a gravel pit. At the gravel pit, Smith ordered Washington out of the car, and appellant dragged Cottrill out. Washington and Cottrill protested that they had not gone to the police or "snitched." Appellant and Smith forced them at gunpoint to walk behind a pile of gravel. There, appellant shot Cottrill, and Smith shot Washington.

The grand jury indicted appellant on eight counts of aggravated murder -- two counts each for Wilkerson, Washington, and Cottrill; one count each for Gullette and Abraham. The Wilkerson counts each carried six death specifications (course of conduct, escaping detection, two aggravated robbery, two aggravated burglary). The Cottrill counts each carried four death specifications (course of conduct, witness-murder, two kidnapping). The Washington counts each carried three death specifications (course of conduct, witness murder, kidnapping). The Gullette and Abraham counts each carried two death specifications (course of conduct, aggravated robbery).

The indictment also included six counts of aggravated robbery, one count of aggravated burglary, one count of burglary, two counts of kidnapping, and two counts of attempted aggravated murder. All counts carried a firearm specification.

Waiving a jury, appellant was tried to a three-judge panel, which found him guilty on all counts. The panel found four death specifications as to Wilkerson's aggravated murder counts (course of conduct, escaping detection, aggravated robbery, aggravated burglary); however, the panel merged the "escaping detection" and felony-murder specifications.

The panel found three death specifications on the Cottrill murder (course of conduct, kidnapping-principal offender, witness murder), three on the Washington murder (same), and two on the Gullette and Abraham murders (course of conduct, aggravated robbery). The Wilkerson, Washington, and Cottrill aggravated murder counts were merged so that only one remained for each victim, a total of five. After a

5

mitigation hearing, the panel sentenced appellant to death on each of the five counts. The court of appeals affirmed.

State v. Keene, 81 Ohio St.3d 646 (1998).

## ARGUMENT IN RESPONSE

**The Magistrate Judge correctly determined that none of Keene's alleged grounds warrant relief in federal habeas corpus.**

In his **first, second, third, fourth**, **twenty-second and twenty-third grounds**, Keene alleged for various reasons that the three-judge panel erroneously sentenced him to death; that the state appellate courts erroneously affirmed the judgment of the trial court; and that, as a matter of fact and law, death is an inappropriate punishment in his case. On direct appeal, the Supreme Court of Ohio rejected Keene's allegations, and, in addition, independently determined that the adjudged death sentence is appropriate. See State v. Keene, 81 Ohio St.3d at 663-65, 670-672. The Magistrate Judge concluded that the decisions of the Ohio Supreme Court denying Keene relief were neither contrary to nor involved an unreasonable application of federal law as clearly established by the Supreme Court of the United States. Report and Recommendations, pages 26-48.

In his objections, Keene complains that the Magistrate Judge failed to adequately and correctly consider the argument that the Ohio courts violated Ohio's sentencing law. In the later regard, he again argues that the allegedly short time that the trial court deliberated is evidence that it did not properly perform the weighing process. According to Keene, this alleged failure of the Ohio courts to comply with Ohio's death sentencing law in and of itself amounts to a contravention of his rights under the Eighth and Fourteenth Amendments. He also takes issue with the Magistrate Judge's reliance on the Supreme Court of Ohio's independent review of Keene's death sentence.

Keene argues that this conflicts with the Magistrate Judge's reasoning in Sheppard v. Bagley, another recent capital case.   See Objections, pages 2-10.

The Warden respectfully submits that Keene's objections are completely without merit.

First, as Keene concedes, the Ohio Supreme Court held that the trial court correctly applied Ohio's sentencing law in sentencing him to death.   Keene cites no case in which the Supreme Court of the United States has held that a federal court may or must grant habeas corpus relief if it finds that a state appellate court erred in failing to recognize and remedy a trial court's violation of the state's capital sentencing law.   Indeed, the Supreme Court has held precisely the opposite. See Wainwright v. Goode, 464 U.S. 78, 84 (1983) ("If the interpretation of the trial court's remarks is deemed a legal issue, it is surely an issue of state law that the Court of Appeals should have accepted, since the views of the State's highest court with respect to state law are binding on the federal courts.")  And, of course, the duration of the trial court's deliberations is a question of fact the state courts' resolution of which is fully supported by the record.

Second, the views of the Magistrate Judge in *Sheppard* are totally irrelevant.  Of course, they are not binding on the district court in that case, just as the Magistrate Judge's recommendations here are not binding on this Court.  In any event, Keene's argument is obviously an "apples to oranges" comparison.   The Magistrate Judge in *Sheppard* found a cognizable constitutional violation, i.e., a violation of the defendant's right to a fair sentencing hearing.  The Magistrate Judge found no such violation here.  Keene's "bottom line" is that the alleged failure of the Ohio courts to properly apply Ohio law itself is a *constitutional* violation that cannot be "cured" by appellate reweighing.   For the reasons stated above, Keene's basic premise is erroneous.

In sum, the Magistrate Judge correctly recommended denial of relief on the first, second, third, fourth, twenty-second and twenty-third grounds. Accordingly, the Court should overrule Keene's objections.

Keene alleged, in his **fifth and sixth grounds**, that he is the victim of selective prosecution based on race. The Supreme Court of Ohio rejected Keene's claims, holding that Keene had not presented sufficient evidence to demonstrate purposeful discrimination or to warrant discovery on the issue at trial. The Magistrate Judge concluded that the Ohio Supreme Court's determinations were neither contrary to nor an unreasonable application of clearly established federal law as set forth by the Supreme Court of the United States. In so concluding, the Magistrate Judge specifically found that the Supreme Court of Ohio reasonably applied United States v. Armstrong, 517 U.S. 456 (1996) and McCleskey v. Kemp, 481 U.S. 279 (1987), the governing decisions of the Supreme Court of the United States. Report and Recommendations, pages 48-57.

In his objections, Keene asks the Court for the first time to consider trial records related to State v. Howe, another Montgomery County criminal case, which Keene offers in an accompanying motion to expand the record. Apart from the latter, Keene offers only a brief reprise of his prior arguments that the state courts erred in denying him discovery and in concluding that the evidence he offered was insufficient to prove intentional discrimination. For the reasons set forth in the Warden's Memorandum in Opposition to Keene's motion for expansion, the Court need not and should not consider the Howe transcripts. In any event, Keene offers no arguments apart from conclusory assertions of state court error. For the reasons stated by the Magistrate Judge, the Supreme Court of Ohio *reasonably* applied clearly established federal law in rejecting Keene's claims.

In sum, the Magistrate Judge correctly recommended denial of relief on the fifth and sixth grounds. Accordingly, the Court should overrule Keene's objections.

Keene's **eighth ground** alleged that Keene was "forced" to waive his right to trial by jury by the trial judge's failure to rule on his change of venue motion before he decided to waive a jury and be tried by a three-judge panel. In his **tenth ground**, Keene alleged that the trial court erred by accepting his waiver because it knew of his "propensity to acquiesce to authority figures." On direct appeal, the Supreme Court of Ohio rejected Keene's claim that his waiver of his right to trial by jury was involuntary. State v. Keene, 81 Ohio St.3d 646, at 658-60 (1998)..

In recommending the denial of habeas corpus relief, the Magistrate Judge concluded that the Supreme Court of Ohio's decision did not contravene clearly established federal law. In the latter regard, the Magistrate Judge noted the absence of any decision by the Supreme Court of the United States that requires a trial court to rule on a defendant's change of venue motion before considering the voluntariness of a defendant's waiver of a jury trial, or a decision by the Supreme Court that requires a trial court to consider the defendant's "personality type" in determining the voluntariness of the defendant's waiver. The Magistrate Judge further noted, "that Mr. Keene never raised the issue of pre-trial publicity in any state court proceedings and he does not argue here that the three-judge panel was not able to conduct a fair trial and/or render a fair decision due to pre-trial publicity." Report and Recommendations at pages 58-64.

In his objections, Keene first complains that the Magistrate Judge erroneously overlooked argument in the Traverse "that the deluge of adverse pretrial publicity had an effect on the three-judge panel." Objections at page 17. However, Keene neglects to note that the latter argument was advanced in support of his basic claim that "his ability to exercise his constitutional right to have a trial by jury was chilled, violating his constitutional rights." Traverse at page 54. Accordingly, as

9

correctly found by the Magistrate Judge, Keene did not allege in his habeas corpus petition, nor did he argue in his Traverse, that unfair pre-trial publicity in and of itself violated his constitutional rights by rendering it impossible for the three-judge panel to render an impartial verdict. Moreover, Keene does not contradict the Magistrate Judge's finding that Keene never raised the issue of pre-trial publicity in any state court proceedings.

With respect to his tenth ground, Keene offers additional argument that the trial court erred in accepting his waiver of trial by jury. Here Keene relies primarily on the decision of the United States District Court in Sowell v. Anderson, 2001 WL 1681142 (S.D. Ohio 2001) (Sargus, J.). According to Keene, his waiver of trial by jury must be deemed involuntary "because 'the trial court failed to inform petitioner or to insure that he understood that a jury in a capital murder case had to unanimously return *two* verdicts against him -- one finding him guilty, and the other recommending death -- before the trial judge could impose a death sentence.' " And, Keene further argues, "Because Mr. Keene was uninformed of these essential ingredients to a valid waiver, this Court must grant the writ and offer the State the same alternatives as Judge Sargus offered in Sowell." Finally, Keene suggests that the Court under the authority of Sowell should find ineffective trial counsel and grant the writ. Objections at pages 25-26, quoting Sowell, supra.

Initially, the Warden notes that on June 23, 2004, in Sowell v. Bradshaw, 372 F.3d 821 (6th Cir. 2004), the United States Court of Appeals for the Sixth Circuit reversed Judge Sargus' grant of the writ.[3] In any event, the Warden respectfully submits that the Court should reject Keene's additional arguments as an obviously misguided attempt to amend his claims without leave of this

---

[3] See also United States v. Ott, 489 F.2d 872, 874 n. 2 (7th Cir. 1973) ("Professional responsibility, thus, extends even to requiring counsel to cite pertinent legal authority contrary to his position to the court.").

Case 1:00-cv-00421-SSB-MRM    Document 101    Filed 10/18/2004    Page 12 of 17

Court. Keene fails to cite any language in his petition in which he alleged as a ground for relief the trial court's failure "to inform petitioner or to insure that he understood that a jury in a capital murder case had to unanimously return *two* verdicts against him -- one finding him guilty, and the other recommending death -- before the trial judge could impose a death sentence," or trial counsel's supposed failure to ensure that Keene was so informed. Moreover, Keene fails to identify in what state proceeding, if any, such allegations were previously presented. Accordingly, the Warden respectfully requests that the Court specifically overrule Keene's objections in the latter regard because they advance new allegations of constitutional error not properly before this Court.

In sum, the Magistrate Judge correctly recommended denial of relief on the eighth and tenth grounds. Accordingly, the Court should overrule Keene's objections.

Keene alleged, in his **ninth ground**, that the trial court erred in failing to suppress Kathie Henderson's in-court identification of him. The Supreme Court of Ohio rejected Keene's claim, holding that even if Henderson's in-court identification was improperly admitted, "it is clear beyond a reasonable doubt that appellant would have been convicted on Count Eight even without Henderson's identification." State v. Keene, 81 Ohio St.3d at 658. In recommending denial of habeas corpus relief, the Magistrate Judge concluded both that the admission of the in-court identification was not constitutional error, and that, even if it were, the failure to suppress the identification would not have had a substantial and injurious effect or influence on the court's verdict of guilty on the aggravated robbery count. Report and Recommendations at pages 64-73.

In his objections, Keene basically argues that the Magistrate Judge erred in failing to find a constitutional violation that warrants reversal of his conviction. Keene also suggests that the Court should now conduct a "cumulative" error inquiry, arguing that the allegedly erroneous identification in "combination" with other alleged errors "created a constitutionally deficient trial." Objections at

11

page 20. The Warden respectfully submits that Keene's arguments are largely beside the point. Keene presents no basis for concluding that the Supreme Court of Ohio's holding contravened or unreasonably applied the relevant decisions of the Supreme Court of the United States. Moreover, Keene's belated "cumulative error" claim is procedurally improper and patently baseless. Keene does not indicate when, if ever, he presented it to the state courts, nor has the Supreme Court of the United States ever recognized "cumulative" error as an independent ground for relief in federal habeas corpus. See Lorraine v. Coyle, 291 F.3d 416, 447 (6th Cir. 2002) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief.").

In sum, the Magistrate Judge correctly recommended denial of relief on the ninth ground. Accordingly, the Court should overrule Keene's objections.

Keene alleged, in his **eleventh ground**, that the trial court erred in failing to suppress his statements to the police, owing to police misconduct and his own incapacity. In denying relief on direct appeal, the Supreme Court of Ohio reasoned that Keene's allegations were primarily based on his own testimony, which was contradicted by the testimony of the police officers present during the interrogation, and that the trial court was in a better position to resolve the conflict in testimony. State v. Keene, 81 Ohio St.3d at 656-58. The Magistrate Judge concluded that the trial court and the Supreme Court of Ohio reasonably relied on the trial testimony of the police officers and that, accordingly, the Supreme Court of Ohio's decision was consistent with clearly established federal law. Report and Recommendations, pages 77-78.

In his objections, Keene basically complains that the Magistrate Judge erred by not believing Keene's testimony at the suppression hearing. Keene also argues that the Magistrate Judge erred in overlooking the testimony of Dr. Cherry, the clinical psychologist who opined that Keene lacked the mental capacity to make a voluntary statement due to his "passive" personality. Objections at page

12

28. Thus, Keene simply ignores the actual basis for the Magistrate Judge's recommendation, namely, that the trial court and the Ohio Supreme Court's reliance on the contrary testimony of the police was reasonable and consistent with clearly established federal law. Keene also ignores the basic, well-established principle, recognized by the Magistrate Judge, that coercive police activity is a necessary predicate to a finding that a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment. Id. at 77, citing Colorado v. Connelly, 479 U.S. 157, 167 (1986).

In sum, the Magistrate Judge correctly recommended denial of relief on the eleventh ground. Accordingly, the Court should overrule Keene's objections.

Keene alleged, in his **twelfth ground**, that erroneous admission of a pair of Fila gym shoes violated his constitutional rights. The Ohio Supreme Court held that a sufficiently reliable chain of custody had been proven to admit the shoes into evidence; and that, in any event, any possible error was harmless, in view of the overwhelming evidence of Keene's guilt. State v. Keene, 81 Ohio St. 3d at 660-62. In recommending the denial of habeas corpus relief, the Magistrate Judge essentially agreed with the Supreme Court of Ohio that "even if the trial court erroneously admitted the Fila gym shoes because of a questionable chain of custody, such error was not of such magnitude as to comprise a violation of Mr. Keene's constitutional rights." Report and Recommendations, page 86.

In his objections, Keene argues simply that the shoes were improperly admitted under Ohio law and that therefore his constitutional rights were violated. Objections at pages 29-30. Again, Keene ignores the basis of the Magistrate Judge's recommendation, i.e., that admission of the shoes could not possibly have deprived Keene of a fundamentally fair trial, as well as the fundamental legal principle, recognized by the Magistrate Judge, that violation of a state evidentiary rule absent a

13

showing of fundamental prejudice cannot sustain relief in federal habeas corpus. Id., at 83, citing Pulley v. Harris, 465 U.S. 37 (1984).

In sum, the Magistrate Judge correctly recommended denial of relief on the twelfth ground. Accordingly, the Court should overrule Keene's objections.

### CONCLUSION AND REQUEST FOR RELIEF

For all the foregoing reasons, the Magistrate Judge ruled correctly insofar as he determined that Keene's claims do not warrant relief in federal habeas corpus.[4] Accordingly, the Court should overrule Keene's objections and dismiss his petition with prejudice.

<div style="text-align: right">Respectfully Submitted,</div>

---

[4.] Relying on arguments advanced previously in his Traverse, Keene also objects to the Magistrate Judge's recommended denial of relief with respect to the fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, twenty-first, twenty-second, twenty-third, twenty-fifth, and twenty-eighth grounds. As apparent in the Report and Recommendations, the Magistrate Judge properly considered and correctly rejected Keene's arguments. Accordingly, the Court should overrule Keene's objections.

**JIM PETRO (0022096)**
Ohio Attorney General


s/Charles L. Wille
**CHARLES L. WILLE (0056444)**
Senior Assistant Attorney General
Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 728-7055; (614) 728-8600 (fax)
Email: cwille@ag.state.oh.us

**COUNSEL FOR RESPONDENT**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing *Response to Objections* was sent via the Court's Electronic Filing System and first-class U.S. Mail, postage prepaid, this 18th day of October, 2004, to John S. Marshall **and** Rayl L. Stepter, Attorneys at Law, 111 West Rich Street - Suite 430, Columbus, Ohio, 43215; Counsel for Petitioner.

        s/Charles L. Wille
        **CHARLES L. WILLE**
        Senior Assistant Attorney General