IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

MARVALLOUS KEENE,

             Petitioner,             :       Case No. 1:00-cv-421

   - vs -                         Chief Judge Sandra S. Beckwith
                                  Chief Magistrate Judge Michael R. Merz

BETTY MITCHELL, Warden,

             Respondent.           :

---

**SUPPLEMENTAL REPORT AND RECOMMENDATIONS; ORDER DENYING
MOTION TO SUPPLEMENT THE RECORD**

---

       This case is before the Court on Petitioner's Objections (Doc. No. 99) to the Magistrate

Judge's Report and Recommendations on the merits (Doc. No. 96).  Respondent has filed a timely

Memorandum in Response (Doc. No. 101).  The case is also before the Court on Petitioner's post-

Report and Recommendations Motion to Expand the Record (Doc. No. 100), which Respondent

opposes (Doc. No. 102) and on which Petitioner has filed a Reply Memorandum in support (Doc. No.

103).

       The General Order of Reference for the Dayton location of court permits the Magistrate

Judges to reconsider decisions or reports and recommendations when objections are filed.

### Procedural History

       The five murders for which Petitioner was tried, convicted, and sentenced to death occurred

around Christmas, 1992.  The convictions were affirmed on direct appeal by the Montgomery County

1

Court of Appeals,  *State v. Keene*, 1996 WL 531606 (Ohio App. 2d Dist. September 20, 1996), and by the Ohio Supreme Court, *State v. Keene*, 81 Ohio St.3d 646,  693 N.E.2d 246 (1998).  The Court of Appeals affirmed denial of post-conviction relief,  *State v. Keene,* 1999 WL 55711 (Ohio App. 2d Dist. February 5, 1999), and the Ohio Supreme Court declined review

Petitioner filed his Notice of Intent August 19, 1999 (Doc. No. 2).  Judge Beckwith entered a Scheduling Order (Doc. No. 15) on October 27, 1999.  The case was referred to the Magistrate Judge on March 31, 2000, and the Petition (Doc. No. 20) was thereafter filed on May 26, 2000. Petitioner filed a Motion for Discovery (Doc. No. 24) on July 6, 2000, which the Magistrate Judge denied except for the request to depose trial counsel (Doc. No. 29) and Judge Beckwith affirmed on appeal (Doc. No. 58).[1]  Petitioner filed a Motion for Evidentiary Hearing (Doc. No. 61) on August 28, 2001) which the Magistrate Judge denied (Doc. No. 74) and which Judge Beckwith affirmed on appeal (Doc. No. 89).  The Magistrate Judge also recommended dismissal of some claims as procedurally defaulted (Doc. No. 73) and Judge Beckwith overruled Petitioner's Objections to that recommendation (Doc. No. 89).  After the merits briefs were filed, Judge Beckwith again referred the matter to the Magistrate Judge (Doc. No. 95).  The Report and Recommendations on the merits of the remaining claims was filed August 25, 2004 (Doc. No. 96).  At no time prior to the Report and Recommendations did Petitioner ever request to expand the record.

## Motion to Expand the Record

Petitioner moves to expand the record in this Court "to add the records of the trial of State of Ohio v. Weston Lee Howe, 92 CR 1673 (Montgomery County, 1993)."  The actual records tendered

---

[1]Petitioner never actually deposed his trial attorneys.

2

appear to be a portion (pp. 491-1413) of the trial transcript in that case. The Motion to Expand the Record is denied for the following reasons:

1. This transcript was never filed with the Montgomery County Common Pleas Court in Petitioner's state court case in support of his motion to dismiss the indictment for racially selective prosecution. Petitioner offers no explanation of why that was not done. The transcript in question was certified by the court reporter on August 19, 1993. Thus, as Respondent points out, the transcript was in existence and available to be filed with the trial court in Petitioner's case some six days before he filed his motion to dismiss, yet Petitioner did not tender the transcript to the Common Pleas Court or to any other Ohio court at any time during the pendency of the case in the state court system.

> Under AEDPA, a defendant who "failed to develop the factual basis of a claim in State court proceedings" cannot obtain an evidentiary hearing unless he satisfies two statutory exceptions not applicable here. 28 U.S.C. § 2254(e)(2). However, when a defendant diligently seeks an evidentiary hearing in the state courts in the manner prescribed, but the state courts deny him that opportunity, he can avoid § 2254(e)(2)'s barriers to obtaining a hearing in federal court. *Williams v. Taylor*, 529 U.S. 420, 437, 146 L. Ed. 2d 435, 120 S. Ct. 1479 (2000). A defendant fails to develop the factual basis of a claim only when he is at fault for failing to develop the factual record in state court, as when he or his counsel has not exercised proper diligence, or greater fault, in failing to develop the record. *Id.* at 432; *Moss v. Hofbauer*, 286 F.3d 851, 858-59 (6th Cir.), *cert. denied*, 537

U.S. 1092, 154 L. Ed. 2d 639, 123 S. Ct. 702 (2002). The test for "failed to develop" is defined as a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel" in his or her attempts to discover and present a claim in the state court. *Williams*, 529 U.S. at 432; *Thompson v. Bell*, 315 F.3d 566, 594 (6th Cir. 2003). Diligence for purposes of § 2254(e)(2) depends upon "whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in the state court." *Williams*, 529 U.S. at 435; *Thompson*, 315 F.3d at 594. If the petitioner did not fail to develop the facts in the state court, then the district court may hold an evidentiary hearing. *Williams*, 529 U.S. at 433; *Thompson*, 315 F.3d at 594; *Moss*, 286 F.3d at 859.

*McAdoo v. Elo,* 346 F. 3d 159, (6th Cir. 2003). Petitioner has made no showing of any diligence in presenting this evidence to the state courts. A habeas petitioner cannot "end run" the evidentiary

hearing limitations in 28 U.S.C. §2254(e)(2) by submitting evidence instead under an expansion of the record rubric; to allow this would be to thwart obvious Congressional intent in enacting the AEDPA.

2. Petitioner offers no explanation of why he waited until after the Report and Recommendations on the merits was filed to seek to expand the record.  At least in part, these records are offered to show the Magistrate Judge erred in not allowing discovery and an evidentiary hearing on Petitioner's Fifth and Sixth Grounds for Relief (Motion to Expand, Doc. No. 100, at 2).  However, the decisions to deny discovery and an evidentiary hearing were made in this case on September 12, 2000, and March 6, 2002, respectively, and those rulings were both affirmed by Judge Beckwith on appeal long before the Report and Recommendations on the merits were filed.  Why wasn't the Motion to Expand the Record made in support of either of those two Motions years ago?  Is the purpose of expanding the record to rely on appeal on these materials which were never available to this Court when it made the decisions to deny discovery and an evidentiary hearing?  The Motion to Expand the Record comes at least four years too late.

**Objections on the Merits**

Petitioner presents nineteen objections to the Report and Recommendations which are considered *seriatim* below.

**First Objection: The Magistrate Judge erred in denying Petitioner's First, Second, Third, Fourth, Twenty-Second, and Twenty-third Grounds for Relief when it [sic] ruled that the Ohio Supreme Court's decision did not result in one that was contrary to or which was an unreasonable application of clearly established federal law.**

(Objections, Doc. No. 99, at 1.)

Petitioner argues this Objection separately as to his First, Second, Third, and Fourth Grounds for Relief; although they are mentioned in the Objection, no argument is made as to the Twenty-Second and Twenty-Third Grounds.

**1.     First Ground for Relief**

**A.     Due Process**

**1.     Asserted Improper Weighing of Mitigating Evidence**

In his First Ground for Relief, Petitioner argued that the trial court's failure to comply  with the Ohio capital sentencing statutes when arriving at his death sentence deprived him of substantive and procedural due process in violation of the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution.  In his Objection, however, he argues only due process, equal protection, and the Eighth Amendment (Objections, Doc. No. 99, at 2-9).

The premise of Petitioner's First Ground for Relief is that the three-judge trial court did not in fact follow the Ohio capital sentencing statutes.  As evidence, Petitioner relies on the June 29, 2000, Affidavit of The Honorable Lee A. Bixler, one of the three judges.  In ¶ 6, Judge Bixler recites:

> In deliberations, we did not go through each count of the Indictment
> and make a determination as to how and whether the mitigation

> testimony would impact our decision on each Count.  Instead, we
> applied the mitigation evidence to the Indictment as a whole.  In other
> words, we weighed the aggravating circumstances of all the Counts in
> the indictment collectively, against all the mitigating evidence
> presented.

(Affidavit, Ex. D. to Doc. No. 24.)  There are numerous reasons why Judge Bixler's Affidavit does

not establish that the three-judge panel failed to follow Ohio law.

1. Judge Bixler's Affidavit contradicts the verdicts he signed in the case which all affirm that the

mitigating evidence was weighed against the aggravating circumstances on each Count separately.

In overruling this claim on appeal, the Ohio Supreme Court concluded:

> The sentencing opinion states, "In conclusion, after fully and carefully
> considering all the evidence presented, *** we unanimously find ***
> that the aggravating circumstances found with respect to each
> aggravated murder count outweigh the several mitigating factors***."
>
> The "with respect to each" language suggests that each count was
> evaluated separately.  If any ambiguity remains, the verdict forms
> clarify it.  The panel signed a separate verdict for each victim.  The
> verdict on Count Four states, "We do find that the aggravating
> circumstances in the aggravated murder of Joseph Wilkerson outweigh
> the mitigating circumstances [sic]."... The same language is used with
> respect to Counts Six (Gullette), Ten (Abraham), Seventeen (Cottrill),
> and Twenty (Washington).  Thus, as to each individual aggravated
> murder, the panel made a specific finding that the aggravating
> circumstances present with respect to that aggravated murder
> outweighed the mitigating factors.

*State v. Keene*,  81 Ohio St.3d at 663-64, 693 N.E.2d at 261.  Thus the sentencing opinion and the

multiple verdict forms, all of which were signed by Judge Bixler at the time judgment was handed

down in 1993, contradict the claim made in his Affidavit seven years later that the trial judges did not

follow the Ohio capital sentencing statutes.  Of course, the sentencing opinion and verdicts were also

signed by Judge Brown and Judge Nichols, since they were required to be unanimous.

2. Petitioner cannot properly rely on Judge Bixler's Affidavit as proof in this case.  Under 28

U.S.C. §2254(e)(2), a habeas corpus petitioner cannot obtain an evidentiary hearing at which he relies on evidence which he did not use due diligence to develop in the state court proceedings. *Michael Williams v. Taylor*, 529 U.S. 420, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000). According to *Michael Williams*, §2254(e)(2) codifies at least one aspect of the Court's decision in *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 112 S. Ct. 1715, 118 L. Ed. 2d 318 (1992): "prisoners who are at fault for the deficiency in the state-court record must satisfy a heightened standard to obtain an evidentiary hearing. . . ." 529 U.S. at 433-434. Petitioner had ample opportunity, having been represented by counsel at every point in time, to obtain Judge Bixler's Affidavit before it was obtained to be filed in this Court. Since it constitutes evidence outside the appeal record, it could have been obtained and presented with Petitioner's petition for post-conviction relief in the Common Pleas Court. Petitioner has offered no explanation why this was not done. He has accordingly not begun to show due diligence in obtaining and presenting this evidence.

3. Judge Bixler's Affidavit is uncross-examined hearsay. The provenance of the Affidavit is completely unexplained (e.g., how was it obtained? what representations were made to Judge Bixler about its intended use?).

4. Under 28 U.S.C. §2254(e)(1), a state court's findings of fact are presumed correct and may be rebutted by the petitioner only by clear and convincing evidence to the contrary. *Warren v. Smith,* 161 F. 3d 358, 360-61 (6th Cir. 1998). This statutory presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Brumley v. Wingard,* 269 F. 3d 629, 637 (6th Cir. 2001), citing *Sumner v. Mata,* 449 U.S. 539, 546-47 (1981). The Ohio Supreme Court found as a matter of fact that the trial court followed *State v. Cooey*, 46 Ohio St. 3d 20, 544 N.E. 2d 895 (1989), and weighed the mitigating evidence separately as to each

Count. Even if this Court were to accept the affidavit of one of those three trial judges, it would not establish by "clear and convincing evidence" that the Ohio Supreme Court was incorrect.

Even if the trial court had improperly weighed the mitigating evidence against the aggravating factors, the Ohio Supreme Court meticulously reweighed the evidence, which is part of its reviewing function under Ohio law, and came to the same conclusion as the trial court. The United States Supreme Court has expressly held that such appellate reweighing can cure errors in weighing evidence in the trial court. *Clemons v. Mississippi,* 494 U.S. 738 (1990).

Petitioner chides the Magistrate Judge for accepting the argument that appellate reweighing can cure the trial court improper weighing (assuming, arguendo, that it happened) because, Petitioner says, it is inconsistent with this Magistrate Judge's Report and Recommendation in *Sheppard v. Bagley*, Case No. 1:00-cv-493 (Report and Recommendations of June 1, 2004, at 94.) However, the two opinions deal with entirely different issues. In *Sheppard*, the undersigned recommended the District Judge find that prosecutorial misconduct could not be cured by appellate reweighing. In this case we are concerned with evidence reweighing. Not only are the issues logically different (how would one weigh misconduct against evidence?), but the precedent is different: the United States Supreme Court has expressly said that appellate reweighing can cure improper trial court weighing of evidence *(Clemons, supra)*, but has never held that it can cure prosecutorial misconduct.

## 2. **Other Due Process Claims**

In support of his First Ground for Relief, Petitioner had asserted other due process violations such as trial court consideration of an invalid aggravating circumstance, trial court's taking insufficient time to decide the case, and the trial court's treating the death penalty as mandatory. All of these claims were dealt with in the Ohio Supreme Court's decision and the Magistrate Judge's Report recommends concluding that decision was not an unreasonable application of Supreme Court

8

law. Petitioner makes no specific objection as to that recommendation on these other due process claims.

### B. Equal Protection Claim

Petitioner asserts the Report "fails to full address Mr. Keene's equal protection argument, found on pages 19 and 20 of his traverse." (Objections, Doc. No. 99, at 7.) However, no equal protection claim is pled in the First Ground for Relief. Petitioner adverts to arguments made in the Traverse, which is a pleading in which a petitioner is to respond to matter raised in the return of writ. The proper way of adding a claim would have been to move to amend the Petition, which was not done here.

Alternatively, the claim is without merit. Petitioner asserts that, because Ohio's capital sentencing statutes were not followed in his case, he was treated differently than all other Ohio capital defendants. This argument is also premised on the assertion that the trial court did not follow the Ohio capital sentencing statutes, but the Ohio Supreme Court found that it did.

The United States Supreme Court has recognized, as Petitioner notes, that an equal protection claim can be brought on behalf of a class of one "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), citing *Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.*, 488 U.S. 336 (1989). That is not and cannot be Petitioner's claim here: the three-judge panel which tried him did not treat any other capital defendant differently in terms of applying the sentencing statutes. Indeed, it did not have any other capital defendants before it at the time of this case or at any other time so far as the record shows.

### C.    Eighth Amendment Claim

Petitioner's objections related to the Eighth Amendment claim in his First Ground for Relief are a reprise of his due process claims.  They do not make any distinct argument and do not require separate analysis.

### 2. Second Ground for Relief:

In his Second Ground for Relief, Petitioner claimed that his death sentence was unreliable and inappropriate because the state courts had "failed to give effect to the mitigating evidence."  Petitioner incorporates into his Objections the section of the Traverse (Doc. No. 93 at 22-35) which argues this point.  There he summarized the mitigating evidence which was presented.

Both the sentencing opinion of the trial court and the decision of the Ohio Supreme Court considered the mitigating evidence which was presented.  Petitioner's argument is  essentially that the state court judges did not assign the proper weight to the mitigating evidence and that if they had, they could not have found that it was outweighed by the aggravating factors.

The relevant standard, of course, is that the aggravating circumstances must, beyond a reasonable doubt, outweigh the mitigating factors.  Petitioner's argument, as the Magistrate Judge understands it, must be that no reasonable factfinder could have reached that conclusion on this evidence.  Federal courts do not sit to reweigh the evidence in habeas cases, but to determine whether a reasonable factfinder could have reached the same conclusion as the trial court did.  *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).   Although Petitioner does not cite *Jackson* either in the Traverse or the Objections, in the Traverse he claims that the aggravating factors "in the case at hand did not outweigh the mitigation beyond a reasonable doubt."  (Doc. No. 93 at 30.) This appears to be an implicit reliance on the *Jackson* standard.

Without reciting all of the aggravating factors and mitigating evidence, the Magistrate Judge

simply disagrees.  Both the trial court and the Ohio Supreme Court carefully explained why they reached the conclusion they did and those explanations are persuasive.  Unlike the situation in a jury trial, this Court has the advantage of an explanation of the weighing and also of the reweighing by the Ohio Supreme Court.  Petitioner does not really address why no rational factfinder could have come to that conclusion, but merely presents the evidence as if to have this Court reweigh it.

**3. Third Ground for Relief.**

In his Third Ground for Relief, Petitioner argued that the trial judges did not spend enough time weighing the evidence in that they adjourned to do so at 3:37 p.m. and returned with the verdict at 4:55 p.m. on the same day.  In the Report, the Magistrate Judge noted that Petitioner had cited no clearly established law requiring a certain amount of time be spent on deliberations.  Petitioner's rejoinder in his Objections is that it is obvious that the panel could not have given effect to all the mitigating evidence presented if they purported to do so in so short a time.

The penalty phase of this case took three days to try, October 25-27, 1993.  *State v. Keene*, 1996 WL 531606 *3 (Ohio App. 2nd Dist. September 20, 1996).  Unlike a jury, a three-judge panel is not prohibited from discussing the case among themselves while the evidence is being presented.  Furthermore, none of these judges was a first-time factfinder as a juror would be; each of them had substantially more than ten years experience on the Common Pleas bench at the time of this trial.  Given these facts, the slightly less than an hour and a half spent on formal deliberations does not show that they failed to consider and give effect to the mitigating evidence.

**4. Fourth Ground for Relief.**

In his Fourth Ground for Relief, Petitioner argued that the trial court erred in concluding that the death penalty was mandatory rather than deciding whether it was appropriate in this case.  In his

Objections, Petitioner merely incorporates his former argument made in the Traverse (Doc. No. 93 at 39).

The language on which Petitioner relies is taken from the sentencing opinion: "the law of this State *requires* the imposition of the death penalty upon the Defendant."  *Id*., quoting the slip opinion at p. 12 (emphasis sic).  As pointed out by the Ohio Supreme Court, the quotation is taken out of context.  That court quoted the context:

> "In conclusion * * * we unanimously find beyond a reasonable doubt that the aggravating circumstances found with respect to each aggravated murder count outweigh the several mitigating factors established by a preponderance of the evidence.   Following these conclusions, the law of this State requires the imposition of the death penalty * * * ." (Emphasis added.)

> Clearly, the panel did not incorrectly believe that the death penalty was mandatory.   Rather, it correctly believed that, having found aggravation to outweigh mitigation, it was required to impose the death penalty.  See State v. Lawson (1992), 64 Ohio St.3d 336, 349, 595 N.E.2d 902, 912.

*State v. Keene*, 81 Ohio St. 3d 646, 664, 693 N.E. 2d 246, 262 (1998).  When the quotation is read in context, it accurately reflects application of Ohio law and that Ohio law has repeatedly been held to be constitutional.  It is not unconstitutional to require the death penalty if the State has proved beyond a reasonable doubt that aggravating circumstances outweigh mitigating factors.  *Blystone v. Pennsylvania,* 494 U.S. 299 (1990); *Boyde v. California*, 494 U.S. 370 (1990); *Williams v. Bagley,* 380 F. 3d 932  (6th Cir., 2004), citing *Buell v. Mitchell,* 274 F. 3d 337 (6th Cir. 2001); *Scott v. Anderson*, 58 F. Supp. 2d 767, 796 (N.D. Ohio 1998); *State v. Jells,* 53 Ohio St. 3d 22, 35-36, 559 N.E. 2d 464, 477 (1990).  Followed in *Zuern v. Tate,* 101 F. Supp. 2d 948 (S.D. Ohio 2000), *aff'd*., 336 F.3d 478 (6th Cir. 2003).

**Second Objection: Fifth Ground for Relief: The Magistrate Judge erred in refusing to permit discovery and a hearing upon the presentation of sufficient evidence of selective prosecution in Montgomery County (Petitioner's [sic] Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.)**

The rulings here objected to on the face of this Second Objection were not made in the Report and Recommendations now before the Court.  Rather, the Magistrate Judge denied discovery on this claim on September 12, 2000 (Decision and Order, Doc. No. 29).  Petitioner appealed and Judge Beckwith affirmed the denial of discovery (Doc. No. 58).  Petitioner filed his Motion for Evidentiary Hearing on this claim on August 28, 2001 (Doc. No. 61), the Magistrate Judge denied a hearing (Doc. No. 74), and Judge Beckwith affirmed (Doc. No. 89).  Denial of discovery and an evidentiary hearing on the Fifth Ground for Relief is now the law of the case and there has been no motion for reconsideration.

However, the Report and Recommendations does include a recommendation on the merits of the Fifth Ground for Relief, concluding that the Ohio Supreme Court's disposition of this claim was not contrary to clearly established federal law.  The Objections argue "The Magistrate Judge did not spend sufficient time in analyzing these killings in finding that there was no similarly situated case brought before the Court to warrant discovery on a selective prosecution claim."  (Objections, Doc. No. 99, at 13).  To the extent this point is directed to the ultimate recommendation on the merits, it is not the place of this Court to decide *de novo* whether the cases cited by Petitioner are sufficiently similar.  Rather, since the Ohio Supreme Court decided this constitutional claim, this Court's responsibility is to decide if that court's application of clearly established federal law is objectively reasonable or not.  Because a jurist could reasonably find that the cases relied on by Petitioner are not similarly situated, this Court has no basis to grant the writ on this Ground for Relief.

The Supreme Court has recently elaborated on the standard of review of state court decisions

13

in federal habeas corpus:

> The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under law. See *Williams v. Taylor,* 529 U.S. 362, 403-404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). To these ends, § 2254(d)(1) provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

> As we stated in *Williams,* § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. 529 U.S., at 404-405, 120 S.Ct. 1495. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. *Id.,* at 405-406, 120 S. Ct. 1495. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. *Id.,* at 407-408, 120 S.Ct. 1495. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one. *Id.,* at 409- 410, 120 S.Ct. 1495. See also *id.,* at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

*Bell v. Cone*, 535 U.S. 685; 122 S. Ct. 1843, 1849-50; 152 L. Ed. 2d 914 (2002).

**Third Objection: Sixth Ground for Relief: The Magistrate Judge erred by failing to grant Mr. Keene's motion to dismiss the capital indictment against him on the basis of the Montgomery**

14

**County Prosecutor's demonstrated racial bias in seeking the death penalty in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.**

The analysis of this Ground for Relief is combined in the Report and Recommendations with that for the Fifth Ground for Relief and no separate analysis is required here.

**Fourth Objection: Eighth Ground for Relief: The Magistrate Judge erred in failing to grant Petitioner's Motion for Change of Venue, effectively forcing him to involuntarily waive his constitutional right to a jury trial, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.**

(Objection, Doc. No. 99, at 17.)

This objection is somewhat incoherent: Petitioner never moved the Magistrate Judge to change venue.[2]  The context makes it clear that what he is objecting to is the failure of the Common Pleas Court to change venue for the trial.

Petitioner's argument is that because he waived his right to trial by jury while his motion for change of venue remained undecided, his jury waiver was essentially coerced.  Alternatively, he seems to be arguing in the objection that the three-judge panel must be presumed to have been prejudiced.  The objection fails to deal with the following points:

1. The issue of adverse pre-trial publicity was never raised at any point in the state court proceedings.

2. Petitioner never made a motion to recuse any of the three judges on the panel on the

---

[2]Petitioner also states "In a jury trial in another jurisdiction, Mr. Keene would have needed only one vote for acquittal amongst a panel of eight as opposed to one vote on a panel of three." (Objections, Doc. No. 99) Acquittal, of course, requires unanimity of a panel of twelve jurors.

ground that he was prejudiced, by pre-trial publicity or otherwise, against the
Petitioner.

3.      There is no clearly established federal law holding that a waiver of jury trial is
        involuntary because there is at the time of waiver a pending undecided motion for
        change of venue.

It is perfectly proper to decide a change of venue motion after attempting by voir dire to see
if one can seat an impartial jury. *Nevers v. Killinger,* 169 F. 3d 352, (6th Cir. 1999).  Petitioner's
Eighth Ground for Relief asks this Court to presume not only that any jury would have been
prejudiced, without having tested that proposition in voir dire, but also that any member of a three-
judge trial panel would have been prejudiced, without having tested that proposition by a motion to
recuse.  That would amount to a federal mandate for a change of venue every time there is sufficient
adverse pretrial publicity.  There is no clearly established federal law to that effect.


**Fifth Objection: Ninth Ground for Relief: The trial court erred in failing to suppress
identification of Mr. Keene when the identification procedures employed in the case at bar
were so unduly suggestive as to give rise to a very substantial likelihood of irreparable
misidentification in violation  of Mr. Keene's rights under the Fifth, Sixth, Eighth and
Fourteenth Amendments to the United states Constitution.**

(Objections, Doc. No. 99, at 18.)

The Ohio Supreme Court determined with respect to this claim that, even if the photo array
was unduly suggestive, any error in admitting it was harmless because there was overwhelming
additional evidence identifying Mr. Keene as the person who took Ms. Henderson's car at gunpoint,
including the fact that Keene was arrested in that car and confessed to taking it.  As noted in the
Report and Recommendations, the Ohio Supreme Court's decision on this point is a reasonable

16

application of clearly established United States Supreme Court law and there is consequently no basis for disturbing it in federal habeas corpus.


**Sixth Objection: Tenth Ground for Relief: The Magistrate Judge erred when it [sic] denied Petitioner's Tenth Ground for Relief.  ("When a trial court is aware of a capital defendant's propensity to acquiesce to authority figures, it is error to accept a jury waiver and permit a capital trial to proceed before a three-judge panel, in violation of the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution.")**

(Objections, Doc. No. 99, at 20.)

In his Tenth Ground for Relief, Petitioner essentially asserts that there is a special test for the voluntariness of a jury waiver when a defendant has a particular type of personality, to wit, one which is prone to "acquiesce to authority figures."  The Ohio Supreme Court rejected this claim on the merits, finding both that the supposed expert testimony establishing this personality trait had been rejected by the trial court and that there was no federal or state law recognizing an added burden for waiver of rights by a person having such a trait.  The Report and Recommendations concluded this was not an unreasonable application of clearly established federal law.  The Objections cite no federal law requiring any deference to psychological testimony of this sort or, assuming the testimony is accepted, finding any special burden for acceptance of a waiver of a jury by a person with such a personality.

As Respondent notes, Petitioner attempts to inject an entirely new basis for relief in this Objection, claiming for the first time that the jury trial waiver was invalid because "the trial court failed to inform petitioner or to insure that he understood that a jury in a capital murder case had to unanimously return *two* verdicts against him – one finding him guilty, and the other recommending death – before the trial judge could impose a death sentence," *quoting Sowell v. Anderson*, 2001 WL 1681142 at *1 (S. D. Ohio 2001)(Sargus, J.)

17

This additional claim for relief should be rejected for a number of reasons.  First of all, there is no authority in Fed. R. Civ. P. 72 for inserting an entirely new ground for relief in a set of objections to a report and recommendations.  Second, even if Petitioner sought leave to amend the Petition to make this argument, which would be the proper way to raise a new claim, the amendment would be without merit: the Sixth Circuit has overruled Judge Sargus' decision.  *Sowell v. Bradshaw*, 372 F. 3d 821 (6th Cir. 2004).[3]


**Seventh Objection: Eleventh Ground for Relief: The trial court erred when it failed to suppress the statements of Mr. Keene to the Dayton Police Department because the statements were involuntary and Mr. Keene did not make a knowing and intelligent waiver of his rights.  The trial court's action denied Mr. Keene his rights to a fair trial, due process and a reliable determination of his guilt and sentence as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.**

(Objections, Doc. No. 99, at 27.)

The Ohio Supreme Court's conclusion that Mr. Keene's waiver of his *Miranda* rights was knowing, intelligent, and voluntary was based upon the trial court's findings of fact, accepting the police officers' testimony about what happened when the confession was made and rejecting Mr. Keene's testimony.  The trial court also rejected Dr. Cherry's conclusions about why the confession was involuntary because, as he asserted, the waiver form was confusing.  The Magistrate Judge concluded that the Ohio Supreme Court decision was not contrary to clearly established federal law.

In his Objections, Petitioner ignores the fact that the state court decision was based on weighing competing evidence and essentially suggests that his own testimony of what happened when he confessed must be accepted.  That simply is not the law.

---

[3]The Sixth Circuit decision was handed down June 23, 2004, and the Objections were not filed until October 7, 2004.  It is a serious breach of professional responsibility to cite authority which has been expressly overruled without acknowledging the higher court opinion.

**Eighth Objection: Twelfth Ground for Relief: The trial court erred by admitting evidence over objection when the State failed to show that physical evidence offered at trial was not [sic] substantially in the same condition as it was at the time of the crime.  The admission of such evidence violated Mr. Keene's rights to due process, a fair trial and a reliable verdict under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.**

(Objections, Doc. No. 99, at 29.)

In the Objections, Petitioner argues that the Report and Recommendations fail to follow controlling law, but then cites as the controlling law Ohio R. Evid. 901(A) which requires that evidence be authenticated prior to admission.

In considering this claim, the Ohio Supreme Court held that the sneakers were authenticated even though the chain of custody was not perfect because, under Ohio R. Evid. 901(A), the chain of custody does not have to be perfect.  That is a controlling interpretation of Ohio evidence law.  Petitioner cites no federal constitutional precedent requiring the States to insist on a perfect chain of custody in criminal cases generally or in capital cases in particular.

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. §2254(a); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982), *Barclay v. Florida,* 463 U.S. 939, 103 S. Ct. 3418, 77 L. Ed. 2d 1134 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).

Whereas an appellate court on habeas review decides federal law questions *de novo*, the federal reviewing court is generally bound by state court interpretations of state law. *Vroman v. Brigano*, 346 F. 3d 598, (6th Cir. 2003); *Caldwell v. Russell*, 181 F. 3d 731, 735-36, (6th Cir. 1999);

19

*Duffel v. Dutton,* 785 F. 2d 131, 133 (6th Cir. 1986).

Evidentiary questions generally do not rise to the constitutional level unless the error was so prejudicial as to deprive a defendant of a fair trial. *Cooper v. Sowders*, 837 F. 2d 284, 286 (6th Cir.1988); *Walker v. Engle,* 703 F. 2d 959, 962 (6th Cir. 1983); *Bell v. Arn,* 536 F. 2d 123 (6th Cir., 1976); *Burks v. Egeler*, 512 F. 2d 221, 223 (6th Cir. 1975). Where an evidentiary error is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief. *Bugh v. Mitchell,* 329 F. 3d 496 (6th Cir. 2003), *citing Coleman v. Mitchell*, 244 F. 3d 533, 542 (6th Cir. 2000). Courts have, however, defined the category of infractions that violate fundamental fairness very narrowly. *Bugh, quoting Wright v. Dallman*, 999 F. 2d 174, 178 (6th Cir. 1993)(*quoting Dowling v. United States*, 493 U.S. 342, 352 (1990). "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker,* 224 F. 3rd 542, 552 (6th Cir. 2000)(*quoting Montana v. Egelhoff*, 518 U.S. 37, 43 (1996). Here, even assuming the Ohio Supreme Court ruling is wrong, there is no violation of fundamental fairness: Petitioner admitted to killing the former owner of the sneakers and described in detail how a co-defendant forced the victim to take them off.

## Other Objections

In his Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, Seventeenth, Eighteenth, and Nineteenth Objections, Petitioner incorporates by reference the arguments he made in support of the related Grounds for Relief in his Traverse. Therefore, no further

analysis is warranted of these Objections.

### Conclusion

Having reexamined the relevant Grounds for Relief in light of Petitioner's Objections, the Magistrate Judge again respectfully recommends that the Petition be dismissed with prejudice.

February 24, 2005.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).