concurring); Utah v. Pierre, 572 P.2d 1338 (Utah 1977) (Maughan, J., concurring and dissenting). Moreover, where fundamental rights are involved personal liberties cannot be broadly stifled "when the end can be more narrowly achieved." Shelton v. Tucker, 364 U.S. 479 (1960). To take a life by mandate, the State must show that it is the "least restrictive means" to a "compelling governmental end." O'Neal, 339 N.E.2d at 678.

The death penalty is neither the least restrictive nor an effective means of deterrence. Both isolation of the offender and retribution can be effectively served by less restrictive means. Society's interests do not justify the death penalty.


**B.      Unreliable Sentencing Procedures.**

The Due Process and Equal Protection Clauses prohibit arbitrary and capricious procedures in the State's application of capital punishment. Gregg v. Georgia, 428 U.S. 153, 188, 193-95 (1976); Furman, 408 U.S. at 255, 274. Ohio's scheme does not meet those requirements. The Statute does not require the State to prove the absence of any mitigating factors or that death is the only appropriate penalty.

The statutory scheme is unconstitutionally vague which leads to the arbitrary imposition of the death penalty. The language "that the aggravating circumstances ... outweigh the mitigating factors" invites arbitrary and capricious jury decisions. "Outweigh" preserves reliance on the lesser standard of proof by a preponderance of the evidence. The statute requires only that the sentencing body be convinced beyond a reasonable doubt that the aggravating circumstances were marginally greater than the mitigating factors. This creates an unacceptable risk of arbitrary or capricious sentencing. Additionally, the mitigating circumstances are vague. The jury must be given "specific

and detailed guidance" and be provided with "clear and objective standards" for their sentencing discretion to be adequately channeled. Gregg, supra; Godfrey v. Georgia, 446 U.S. 420 (1980).

Ohio courts continually hold that the weighing process and the weight to be assigned to a given factor is within the individual decision-maker's discretion. State v. Fox, 69 Ohio St.3d 183, 193, 631 N.E.2d 124, 132 (Ohio 1994). Giving so much discretion to juries inevitably leads to arbitrary and capricious judgments. The Ohio open discretion scheme further risks that constitutionally relevant mitigating factors that must be considered as mitigating (youth or childhood abuse (Eddings v. Oklahoma, 455 U.S. 104 (1982)), mental disease or defect (Penry v. Lynaugh, 492 U.S. 302 (1989)), level of involvement in the crime (Enmund v. Florida, 458 U.S. 782 (1982)), or lack of criminal history (Delo v. Lashley, 507 U.S. 272 (1993)) will not be factored into the sentencer's decision. While the federal constitution may allow states to shape consideration of mitigation, see Johnson v. Texas, 509 U.S. 350 (1993), Ohio's capital scheme fails to provide adequate guidelines to sentencers, and fails to assure against arbitrary, capricious, and discriminatory results.

Empirical evidence is developing in Ohio and around the country that, under commonly used penalty phase jury instructions, juries do not understand their responsibilities and apply inaccurate standards for decision. See Cho, Capital Confusion: The Effect of Jury Instructions on the Decision To Impose Death, 85 J. Crim. L. & Criminology 532, 549-557 (1994), and findings of Zeisel discussed in Free v. Peters, 12 F.3d 700 (7th Cir. 1993). This confusion violates the federal and state constitutions. Because of these deficiencies, Ohio's statutory scheme does not meet the requirements of Furman and its progeny.

### C.    Lack of Individualized Sentencing.

The Ohio statutes are unconstitutional because they require proof of aggravating circumstances in the liability phase of the bifurcated proceeding. The Supreme Court has approved schemes that separate the consideration of aggravating circumstances from the determination of guilt. Those schemes provide an individualized determination and narrow the category of defendants eligible for the death penalty. See Zant v. Stephens, 462 U.S. 862 (1983); Barclay v. Florida, 463 U.S. 939 (1983). Ohio's statutory scheme cannot provide for those constitutional safeguards.

The jury must be free to determine whether death is the appropriate punishment for a defendant. Requiring proof of the aggravating circumstances simultaneously with proof of guilt effectively prohibits a sufficiently individualized determination in sentencing as required by post-Furman cases. See, Woodson, 428 U.S. at 961. This is especially prejudicial because this is accomplished without consideration of any mitigating factors.

### D.    Defendant's Right to a Jury Is Burdened.

The Ohio scheme is unconstitutional because it imposes an impermissible risk of death on capital defendants who choose to exercise their right to a jury trial. A defendant who pleads guilty or no contest benefits from a trial judge's discretion to dismiss the specifications "in the interest of justice." Ohio R. Crim. P. 11 (C)(3). Accordingly, the capital indictment may be dismissed regardless of mitigating circumstances. There is no corresponding provision for a capital defendant who elects to proceed to trial before a jury.

Justice Blackmun found this discrepancy to be constitutional error. Lockett v. Ohio, 438 U.S. 586, 617 (1978) (Blackmun, J., concurring). This disparity violated United States v. Jackson,

390 U.S. 570 (1968), and needlessly burdened the defendant's exercise of his right to a trial by jury. Since the Supreme Court's decision in <u>Lockett</u>, this infirmity has not been cured and Ohio's statute remains unconstitutional.

### E.    Mandatory Submission of Reports and Evaluations.

Ohio's capital statutes are unconstitutional because they require submission of the pre-sentence investigation report and the mental evaluation to the jury or judge once requested by a capital defendant.  O.R.C. sec. 2929.03(D)(1).  This mandatory submission prevents trial counsel from giving effective assistance and prevents the defendant from effectively presenting his case in mitigation.

### F.    The Definition of Mitigating Factors in O.R.C. sec. 2929.04(b)(7) Violates the Reliability Component of the Eighth Amendment.

"Any other factors that are relevant to the issue of whether the offender should be sentenced to <u>death</u>" may be introduced as mitigation under O.R.C. sec. 2929.04(B)(7). (emphasis added).  The Court's charge and the definition in O.R.C. sec. 2929.04(B)(7) are unconstitutional.  Both permit the sentencer to convert (B)(7) mitigation into reasons for imposing death.

The Eighth Amendment requires that the class of death eligible offenders be narrowly and rationally guided by state law.  <u>McCleskey v. Kemp</u>, 481 U.S. 279, 305 (1987).  In Ohio, the factors that make a defendant death-eligible are detailed in O.R.C. sec. 2929.04(A).  The (B)(7) definition eviscerates the narrowing achieved by O.R.C. sec. 2929.04(A) because it literally invites the sentencer to consider any factor relevant to imposing death.  That language creates a "reasonable likelihood" that the sentencer will view proffered (B)(7) mitigation as a non-statutory aggravator,

rather than evidence that weighs against a death sentence. <u>See</u> <u>Stringer v. Black</u>, 503 U.S. 222, 231-235 (1992); <u>Boyde v. California</u>, 494 U.S. 370, 380-81 (1990).

The (B)(7) definition also precludes the jury from giving mitigating evidence its full consideration and effect. The intent was to allow the jury to consider all relevant evidence supporting a life sentence. <u>See</u> <u>Lockett v. Ohio</u>, 438 U.S. 586; <u>see</u> <u>also</u> O.R.C sec. 2929.04(C). Poor wording frustrates the General Assembly's intent. The definition shifts the focus of the (B)(7) mitigating evidence to reasons to impose a death sentence. Because (B)(7) mitigating evidence can be construed as an aggravating factor, it is stripped of its full mitigating effect. To satisfy the Eighth Amendment, each actor in the capital sentencing scheme must be able to give consideration and full mitigating effect to all relevant mitigating evidence offered by the defendant. <u>Penry v. Lynaugh</u>, 492 U.S. 302; <u>Eddings v. Oklahoma</u>, 455 U.S. 104; <u>Lockett</u>, 438 U.S. 586. <u>See</u> <u>Graham v. Collins</u>, 506 U.S. 461, 510 (1993) (Souter, J. dissenting).

### G.    O.R.C. sec. 2929.04(A)(7) Is Constitutionally Invalid When Used to Aggravate O.R.C. sec. 2903.01(B) Aggravated Murder.

"[T]o avoid [the] constitutional flaw of vagueness and overbreadth under the Eighth Amendment, an aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence of a defendant as compared to others found guilty of (aggravated) murder." <u>Zant v. Stephens</u>, 462 U.S. 862, 877 (1983). Ohio's statutory scheme fails to meet this constitutional requirement because O.R.C. sec. 2929.04(A)(7) fails to genuinely narrow the class of individuals eligible for the death penalty.

O.R.C. sec. 2903.01(B) defines the category of felony-murderers. If any factor listed in O.R.C. sec. 2929.04(A) is specified in the indictment and proved beyond a reasonable doubt the defendant becomes eligible for the death penalty. O.R.C. sec. 2929.02(A) and 2929.03. The scheme is unconstitutional because the O.R.C. sec. 2929.04(A)(7) aggravating circumstance merely repeats, as an aggravating circumstance, factors that distinguish aggravated felony-murder from murder. O.R.C. sec. 2929.04(A)(7) repeats the definition of felony-murder as alleged, which automatically qualifies the defendant for the death penalty. O.R.C. sec. 2929.04(A)(7) does not reasonably justify the imposition of a more severe sentence on felony-murderers. But, the prosecuting attorney and the sentencing body are given unbounded discretion that maximizes the risk of arbitrary and capricious action and deprivation of a defendant's life without substantial justification. The aggravating circumstance must therefore fail. Zant, 462 U.S. at 877.

As compared to other aggravated murderers, the felony-murderer is treated more severely. Each O.R.C. sec. 2929.04(A) circumstance, when used in connection with O.R.C. sec. 2903.01(A), adds an additional measure of culpability to an offender such that society arguably should be permitted to punish him more severely with death. But the aggravated murder defendant alleged to have killed during the course of a felony is automatically eligible for the death penalty - not a single additional proof of fact is necessary.

The killer who kills with prior calculation and design is treated less severely, which is also nonsensical because his blameworthiness or moral guilt is higher, and the argued ability to deter him is less. From a retributive stance, this is the most culpable of mental states. Comment, The Constitutionality of Imposing the Death Penalty for Felony Murder, 15 Hous. L. Rev. 356, 375 (1978).

Felony-murder also fails to reasonably justify the death sentence because the Ohio Supreme Court has interpreted O.R.C. sec. 2929.04(A)(7) as not requiring that intent to commit a felony precede the murder. State v. Williams, 74 Ohio St.3d 569, 660 N.E.2d 724, syl. 2 (1996). The asserted state interest in treating felony-murder as deserving of greater punishment is to deter the commission of felonies in which individuals may die. Generally courts have required that the killing result from an act done in furtherance of the felonious purpose. Id., referencing the Model Penal Code. Without such a limitation, no state interest justifies a stiffer punishment. Ohio has discarded the only arguable reasonable justification for the death sentence to be imposed on such individuals, a position that engenders constitutional violations. Zant v. Stephens, 462 U.S. 862 (1983). Further, the Ohio Supreme Court's current position is inconsistent with previous cases, thus creating the likelihood of arbitrary and inconsistent applications of the death penalty. See e.g., State v. Rojas, 64 Ohio St. 3d 131, 592 N.E.2d 1376 (1992).

Equal protection of the law requires that legislative classifications be supported by, at least, a reasonable relationship to legitimate state interests. Skinner v. Oklahoma, 316 U.S. 535 (1941). Ohio has arbitrarily selected one class of murderers who may be subjected to the death penalty automatically. This statutory scheme is inconsistent with the purported state interests. There is no rational basis or any state interest for this distinction and its application is arbitrary and capricious.

**H.      O.R.C. sec. 2929.03(D)(1) and 2929.04 Are Unconstitutionally Vague.**

O.R.C. sec. 2929.03(D)(1)'s reference to "the nature and circumstances of the aggravating circumstance" incorporates the nature and circumstances of the offense into the factors to be weighed in favor of death.  The nature and circumstances of an offense are, however, statutory mitigating factors under O.R.C. sec. 2929.04(B).  O.R.C. sec. 2929.03(D)(1) makes Ohio's death penalty weighing scheme unconstitutionally vague because it gives the sentencer unfettered discretion to weigh a statutory mitigating factor as an aggravator.

To avoid arbitrariness in capital sentencing, states must limit and channel the sentencer's discretion with clear and specific guidance.  Lewis v. Jeffers, 497 U.S. 764, 774 (1990); Maynard v. Cartwright, 486 U.S. 356, 362 (1988).  A vague aggravating circumstance fails to give that guidance.  Walton v. Arizona, 497 U.S. 639, 653 (1990); Godfrey, 446 U.S. at 428.  Moreover, a vague aggravating circumstance is unconstitutional whether it is an eligibility or a selection factor.  Tuilaepa v. California, 512 U.S. 967 (1994).  The aggravating circumstances in O.R.C. sec. 2929.04(A)(1)-(8) are both.

O.R.C. sec. 2929.04(B) tells the sentencer that the nature and circumstances of the offense are selection factors in mitigation.  Moreover, because the nature and circumstances of the offense are listed only in O.R.C. sec. 2929.04(B), they must be weighed only as selection factors in mitigation.  See State v. Wogenstahl, 75 Ohio St.3d 344, 356, 662 N.E.2d 311, 321-322 (1996).  However, the clarity and specificity of O.R.C. sec. 2929.04(B) is eviscerated by O.R.C. sec. 2929.03(D)(1); selection factors that are strictly mitigating become part and parcel of the aggravating circumstance.

Despite wide latitude, Ohio has carefully circumscribed its selection factors into mutually exclusive categories. See O.R.C. sec. 2929.04(A) and (B); Wogenstahl, 75 Ohio St.3d at 356, 662 N.E.2d at 321-22.  O.R.C. sec. 2929.03(D)(1) makes O.R.C. sec. 2929.04(B) vague because it incorporates the nature and circumstances of an offense into the aggravating circumstances.  The sentencer cannot reconcile this incorporation.  As a result of O.R.C. sec. 2929.03(D)(1), the "nature and circumstances" of any offense become "too vague" to guide the jury in its weighing or selection process.  See Walton, 497 U.S. at 654.  O.R.C. sec. 2929.03(D)(1) therefore makes O.R.C. sec. 2929.04(B) unconstitutionally arbitrary.

O.R.C. sec. 2929.03(D)(1) is also unconstitutional on its face because it makes the selection factors in aggravation in O.R.C. sec. 2929.04(A)(1)-(8) "too vague."  See Walton, 497 U.S. at 654. O.R.C. sec. 2929.04(A)(1)-(8) gives clear guidance as to the selection factors that may be weighed against the defendant's mitigation.  However, O.R.C. sec. 2929.03(D)(1) eviscerates the narrowing achieved.  By referring to the "nature and circumstances of the aggravating circumstance," O.R.C. sec. 2929.03(D)(1) gives the sentencer "open-ended discretion" to impose the death penalty.  See Maynard, 486 U.S. at 362.  That reference allows the sentencer to impose death based on (A)(1)-(8) plus any other fact in evidence arising from the nature and circumstances of the offense that the sentencer considers aggravating.  This eliminates the guided discretion provided by O.R.C. sec. 2929.04(A).  See Stringer, 503 U.S. at 232.

## I.    Proportionality and Appropriateness Review.

O.R.C. sec. 2929.021 and 2929.03 require that data be reported to the courts of appeals and to the Ohio Supreme Court. There are substantial doubts as to the adequacy of the information received after guilty pleas to lesser offenses or after charge reductions at trial. O.R.C. sec. 2929.021 requires only minimal information on these cases. Additional data is necessary to make an adequate comparison in these cases. This prohibits adequate appellate review.

Adequate appellate review is a precondition to the constitutionality of a state death penalty system. Zant, 462 U.S. at 879; Pulley v. Harris, 465 U.S. 37 (1984). The standard for review is one of careful scrutiny. Zant, 462 U.S. at 884-85. Review must be based on a comparison of similar cases and ultimately must focus on the character of the individual and the circumstances of the crime. Id. In addition, Ohio's statutes' failure to require the jury or three-judge panel recommending life imprisonment to identify the mitigating factors undercuts adequate appellate review. Without this information, no significant comparison of cases is possible. Without a significant comparison of cases, there can be no meaningful appellate review.

The comparison method is also constitutionally flawed. Review of cases where the death penalty was imposed satisfies the proportionality review required by O.R.C. sec. 2929.05(A). State v. Steffen, 31 Ohio St. 3d 111, 509 N.E.2d 383, syl. 1 (1987). However, this prevents a fair proportionality review. There is no meaningful manner to distinguish capital defendants who deserve the death penalty from those who do not.

The Ohio Supreme Court's appropriateness analysis is also constitutionally infirm. O.R.C. sec. 2929.05(A) requires appellate courts to determine the appropriateness of the death penalty in each case. The Statute directs affirmance only where the court is persuaded that the aggravating

circumstances outweigh the mitigating factors and that death is the appropriate sentence. Id. The Ohio Supreme Court has not followed these dictates. The appropriateness review conducted is very cursory. It does not "rationally distinguish between those individuals for whom death is an appropriate sanction and those for whom it is not." Spaziano v. Florida, 468 U.S. 447, 460 (1984).

The cursory appropriateness review also violates the capital defendant's due process rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. The General Assembly provided capital appellants with the statutory right of proportionality review. When a state acts with significant discretion, it must act in accordance with the Due Process Clause. Evitts v. Lucey, 469 U.S. 387, 401 (1985). The review currently used violates this constitutional mandate. An insufficient proportionality review violated Petitioner Keene's due process liberty interest in O.R.C. sec. 2929.05.

### J.    Electrocution Is Cruel and Unusual Punishment.

O.R.C. sec. 2949.22 authorizes execution by a "current of electricity." This mode of punishment offends contemporary standards of decency. Trop v. Dulles, 336 U.S. 77 at 101 (1949). Electrocution inflicts unnecessary pain and suffering. See Denno, Is Electrocution an Unconstitutional Method of Execution? The Engineering of Death over the Century, 35 Wm. & Mary L. Rev. 551, 637-43, 672-72 (1994). See also Clisby v. Alabama, 514 U.S. 1093 (1995) (Stevens, Ginsburg, Breyer, JJ., dissenting from denial of stay); Poyner v. Murray, 508 U.S. 931, 932 (1993) (Souter, Blackmun, Stevens, JJ., dissenting from denial of certiorari). Cf. Gregg v. Georgia, 428 U.S. 153 at 173 (1976) (Eighth Amendment proscribes "the unnecessary and wanton infliction of pain").

Ohio's death penalty scheme fails to ensure that arbitrary and discriminatory imposition of the death penalty will not occur. The procedures actually promote the imposition of the death penalty and, thus, are constitutionally intolerable. Ohio Revised Code sec. 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04, and 2929.05 violate the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, sec. 2, 9, 10, and 16 of the Ohio Constitution and international law. This matter deserves encouragement to proceed further via appellate review.

## TWENTY-EIGHTH GROUND FOR RELIEF

**PETITIONER KEENE WAS DENIED HIS RIGHT TO COUNSEL, DUE PROCESS, EQUAL PROTECTION, A FAIR PROCEEDING, AN IMPARTIAL TRIBUNAL, A RELIABLE SENTENCE, AND AN ADEQUATE CORRECTIVE PROCESS DURING HIS POST-CONVICTION PROCEEDINGS, IN VIOLATION OF MR. KEENE'S RIGHTS UNDER THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

O.R.C. sec. 2953.21 does not provide an adequate corrective process due to the limitations placed on the remedy by the Ohio Supreme Court. In State v. Perry, 10 Ohio St. 2d 175, 226 N.E.2d 104 (1967), that court held at paragraph nine of its syllabus that:

> Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment or conviction, or on an appeal from that judgment.

69

The Sixth Circuit has criticized the Perry interpretation of state post-conviction review several times.[5]

Post-conviction relief granted by trial courts has occurred under only the rarest of circumstances.[6] There is little opportunity for factual development in the post-conviction process in the State of Ohio. An individual seeking post-conviction relief is not entitled to an evidentiary hearing until he produces sufficient evidence outside of the record to demonstrate that he is entitled to relief. However, a post-conviction petitioner is not entitled to conduct discovery to obtain such evidence to warrant a hearing until he demonstrates that a hearing is necessary. The post-conviction petitioner is caught in the classic "Catch 22" situation. He cannot obtain a hearing until he demonstrates adequate proof of a constitutional violation, but he cannot utilize the means to gather the proof until he submits to the court sufficient proof of the constitutional violation.

The record of the Ohio intermediate appellate courts with respect to capital post-conviction review is as cursory as the Ohio trial court's record. The Ohio Supreme Court has discretionary review as to capital post-conviction cases. It has never accepted jurisdiction to hear a capital post-conviction case. Even though states may not be required to provide post-conviction relief as the Court suggests, when such relief is provided, it must be consistent with the fundamental fairness mandated by the Due Process Clause as comport with other constitutional mandates. Pennsylvania v. Finley, 481 U.S. 551, 557 (1987). Jurists could disagree on this matter. The errors and omissions

---

[5]See, Coley v. Alvis, 381 F.2d 870, 872 (6th Cir. 1967) (AThe Perry decision has rendered such process ineffective...); Allen v. Perini, 424 F.2d 134, 139 (6th Cir. 1970) (AWe are not convinced that an appeal would be futile under the decision of the Supreme Court of Ohio in State v. Perry....@); See, also, Keener v. Ridenour, 594 F.2d 581, 590 (6th Cir. 1979).
[6]State v. Barnes, No. CR83-5911 (Lucas C.P. May 17, 1991).

violated Petitioner Keene's rights under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments

to the United States Constitution.

The Court reserved discussion of the Nineteenth Ground for Relief for last and as such,

Petitioner addresses it here in his Motion.


## NINETEENTH GROUND FOR RELIEF

**THE INEFFECTIVE ASSISTANCE OF COUNSEL PROVIDED TO MR. KEENE VIOLATED HIS RIGHTS TO A FAIR AND IMPARTIAL JURY TRIAL AND SENTENCE, AS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

Trial counsel's deficient performance prejudiced Mr. Keene. Williams v. Taylor, 59 U.S. 362

(2000); Strickland v. Washington, 466 U.S. 668, 688 (1984).


### A.    Deficient Performance At The Pre-Trial And Trial Phases.

Trial counsel erred in the following manner: (1) permitting Mr. Keene to waive a jury (Tenth

Ground), and failing to properly advise Mr. Keene in this regard; (2) failing to request dismissal of

the improper aggravator of "burglary and/or robbery" in Count Four (Twentieth Ground); (3) failing

to adequate investigate and present evidence of racial bias in prosecutions in Montgomery County

(Fifth Ground); (4) failing to object to Mr. Keene being tried and convicted on felony-murder and

the duplicative underlying felonies (Twenty-First Ground); (5) failing to request dismissal of felony-

murder specifications which did not comport with the requirements of O.R.C. sec. 2929.04(A)(7)

and State v. Penix, 32 Ohio St. 3d 369, 513 N.E.2d 744 (1987) (Fourteenth Ground); (5) failing to

move to recuse Judge Brown from the case after he promised to recuse himself (Seventh Ground);

71

(6) failing to object to prosecutorial misconduct (Seventeenth Ground); (7) failing to object to improper other acts evidence (Thirteenth Ground); (8) failing to object to repetitive, gruesome photographs, used by the State (Thirteenth Ground); (9) failing to attempt to seat a jury, after the trial court deferred ruling on their motion to change venue until that time (Eighth Ground); (10) failing to obtain a full ruling from the trial court on all requests for discovery of information pertaining to racial bias in prosecutions in Montgomery County (Fifth Ground); and (11) failing to obtain and present expert testimony at Mr. Keene's suppression hearing to show that his confession was involuntary, because Mr. Keene was under the influence of alcohol and drugs (Eleventh Ground).

There was no reasonable strategic basis for counsel's acts and omissions. These acts and omissions prejudiced Mr. Keene. Failing to act did not favor Mr. Keene in any way.

### B.    Deficient Performance At Mitigation Phase.

Trial counsel erred in the following manner: (1) permitting Mr. Keene to waive a jury (Tenth Ground), and failing to properly advise Mr. Keene in this regard; (2) failing to request the trial court to disregard consider Count Four (which improperly charged Mr. Keene with "burglary and/or robbery") (Twentieth Ground for Relief); (3) failing to object to the imposition of the death penalty as violative of treaties entered into by the United States of America, and thus, as violative of the Supremacy Clause of the United States Constitution (Twenty-Fifth Ground); and (4) failing to object to prosecutorial misconduct (Sixteenth Ground).

Reasonable judges could conclude differently than did this Court with regard to the Petitioner's ineffective assistance of counsel claim. There was no reasonable strategic basis for counsel's acts and omissions and they resulted in prejudice to Mr. Keene.

72

**C.    A CERTIFICATE OF APPEALABILITY SHOULD BE GRANTED WITH REGARD TO PETITIONER'S PROCEDURALLY DEFAULTED CLAIMS.**

The Court dismissed, on the basis of procedural default, the Seventh, Thirteenth, Fifteenth (in part), Seventeenth (in part), Twentieth, Twenty-Fourth, Twenty-Fifth (in part), Twenty-Sixth and Twenty-Seventh Grounds for Relief. Petitioner Keene's claims should not have been procedurally defaulted. If an appellate court found that any or all were properly defaulted, cause and prejudice exists to excuse each and every default. Lastly, a miscarriage of justice would occur if any Ground were procedurally defaulted.

The Sixth Circuit has held that when a respondent asserts a procedural default defense, the reviewing court must undertake an analysis to verify that the respondent has truly established the particular defense that he asserts. Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986). A respondent must prove that all of the components of a procedural default have occurred in order to establish the existence of the procedural default. Should the Respondent successfully meet its burden, the *habeas* court still may excuse the procedural default by finding cause and prejudice or by finding that the application of a procedural default would result in a miscarriage of justice.

Under Maupin, the Respondent had to plead and prove that: (1) there is a state procedural rule that is applicable to the Petitioner's claim; (2)    the Petitioner failed to comply with the state procedural rule; (3) that the state courts have actually enforced the state procedural sanction; and (4) that the state procedural rule is an adequate and independent ground justifying foreclosure of federal review. Maupin, 785 F.2d at 138. The federal *habeas* court need not promote a state procedural bar that has no foundation in state law. Bransford v. Brown, 806 F.2d 83, 84-85 (6th Cir. 1986); Walker v. Engle, 703 F.2d 959, 966 (6th Cir. 1983). Whether a state procedural rule is adequate is a question

73

to be determined by the federal habeas court. Johnson v. Cowley, 40 F.3d 341, 344 (10th Cir. 1994).

A rule is not adequate where it is not "firmly established and a regularly followed state practice."

Ford v. Georgia, 498 U.S. 411, 423 (1991), quoting James v. Kentucky, 466 U.S. 341, 348-349

(1984).  See Hathorn v. Lovorn, 457 U.S. 255, 262-263 (1982); Dugger v. Adams, 489 U.S. 401,

410-411 n.6 (1989) (state procedural default rule that is not consistently applied is "not [an]

adequate" state ground); Johnson v. Mississippi, 486 U.S. 578, 587 (1988); Barr v. City of

Columbia, 378 U.S. 146, 149 (1964) ("State courts may not avoid deciding federal issues by

invoking procedural rules that they do not apply evenhandedly to all similar cases.").

A state rule is not an adequate rule where the rule was not regularly enforced at the time of

petitioner's conviction. Rogers v. Howes, 144 F.3d 990, 995 n.5 (6th Cir. 1998).  See also Mapes v.

Coyle, 171 F.3d 408 (6th Cir. 1999) (state court decision rejecting ground for relief based upon faulty

circular reasoning did not constitute adequate rule).   Whether a state procedural rule is an

independent rule is a question for the federal *habeas* court to determine. Johnson, 40 F.3d at 344.

A rule is not independent if the state ground for the decision is so "interwoven with federal law" that

the ground is not independent of federal law. Coleman v. Thompson, 501 U.S. 722, 725 (1991),

quoting Michigan v. Long, 463 U.S. 1032, 1040-1041 (1983).  That is, the rule is not independent

if the answer to the state law question relies upon the answer to a federal law question.

Because Respondent failed to meet all four requirement of the Maupin test, the procedural

default defense should not have been granted. Where, as here, the Court determined that a ground

was procedurally defaulted, the Court shall still review the ground upon a finding of cause and

prejudice or a finding that the application of procedural default would result in a miscarriage of

justice.

74

Cause and prejudice are factual questions that the federal habeas court must determine. <u>See</u> <u>Johnson v. Mississippi,</u> 486 U.S. 578, 587 (1988) (federal questions). Generally, "the existence of cause .. must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the ... procedural rule." <u>Murray v. Carrier,</u> 477 U.S. 478, 488 (1986). The Supreme Court has never precisely defined the term "cause" in the context of an exception to a procedural default. <u>Amadeo v. Zant,</u> 486 U.S. 214, 221-222 (1988); <u>Smith v. Murray,</u> 477 U.S. 527 (1986) (standard is flexible). One example of cause is constitutionally ineffective assistance of counsel. <u>Murray,</u> 477 U.S. 478.

Similar to cause, neither the Supreme Court nor the Sixth Circuit has precisely defined "prejudice" in the context of an exception to a procedural default. Generally, the petitioner must have been actually and substantially disadvantaged. <u>United States v. Frady,</u> 456 U.S. 152, 170 (1982); <u>Moore v. Carlton,</u> 74 F.3d 689, 691 n.3 (6th Cir. 1996). <u>See United States v. Jackson,</u> 181 F.3d 740 (6th Cir. 1999) (prejudice is a fact-intensive inquiry); <u>Parkus v. Delo,</u> 33 F.3d 933, 938-940 (8th Cir. 1994) (prejudice exists where confidence in the outcome is undermined). Prejudice is established by examining the merits of the underlying issue, the reasons that a constitutional violation occurred and the manner in which the constitutional violation rendered the proceedings unfair. A strong showing of cause may help the petitioner show prejudice; similarly, a strong showing of prejudice may help the petitioner show cause. <u>See Amadeo v. Kemp,</u> 816 F.2d 1502 (11th Cir. 1987), reversed on other grounds sub. nom. <u>Amadeo v. Zant,</u> 486 U.S. 214 (1988).

The Court found procedural default because trial counsel failed to object and because Ohio's contemporaneous objection rule is an adequate and independent procedural rule. Although Petitioner recognizes the Sixth Circuit's decision in <u>Scott v. Mitchell,</u> 209 F.3D 854 (6th Cir. 2000) addressed

this issue, Petitioner notes that <u>Scott</u>'s examination of the contemporaneous objection rule was (1) a review of the state of the law in 1988 and 1989, whereas Petitioner Keene's trial occurred in 1993; and (2) a review of only four (an insufficient amount) Ohio capital cases regarding this rule.

In fact, Ohio's contemporaneous objection/plain error rule is not an adequate rule because it is not a "firmly established and regularly followed state practice." <u>Ford v. Georgia</u>, 498 U.S. 411, 423 (1991), quoting <u>James v. Kentucky</u>, 466 U.S. 341, 348-349 (1984). This rule is not consistently applied. <u>Dugger v. Adams</u>, 489 U.S. 401, 410-411 n.6 (1989). It has not been applied evenhandedly to similar cases. The Ohio Supreme Court occasionally, arbitrarily, and unpredictably waives the rule in capital cases. For example, that court has occasionally, arbitrarily, and unpredictably chosen to review the merits of issues in capital cases rather than apply the contemporaneous objection/plain error rule at least 67 times.[7]

---

[7] <u>See</u> <u>Ohio v. Reynolds</u>, 687 N.E.2d 1358 (1998) (hearsay evidence admitted (trial)); <u>Ohio v. Reynolds</u>, 687 N.E.2d 1358 (1998) (hearsay evidence admitted (court of appeals)); <u>Ohio v. Moore</u>, 689 N.E.2d 1 (1998) (repetitious evidence admitted (trial)); <u>Ohio v. Mason</u>, 694 N.E.2d 932 (1998) (acquittal first jury instruction given (trial)); <u>Ohio v. Mason</u>, 694 N.E.2d 932 (1998) (funding for experts denied (court of appeals)); <u>Ohio v. Taylor</u>, 676 N.E.2d 82 (1997) (facts presented at trial differed from grand jury presentment (trial)); <u>Ohio v. Dennis</u>, 683 N.E. 2d 1096 (1997) (prosecutor made improper closing arguments in penalty phase (trial)); <u>Ohio v. Bies</u>, 658 N.E. 2d 754 (1996) (trial court imposed prison sentence consecutive to death sentence (trial)); <u>Ohio v. Allard</u>, 663 N.E. 2d 1277 (1996) (trial court permitted witnesses to testify about statements made prior to the murder (trial)); <u>Ohio v. Kinley</u>, 651 N.E. 2d 419 (1995) (pretextual arrest made (trial)); <u>Ohio v. Williams</u>, 652 N.E. 2d 721 (1995) (copy of witness statement not sealed (court of appeals)); <u>Ohio v. Hill</u>, 653 N.E. 2d 271 (1995) (trial court failed to give intoxication instruction sua sponte, (trial)); <u>Ohio v. Lundgren</u>, 653 N.E. 2d 304 (1995) (indictment invalid); <u>Ohio v. Allen</u>, 653 N.E. 2d 675 (1995) (victim's character evidence admitted (trial)); <u>Ohio v. Allen</u>, 653 N.E. 2d 675 (1995) (prosecutor displayed evidence not admitted (trial)); <u>Ohio v. Phillips</u>, 656 N.E. 2d 643 (1995) (improper expert testimony admitted (trial)); <u>Ohio v. Campbell</u>, 630 N.E. 2d 339 (1994) (gruesome photographs admitted (trial)); <u>Ohio v. Campbell</u>, 630 N.E. 2d 339 (1994) (gruesome photographs admitted (court of appeals)); <u>Ohio v. Loza</u>, 641 N.E. 2d 1082 (1994) (confession involuntary (trial)); <u>Ohio v. Scudder</u>, 643 N.E. 2d 524 (1994) (trial court allowed fingerprint expert, DNA expert, blood spatter expert testimony without notification from the state (trial)); <u>Ohio v. Scudder</u>, 642 N.E. 2d 524 (1994) (witnesses improperly instructed by the state not to talk to defense team (trial)); <u>Ohio v. Hawkins</u>, (continued...)

612 N.E. 2d 1227 (1993) (ineffective assistance of counsel (court of appeals)); Ohio v. Lorraine, 613 N.E. 2d 212 (1993) (trial court's application of Ohio Rev. Code Sec. 2929.04(B)(3) (court of appeals)); Ohio v. Mills, 582 N.E. 2d 972 (1992) (indictment insufficient (trial)); Ohio v. Mills, 582 N.E. 2d 972 (1992) (prior convictions admitted (trial)); Ohio v. Sneed, 584 N.E.2d 1160 (1992) (jury's failure to fill out verdict form completely and break in sequestration (court of appeals)); Ohio v. Rojas, 592 N.E. 2d 1376 (1992) (involuntary/coerced pretrial statements admitted (court of appeals)); Ohio v. Carter, 594 N.E. 2d 595 (1992) (trial court considered nonexistent conviction because sentence not yet imposed (trial)); Ohio v. Cook, 605 N.E. 2d 70 (1992) (admission of statements made after defendant asked for counsel (trial)); Ohio v. Murphy, 605 N.E. 2d 884 (1992) (psychological reports improperly admitted (trial)); Ohio v. Murphy, 605 N.E. 2d 884 (1992) (jury did not make finding of principal offender or prior calculation and design (trial)); Ohio v. Murphy, 605 N.E. 2d 884 (1992) (jury did not make finding of principal offender or prior calculation and design (court of appeals)); Ohio v. Slagle, 605 N.E. 2d 916 (1992) (prosecutor's improper comments and questions in both phases (trial)); Ohio v. Wiles, 571 N.E.2d 97 (1991) (gruesome photographs admitted (trial)); Ohio v. Wiles, 571 N.E.2d 97 (1991) (indictment insufficient – no signature of foreman (trial)); Ohio v. Watson, 572 N.E. 2d 97 (1991) (prosecutor improperly impeached defense witnesses with prior inconsistent statements (trial)); Ohio v. Watson, 572 N.E. 2d 97 (1991) (failure to record jury view (trial)); Ohio v. Watson, 572 N.E. 2d 97 (1991) (failure to record jury view (court of appeals)); Ohio v. Moreland, 552 N.E. 2d 894 (1990) (prosecutorial misconduct at both phases of trial (trial)); Ohio v. Moreland, 552 N.E. 2d 894 (1990) (trial court admitted blood evidence (trial)); Ohio v. Moreland, 552 N.E. 2d 894 (1990) (trial court admitted blood evidence (court of appeals)); Ohio v. Moreland, 552 N.E. 2d 894 (1990) (expert testimony permitted on gunshot residue (trial)); Ohio v. Wickline, 552 N.E. 2d 913 (1990) (other acts evidence admitted (trial)); Ohio v. Wickline, 552 N.E. 2d 913 (1990) (prosecutor misconduct at both phases (trial)); Ohio v. Huertas, 553 N.E. 2d 1058 (1990) (defendant convicted and sentenced twice for one killing (court of appeals)); Ohio v. Lott, 555 N.E. 2d 293 (1990) (prosecutor misconduct in penalty phase (trial)); Ohio v. Lott, 555 N.E. 2d 293 (1990) (prior felony conviction used as a specification (trial)); Ohio v. Jells, 559 N.E. 2d 464 (1990) (invalid jury waiver (trial)); Ohio v. Landrum, 559 N.E. 2d 710 (1990) (prosecutorial comment during closing argument at penalty phase (trial)); Ohio v. Coleman, 544 N.E. 2d 622 (1989) (constitutionality of O.R.C. § 2929.03(D)(1) (trial)); Ohio v. Coleman, 544 N.E. 2d 622 (1989) (invalid aider and abettor instruction given (trial)); Ohio v. Cooey, 544 N.E. 2d 895 (1989) (prosecutor comment on victim impact statement – suffering of family (trial)); Ohio v. Cooey, 544 N.E. 2d 895 (1989) (trial court considered presentence investigation report that included mental report (court of appeals)); Ohio v. Hamblin, 524 N.E. 2d 476 (1988) (ineffective assistance of counsel (court of appeals)); Ohio v. Esparza, 529 N.E. 2d 192 (1988) (use of jailhouse inmate's testimony (trial)); Ohio v. Esparza, 529 N.E. 2d 192 (1988) (improper drawing of venire (court of appeals)); Ohio v. Greer, 530 N.E. 2d 382 (1988) (prosecutor's comments (trial)); Ohio v. Broom, 533 N.E. 2d 682 (1988) (prosecutorial misconduct (court of appeals)); Ohio v. Byrd, 512 N.E. 2d 611 (1987) (denial of motion to suppress – warrantless arrest (trial)); Ohio v. Jester, 512 N.E. 2d 962 (1987) (trial court improperly mentioned possibility of death penalty at trial phase (court of appeals)); Ohio v. Buell, 489 N.E. 2d 795 (1986) (juror's sentencing responsibility diminished by

(continued...)

Also, the contemporaneous objection/plain error rule frustrates federal rights and fails to serve a legitimate state interest. Thus, this rule is not an adequate rule.

The Court found that the Petitioner's claim that the trial judge's failure to recuse himself is procedurally defaulted because the Ohio Supreme Court held that Petitioner had waived this claim. In fact, this ground is not defaulted for two reasons. First, the Trial Judge had an independent duty to recuse himself, consistent with his statement that he would do so. The Judge's failure to comply with this independent duty meant that trial counsel was not required to object to this failure. Second, Ohio's contemporaneous objection rule is not an adequate and independent state procedural ground upon which to base a procedural default.

Regarding this Ground for Relief, the Court=s ruling does not constitute a procedural default because it was not explicit in its reliance on any alleged default, <u>Harris v. Reed</u>, 489 U.S. 255, 263-264 (1989). Further, contrary to Respondent=s suggestion, the trial judge was required to recuse himself under Canon 3(E)(1) of Ohio Code of Judicial Conduct, and the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

The Court found that the Thirteenth Ground regarding the admission of gruesome photographs is procedurally defaulted because the Ohio Supreme Court held that trial counsel failed to object to this admission. This Ground is not defaulted because as noted above, Ohio's contemporaneous objection rule is not an adequate and independent state procedural ground upon which to base a procedural default.

---

[7](...continued)
argument about appellate review (trial)); <u>Ohio v. Barnes</u>, 495 N.E. 2d 922 (1986) (aggravators duplicated underlying crime and each other (no objection (trial)); <u>Ohio v. Scott</u>, 497 N.E. 2d 55 (1986) (jury instructed that its sentencing verdict was a recommendation (trial)).

The Court further found that part of the Fifteenth Ground regarding the admission of the Fila gym shoes is procedurally defaulted because it was not presented to the state courts. In fact, this part of the Fifteenth Ground was properly presented within the Seventeenth Proposition of Law to the Ohio Supreme Court on direct appeal. Ohio Supreme Court Br. at 186; 189 ("because the shoes were allegedly discovered on DeMarcus Smith, not Mr. Keene, they were ... inadmissible due to irrelevancy."). In that proposition of law, Petitioner argued that the shoes were not relevant and that their admission into evidence was prejudicial. Id. at 189. Because the Petitioner's argument regarding the shoes is the exact same argument presented to the Ohio Supreme Court, this argument is not procedurally defaulted. See Petition, par. 173.

The Respondent argues that the part of the Seventeenth Ground for Relief (regarding the State's misconduct in using testimony from Jones Pettus to gain sympathy and in making improper comments during the mitigation closing arguments) is procedurally defaulted because the Ohio Supreme Court held that trial counsel failed to object to this misconduct. In fact, trial counsel did object to the State's argument regarding Jones Pettus during the trial phase. Tr. 1303. The trial court overruled the objection. Id. This evidence from the trial court record constitutes clear and convincing evidence that the Ohio Supreme Court's holding was erroneous. Reasonable jurists could find in favor of the Petitioner. Alternatively, Petitioner argues that Ohio's contemporaneous objection rule is not consistently applied (and, thus, is not firmly established and regularly applied, a prerequisite for finding a procedural default).

The Respondent argues that the Twentieth Ground regarding the charges and specifications is procedurally defaulted because trial counsel failed to object. In fact, the Ohio Supreme Court's decision holding that there was no plain error and that "the outcome would not clearly have been

otherwise had the indictment been worded differently" did not constitute a clear and express ruling based on adequate and independent procedural grounds. See Harris v. Reed, 489 U.S. 255 (1983).

Respondent argues that the Twenty-Fourth Ground (regarding Ohio's method of execution), Twenty-Fifth Ground (regarding Ohio's death penalty scheme violating international law), and Twenty-Sixth and Twenty-Seventh Grounds (regarding discrimination in the selection of jurors) are procedurally defaulted. Regarding these grounds, Petitioner asserts trial counsel's ineffectiveness as cause for any default. Regarding the Twenty-Fifth Ground, Ohio's contemporaneous objection rule is not an adequate and independent procedural ground upon which to base a procedural default.

Should this Court find that any of the above Grounds are defaulted, Petitioner asserts his trial counsel's ineffectiveness in failing to make the necessary objections and the prejudice therefrom as cause and prejudice. Constitutionally ineffective assistance of counsel may constitute cause for a procedural default. See Murray v. Carrier, 477 U.S. 478 (1986); Mapes v. Coyle, 171 F.3d 408 (1999). Because a determination regarding whether counsel's performance was deficient depends upon whether it was reasonable considering all of the circumstances, Strickland v. Washington, 466 U.S. 668, 687-689 (1984), this Court should have granted a hearing on this question. An appellate court should be permitted to consider these issues.

### D.    DENIAL OF PETITIONER'S MOTION FOR AN EVIDENTIARY HEARING.

Petitioner Keene requested an evidentiary hearing on his First though Fourth, Seventh though Twelfth Grounds for Relief. He requested that this Court hold a hearing on the sentencers' failures to afford him his Due Process, Eighth Amendment and Equal Protection rights; the appellate courts' failures to conduct meaningful review; the presiding judge's failure to recuse himself; the erroneous

80

denial of Petitioner's motion for change of venue; the suggestive identification of Petitioner; the lack of a knowing, intelligent and voluntary jury waiver; the failure to suppress evidence and misconduct regarding evidence; and trial counsel's ineffectiveness. Reasonable jurists could conclude that the hearing should have been granted and may order such. The grounds for relief were as follows:

Petitioner Keene sought to call the following witnesses at an evidentiary hearing on his First through Fourth Grounds for Relief: (1) Justice Pfeifer, to testify about the legislative intent of O.R.C. § 2929.05 and about his Court's knowing failure to provide adequate appellate review; and (2) an expert on death penalty appellate review.

With regard to the Seventh Ground for Relief, the Trial Judge's Failure to Recuse Himself, the trial judge committed prejudicial error when he failed to recuse himself from the three-judge panel for three (3) reasons: (a) he heard prejudicial evidence that may have influenced his decision and thereby corrupted the entire panel; (b) the judge stated on the record that he would recuse himself; and (c) the appearance of impropriety. Testimony from the Trial Judge on these points would have been presented. Similarly, on the Eighth Ground for Relief regarding the denial of the Petitioner's Motion for Change of Venue, testimony from the judges would have been elicited regarding the impact of the mountain of pre-trial publicity that occurred.

Regarding the Ninth Ground for Relief, Failing to Suppress Identification Due to Unduly Suggestive Identification Procedures, Mr. Keene sought to elicit testimony at the evidentiary hearing from Ms. Henderson confirming that she recalled nothing more than "heavy" eyes, a box hair-cut and baggy clothes. She would have also confirmed that she was shown only one photo of an individual with a box hair-cut. The officer involved with the photo array, Officer Cass, would have

testified that there were no instructions given to Ms. Henderson regarding the photo array. In addition, an expert on proper police procedures will testify.

As to the Tenth Ground for Relief, the trial court's knowledge of Petitioner's propensity to acquiesce to authority figures causing error in acceptance of jury waiver, the record would have shown at an evidentiary hearing that there was no "persuasive evidence" of a knowing, intelligent, and voluntary waiver as required by the U.S. Constitution. Humphrey v. Cady, 405 U.S. 504, 517 (1972). Petitioner sought to call trial counsel, Dr. Cherry and Dr. Smith (another psychologist who examined Mr. Keene) and Judge Brown to testify on these matters.

On the Eleventh Ground for Relief, Constitutional Error In The Denial of the Motion to Suppress Involuntary Statements/No Knowing and Intelligent Waiver of Miranda Rights, an expert in police procedures would have testified in support of this conclusion. Petitioner would have also called trial counsel, Dr. Cherry and Dr. Smith to testify on these matters. As a result, the testimony will prove that relief should be granted in this case because Miranda was not followed.

Finally, regarding the Twelfth Ground, The Physical Evidence Offered At Trial Was Not In Substantially The Same Condition In Violation Of Due Process, A Fair Trial And A Reliable Verdict Under The Fifth, Sixth, Eighth, Ninth And Fourteenth Amendments To The United States Constitution, the Fila gym shoes were not sufficiently authenticated because the State did not establish a proper chain of custody. The State was required to show with reasonable certainty that the Fila gym shoes had not been contaminated. State v. Moore, 47 Ohio App. 2d 181, 183, 353 N.E.2d 866, 870 (1973). The testimony at the evidentiary hearing of the detectives, counsel and an expert on police procedures would have established a violation of Mr. Keene's rights under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution.

### E.    DENIAL OF PETITIONER'S MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL.

Reasonable jurists would have held that the matters referenced below should have been granted certification for interlocutory appeal. First of all, the Court used a higher burden of proof when assessing the Petitioner's request for discovery. There is a sharp difference of opinion with respect to "whether a federal habeas court should apply the standard for granting an evidentiary hearing to a petitioner's discovery requests." On the one hand, the United States Supreme Court applies *only* the minimal "good cause" standard to discovery requests. Bracy v. Gramley, 520 U.S. 899 (1997); Harris v. Nelson, 394 U.S. 286 (1969); Habeas Rule 6. On the other hand, this District Court applies the more demanding AEDPA[8] "evidentiary hearing" standard, as contained in 28 U.S.C. § 2254(e)(2), to discovery requests. Doc. 52 at 4-5; Doc. 58 at 2-3. "Whether a federal habeas court should apply the standard for granting an evidentiary hearing to a petitioner's discovery requests," is a purely legal question that controlled the outcome of his discovery requests. Doc. 52 at 4-5; Doc. 58 at 2-3.

Habeas Rule 6's minimal "good cause" standard is, in fact, the only standard that may be applied to discovery requests. Bracy, 520 U.S. at 903-904, 908 (reversing denial of discovery); Habeas Rule 6. Discovery requests are made for the purpose of obtaining evidence to support grounds for relief, justify relief without an evidentiary hearing, and explain why certain allegedly defaulted claims should nevertheless be heard on the merits. They are not made for the purpose of obtaining an evidentiary hearing.

---

[8]Antiterrorism and Effective Death Penalty Act.

83

Neither the habeas statutes nor Habeas Rule 6 require – as the Magistrate's Memorandum and the District Court here did – that Petitioner Keene prevail on his ground for relief before being granted discovery to support it. Such a requirement would permit both this Court and the Respondent to have it both ways: to criticize Petitioner Keene for speculation and at the same time deprive him of the opportunity to support his theory of selective prosecution.

In addition, the Petitioner's due process rights were infringed upon and reasonable courts could differ as to whether the failure to abide by the death penalty sentencing statutes should have been granted interlocutory review. The Sixth Circuit recognized that a sentencer's failure to abide by Ohio's death penalty sentencing statutes sets forth a Due Process claim cognizable in habeas. Fox v. Coyle, 271 F.3d 658, 665-666 (6th Cir. 2001) ("A defendant's due process rights may also be infringed upon by a state's failure to adhere to its own sentencing statute. See Hicks v. Oklahoma, 447 U.S. 343, 346 (1980)....".

The three-judge panel's arbitrary decision to ignore Ohio's statutes also set forth a claim in habeas on equal protection grounds ripe for interlocutory review because Petitioner Keene was sentenced to death based upon a standard different from that (1) contained in Ohio's statutes and caselaw; (2) followed in Ohio's other 200 capital cases resulting in death sentences; and (3) followed in Ohio's capital cases not resulting in death sentences. See Bush v. Gore, 531 U.S. 98, 104-105, 110 (2000) (requiring non-arbitrary treatment of voters in order to assure their fundamental right to equal protection); Ohio Adult Parole Authority v. Woodard, 523 U.S. 272, 292 (1998) (O'Connor, J., concurring in part and dissenting in part) (recognizing Equal Protection right in Ohio's clemency decision: "no one would contend that a Governor could ignore the commands of the Equal Protection Clause and use race, religion, or political affiliation as a standard for granting or denying

84

clemency."). Thus, Petitioner Keene was treated differently from similarly situated defendants. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (recognizing precedent of successful equal protection claims brought by a "class of one").

The three-judge panel's arbitrary decision to ignore Ohio's statutes also set forth a claim in habeas on Eighth Amendment grounds. The Ohio Supreme Court has specifically held the failure of a three-judge panel to follow Ohio's death penalty statutes results in an unreliable, arbitrary and capricious sentence. State v. Green, 90 Ohio St.3d 352, 363-364, 738 N.E.2d 1208, 1223-1224 (2000) (reversed death sentence). For example, the consideration of non-statutory aggravating factors warrants reversal of a death sentence because such consideration occurred "outside the statute[s]," which were designed to guide the sentencer's discretion in order to "reduc[e] the arbitrary and capricious imposition of death sentences." See also Espinosa v. Florida, 505 U.S. 1079, 1081 (1992); Stringer v. Black, 503 U.S. 222, 230, 235 (1992) ("aggravating factors must be defined with some degree of precision," "must not fail to guide the sentencer's discretion," and must not be "of vague or imprecise content"); Shell v. Mississippi, 498 U.S. 1 (1990) (limiting instruction insufficient); Maynard v. Cartwright, 486 U.S. 356, 363-364 (1988) (no meaningful distinction between trial court's definitions of statutory aggravator and definition invalidated in Godfrey v. Georgia); Godfrey v. Georgia, 446 U.S. 420, 428-433 (1980) ("outrageously or wantonly vile, horrible and inhuman" statutory aggravator invalidated in particular case due to state court's failure to adequately define or limit aggravator; "no principled way to distinguish this case, in which the death penalty was imposed, from the many cases in which it was not").[9]

___

[9] "'A person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.'" Id., 446 U.S. at 427-428.

There was a substantial ground for difference of opinion respecting the correctness of the District Court's Order.  West Tennessee v. City of Memphis, 138 F.Supp.2d 1015,  1019, 1026 (2000).  A difference of opinion exists between this District Court and the Sixth Circuit, other Circuit Courts, the Ohio Supreme Court, and the United States Supreme Court.  Respondent did not to oppose Petitioner Keene's request for certification as whether the three-judge panel's failure to abide by Ohio's death penalty sentencing statutes set forth a claim cognizable in habeas.  Respondent's Opposition, Doc. 68.  This was a concession of the issue that should have warranted certification. Lastly, the certification of the requested questions would have materially advanced the progress of the litigation.

### F.     MOTION FOR DISCOVERY SHOULD HAVE BEEN GRANTED.[10]

Pursuant to Rules 6 and 11 of the Rules Governing Section 2254 Cases, and the Federal Rules of Civil Procedure, the Petitioner requested that the Court grant him leave to conduct the discovery listed below consisting of the authority to issue subpoenas and take depositions of certain witnesses:

1. **Trial Judge Bixler** (First, Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Sixteenth, Eighteenth, Nineteenth, Twenty-Third Grounds for Relief).

2. **Trial Judge Nichols** (First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Sixteenth, Eighteenth, Nineteenth, Twenty-Third Grounds for Relief).

3. **Trial Judge Brown** (First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Sixteenth, Eighteenth, Nineteenth, Twenty-Third Grounds for Relief).

---

[10]See Appendix A for a modified listing of the claims for which the discovery was needed taken from Petitioner's Motion for Discovery.  Doc. 24.

4.    **Montgomery County Prosecuting Attorneys James R. Levinson, Angela F. Frydman and Carley J. Ingram** (Fifth, Sixth, Thirteenth, Seventeenth and Nineteenth Grounds for Relief, and, if certain documents are produced, other grounds for relief listed herein).

5.    **Representative of the Montgomery County Prosecuting Attorney=s Office**, who is responsible for maintaining records of murder indictments of the grand juries of Montgomery County (Fifth and Sixth Grounds for Relief).

6.    **Court reporter of the Montgomery County Common Pleas Court** (Twenty-Third Ground for Relief).

7.    **Person(s) responsible for organizing and seating grand juries and selection of forepersons for grand juries in Montgomery County, Ohio** from January 1, 1981 to the present (Fifth and Sixth Grounds for Relief).

8.    **Dayton Police Officers and Detectives Larry Grossnickle, John Huber, Kevin Cooper, Herb Rogers and Wade Lawson** (Eleventh Ground for Relief).

9.    **Dayton Police Detectives Lawson and Pearson** (Ninth and Twelfth Grounds for Relief).

10.    **Nicholas Woodson** (Eighteenth Ground for Relief).

11.    **Heather Mathews** (Fifth and Sixth Grounds for Relief ).

12.    **Kathie Henderson** (Ninth Ground for Relief).

The authority to issue subpoenas for production of the following documents:

1.    All documents in the possession, custody, or control of the Montgomery County Prosecuting Attorney which describe the facts of the homicides committed in Montgomery County from January 1, 1981 to the present, including the names, addresses and race of the persons charged, the evidence presented to the grand jury, the charging decisions of the Montgomery County Prosecuting Attorney, the indictments issued, and the convictions obtained.  (Fifth and Sixth Grounds for Relief)

2.    Deliberation notes of the trial judges on for both phases of trial. (All Grounds for Relief listed above)

3.    Copies of Judges' law clerks' notes, memoranda and drafts for rulings in pretrial motions.  (All Grounds for Relief listed above)

4.    Prosecutor's entire file regarding Mr. Keene. (All applicable Grounds for Relief)

5.    Grand jury transcript from the grand jury proceedings against Mr. Keene. (Fifth, Sixth, Twenty-Fifth and Twenty-Sixth Grounds for Relief)

6.    Prosecutor's file (including notes regarding plea bargains) for Mr. Keene's co-defendants. (Fifth and Sixth Grounds for Relief)

7.    Judge's notes regarding suppression hearing. (Eleventh Ground for Relief)

8.    Judge's law clerks' notes regarding suppression hearing. (Eleventh Ground for Relief)

9.    Prosecutor's notes regarding suppression hearing. (Eleventh Ground for Relief)

10.   Notes of meeting between attorneys and Judge Brown regarding the selection of the other two judges to preside over Mr. Keene's trial. (Seventh Ground for Relief)

11.   All documents related to any DNA Testing conducted on evidence for Mr. Keene's trial. (All applicable Grounds for Relief)

12.   List of grand jury forepersons in murder and aggravated murder cases since 1981 and the race of each in Montgomery County. (Fifth, Sixth, Twenty-Fifth and Twenty-Sixth Grounds for Relief)

13.   List of grand jury members and their race in murder and aggravated murder cases since 1981 in Montgomery County. (Fifth, Sixth, Twenty-Fifth and Twenty-Sixth Grounds for Relief)

14.   Prosecutor's file from DeMarcus case (comparable white defendant convicted of murder). (Fifth and Sixth Grounds for Relief)

Habeas Rule 6's standard of "good cause" warranted a judicial ruling in favor of the Petitioner. Bracy v. Gramley, 117 S.Ct. 1793 (1997) (unanimous decision). A court of appeals should be permitted to review this matter as it could dispute the Court's decision.

88

## CONCLUSION

On the grounds asserted in the foregoing, the Petitioner's Motion for a Certificate of Appealability should be granted.

Respectfully submitted,


/s/ John S. Marshall _____
John S. Marshall (0015160)
MARSHALL AND MORROW LLC
111 West Rich Street, Suite 430
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780


/s/ Rayl L. Stepter _____
Rayl L. Stepter (0047505)
111 West Rich Street, Suite 430
Columbus, Ohio  43215-5296
(614) 463-9790
Fax:  (614) 463-9877

Attorneys for Petitioner Keene


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on July 25, 2005.  Notice of this filing will be sent to all parties by operation the Court's electronic filing system.  Parties may access this filing through the Court's system.


s/John S. Marshall _____
John S. Marshall