IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

MARVALLOUS KEENE,

        Petitioner,           :      Case No. 1-00-cv-421

  - vs -                      Chief Judge Sandra S. Beckwith
                              Chief Magistrate Judge Michael R. Merz

BETTY MITCHELL, Warden,

        Respondent.           :

## REPORT AND RECOMMENDATIONS ON MOTION FOR CERTIFICATE OF APPEALABILITY

In this capital habeas corpus case, the Court has entered final judgment denying relief (Doc. Nos. 107, 108) and Petitioner has appealed (Doc. No. 109). The case is now before the Court on Petitioner's Motion for Certificate of Appealability ("Motion," Doc. No. 114).

### The Requirement for a Certificate of Appealability

A person in custody upon a state conviction seeking to appeal an adverse ruling on a petition for writ of habeas corpus in the district court must obtain a certificate of appealability before proceeding. 28 U.S.C. §2253 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), provides in pertinent part:

> (c)
> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--
>     (A) the final order in a habeas corpus proceeding in which the

1

detention complained of arises out of process issued by a State court; or
>    (B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

District courts have the power to issue certificates of appealability under the AEDPA in §2254 cases. *Lyons v. Ohio Adult Parole Authority*, 105 F. 3d 1063 (6th Cir. 1997); *Hunter v. United States*, 101 F. 3d 1565 (11th Cir. 1996)(en banc).  Likewise, district courts are to be the initial decisionmakers on certificates of appealability under §2255.  *Kincade v. Sparkman*, 117 F. 3d 949 (6th Cir. 1997)(adopting analysis in *Lozada v. United States*, 107 F. 3d 1011, 1017 (2d Cir. 1997).

The Motion was filed and served on July 25, 2005.  Under S. D. Ohio Civ. R. 7.2, Respondent's time to oppose the Motion has expired and Respondent's counsel has indicated to the Court that, while not conceding appealability, Respondent does not intend to file a memorandum in opposition.  Nevertheless, this Court must exercise its discretion as to the requested certificate. Issuance of blanket grants or denials of certificates of appealability is error.  *Porterfield v. Bell,* 258 F. 3d 484(6th Cir. 2001); *Murphy v. Ohio*, 263 F. 3d 466 (6th Cir. 2001).

### The Standard for Issuance of a Certificate of Appealability

To obtain a certificate of appealability, a petitioner must show at least that "jurists of reason would find it debatable whether the petition states a valid claim of denial of a constitutional right."

*Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L. Ed. 2d 542 (2000). That is, it must find that reasonable jurists would find the district court's assessment of the petitioner's constitutional claims debatable or wrong. *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003). If the district court dismisses the petition on procedural grounds without reaching the constitutional questions, the petitioner must also show that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604. The procedural issue should be decided first so as to avoid unnecessary constitutional rulings. *Slack*, 529 U.S. at 485, 120 S. Ct. at 1604, citing *Ashwander v. TVA*, 297 U.S. 288, 347, 56 S. Ct. 466, 80 L. Ed. 688 (1936)(Brandeis, J., concurring). The first part of this test is equivalent to making a substantial showing of the denial of a constitutional right, including showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further, *Slack v. McDaniel*, 529 U.S. 473 at 484, 120 S. Ct. 1595, 1604, 146 L. Ed. 2d 542 (2000), quoting *Barefoot v. Estelle,* 463 U.S. 880, 893, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983). The relevant holding in *Slack* is as follows:

> [W]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue (and an appeal of the district court's order may be taken) if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

529 U.S. 473, 478,120 S. Ct. 1595,1600-1601

The standard is higher than the absence of frivolity required to permit an appeal to proceed *in forma pauperis. Id.* at 893.

> Obviously the petitioner need not show that he should prevail on the
> merits... Rather, he must demonstrate that the issues are debatable
> among jurists of reason;  that a court could resolve the issues [in a
> different manner];  or that the questions are 'adequate to deserve
> encouragement to proceed further.'

*Id.* n.4.  *Accord, Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1039-1040, 154 L.Ed.2d 931

(2003).  A certificate of appealability is not to be issued *pro forma* or as a matter of course.  *Id.* at

1040.  Rather, the district and appellate courts must differentiate between those appeals deserving

attention and those which plainly do not. *Id.*  A blanket certificate of appealability for all claims is

improper, even in a capital case.  *Frazier v. Huffman*, 348 F. 3d 174 (6th Cir. 2003), *citing Porterfield*

*v. Bell,* 258 F. 3d 484 (6th Cir. 2001).

Petitioner filed his Notice of Appeal on April 3, 2005, but failed to accompany it with a

motion for certificate of appealability (See docket at No. 109).  The Court then *sua sponte* set a

deadline for the motion (Doc. No. 110) which was extended twice (Notation Orders to Doc. Nos. 111,

112).  As finally filed, the Motion is 109 pages long and fails to comply with S. D. Ohio Civ. R.

7.2(a)(3) which requires:

> (3) Limitation Upon Length of Memoranda. Memoranda in support of
> or in opposition to any Motion or application to the Court should not
> exceed twenty (20) pages. In all cases in which memoranda exceed
> twenty (20) pages, counsel must include a combined table of contents
> and a succinct, clear and accurate summary, not to exceed five (5)
> pages, indicating the main sections of the memorandum, the principal
> arguments and citations to primary authority made in each section, as
> well as the pages on which each section and any sub-sections may be
> found.

However, just as Respondent's failure to file a memorandum in opposition does not entitle the Court

to grant a certificate on all matters sought to be appealed, so to Petitioner's failure to follow the

4

Court's requirements as to form does not entitle the Court to deny the Motion.

### Analysis of Petitioner's Asserted Appealable Errors in this Case

Petitioner has organized his Motion for Certificate of Appealability in terms of the Grounds for Relief in his Petition which in turn argue errors committed by the state courts.  To determine what Petitioner seeks to appeal to the Sixth Circuit, this Court must cull from the Motion the errors which Petitioner asserts this Court committed. These do not correspond exactly with the Grounds for Relief. They will be therefore be stated and analyzed as asserted appealable errors and numbered sequentially.

### 1.     This Court erred in denying the Motion to Expand the Record

Contemporaneously with his Objections to the Magistrate Judge's original Report and Recommendations on the merits, Petitioner filed a Motion Expand the Record (Doc. No. 100) to include in the record of this case portions of the trial transcript from State of Ohio v. Weston Lee Howe, a murder case from Montgomery County, Ohio.  Petitioner asserted that the Howe case was a comparable murder and the failure to seek the death penalty in that case supported his claims (Fifth and Sixth Grounds for Relief)  that he had been selectively capitally prosecuted because of his race.

In conjunction with a Supplemental Report and Recommendations on the merits, the Magistrate Judge denied the Motion to Expand the Record (Doc. No. 104).  Petitioner now seeks to appeal that decision.

However, Petitioner never appealed from denial of the Motion to Expand the Record to District Judge Beckwith.  He has thus waived his right to appeal that denial.  *See United States v.*

5

*Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). Thus he should be denied a certificate of appealability on this claimed error.

2.       **The trial court failed to weigh the individual aggravating circumstances against [the] individual mitigating circumstances of each killing and determine that the aggravators outweighed the mitigators deprived Petitioner of due process of law and his Eighth Amendment rights. This Court should have granted habeas relief on that basis.**

Petitioner asserts, without citation to the record, that this Court "held that the trial court and Ohio Supreme Court appropriately weighed the individual aggravating circumstances against individual mitigating circumstances of each killing and determined that the aggravators outweighed the mitigators" (Motion, Doc. No. 114, at 10). That is not accurate. What this Court held is that Petitioner had not shown that the state court decisions violated clearly established federal law. In the instant Motion, Petitioner still provides no citation to clearly established law which the method of weighing which occurred in this case is said to have violated.

Petitioner's sole proof that the trial court did not follow state law in weighing the aggravating circumstances and mitigating factors is a post-trial Affidavit of one of the three judges who tried the case as a panel, the Honorable Lee Bixler. In the Supplemental Report and Recommendations, the Magistrate Judge rejected Judge Bixler's Affidavit because (1) it contradicted the verdict he signed, (2) it was not properly before this Court because Petitioner had not exercised due diligence in failing to present it to the state courts (See *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 112 S. Ct. 1715, 118 L. Ed. 2d 318 (1992)), (3) it was uncross-examined hearsay,[1] and (4) the Ohio Supreme Court had expressly determined the trial court had followed required state procedures. Petitioner continues to

---

[1]This difficult could not have been overcome since Judge Bixler, a much-respected and revered jurist in Southern Ohio, had died while this case was pending.

rely on Judge Bixler's Affidavit without dealing with these difficulties and without explaining why he is not barred by his failure to object to the Supplemental Report and Recommendations.

Petitioner should be denied a certificate of appealability on this claimed error.


3.     **The trial court improperly relied on non-statutory and unconstitutionally vague aggravating circumstances. This Court should have granted habeas relief on that basis.**

Petitioner asserts that the trial court relied on non-statutory and unconstitutionally vague aggravating factors.  As proof, he relies on language in the trial court's decision which adverts to the manner in which these five killings were carried out and then cites cases in which **statutory** aggravators have been held to be vague or a court has expressly relied on an aggravator not permitted by state law.  The Ohio Supreme Court plainly determined that that is not what happened in this case. Rather, it found that the trial court relied only on aggravating factors permitted by the statute. Petitioner adverts to no proof, much less clear and convincing proof, that this finding of fact is in error.  *See Brumley v. Wingard,* 269 F. 3d 629, 637 (6th Cir. 2001), citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981).

Petitioner's argument would reduce trial courts' opinions in death penalty cases to checking boxes on pre-printed forms to make their findings for fear of saying words that would be held to be "non-statutory."  However, nothing even arguably in the Constitution of the United States prohibits a trial judge from stating why he or she concludes that the aggravating circumstances outweigh the mitigating factors.

Petitioner should be denied a certificate of appealability on this claimed error.

7

4.    **The trial court improperly considered and weighed an aggravating circumstance which had been merged.  This Court should have granted habeas relief on that basis.**

In his fourth claimed error, Petitioner asserts the trial court improperly considered and weighed, with respect to the death sentence for the murder of Mr. Wilkerson, the aggravating circumstance that this murder was committed to escape detection (Motion, Doc. No. 114, at 12-13). On appeal, the Ohio Supreme Court excluded this aggravating factor from those it weighed in assessing the propriety of the death penalty for the Wilkerson murder.  *State v. Keene,* 81 Ohio St. 3d at 646, 669, 693 N.E.2d at 265-67.

Petitioner cites to no clearly established federal law which holds that such a re-weighing by an appellate court does not cure any error such as the one complained of here.  Petitioner should be denied a certificate of appealability on this claimed error.


5.    **The trial court erroneously believed that the death penalty was mandatory in this case and this Court should have granted habeas relief on that basis.**

In his fifth claimed error, Petitioner asserts that the trial court erroneously believed that the death penalty was mandatory in this case (Motion, Doc. 114, at 13).  Petitioner's sole reliance is on *Woodson v. North Carolina*, 428 U.S. 280 (1976), which held that a State may not make the death penalty mandatory for all first-degree murders.  However, it is not unconstitutional to require the death penalty if the State has proved beyond a reasonable doubt that aggravating circumstances outweigh mitigating factors.  *Blystone v. Pennsylvania,* 494 U.S. 299 (1990); *Boyde v. California*, 494 U.S. 370 (1990); *Williams v. Bagley,* 380 F. 3d 932 (6th Cir., 2004), citing *Buell v. Mitchell,* 274 F. 3d 337 (6th Cir. 2001); *Scott v. Anderson*, 58 F. Supp. 2d 767, 796 (N.D. Ohio 1998); *State v. Jells,* 53 Ohio St. 3d 22, 35-36, 559 N.E. 2d 464, 477 (1990).  Followed in *Zuern v. Tate,* 101 F. Supp. 2d

948 (S.D. Ohio 2000), *aff'd*., 336 F.3d 478 (6th Cir. 2003). Once the finder of factor concludes beyond a reasonable doubt, as the three-judge panel did here, that the aggravating circumstances outweigh the mitigating factors, it is required to impose the death penalty. Petitioner points to no clearly established federal law to the contrary and therefore should be denied a certificate of appealability on this claimed error.

**6.     The Ohio courts failed to give appropriate weight to the mitigating evidence and this Court should have granted habeas relief on that basis.**

In his sixth claimed error, Petitioner asserts that the trial court and Ohio Supreme Court failed to give appropriate weight to various items of mitigating evidence which he presented (Motion, Doc. No. 114, at 16-17, referring to the Second Ground for Relief).

Petitioner seems to be arguing that if the state courts do not give some hypothetically correct weight to a particular piece of mitigating evidence, the resulting death sentence is unconstitutional. While the Supreme Court has insisted on extreme breadth in the admission of proffered mitigating evidence (*See Lockett v. Ohio*, 438 U.S. 586 (1978)), Petitioner cites no case in which that Court has mandated a particular weight to be given to any such evidence.[2]

Petitioner should be denied a certificate of appealability on this claimed error.

**7.     The trial court failed to spend an adequate or reasonable amount of time deliberating on the verdict. This Court should have granted habeas relief on that basis.**

In his seventh claimed error, Petitioner asserts that the trial court spent an inadequate amount

---

[2]Contrast the cases where the Court has prohibited the death penalty altogether once certain barring facts are found. *Atkins v. Virginia,* 536 U.S. 304 (2002)(mental retardation); *Roper v. Simmons*, ___ U.S. ___, 125 S. Ct. 1183 (2005)(minority at the time the murder is committed).

of time deciding the case and this Court erred in not granting the writ on that basis (Motion, Doc. No. 114, at 17-20, related to the Third Ground for Relief).

In the original Report and Recommendations, the Court noted "[t]here is no clearly established federal law which requires a sentencing body to spend a minimum amount of time deliberating before reaching its conclusions in order to pass Constitutional muster." (Doc. No. 96 at 48). In the Supplemental Report and Recommendations, the Court amplified its conclusion:

> The penalty phase of this case took three days to try, October 25-27, 1993. *State v. Keene*, 1996 WL 531606 *3 (Ohio App. 2nd Dist. September 20, 1996). Unlike a jury, a three-judge panel is not prohibited from discussing the case among themselves while the evidence is being presented. Furthermore, none of these judges was a first-time factfinder as a juror would be; each of them had substantially more than ten years experience on the Common Pleas bench at the time of this trial. Given these facts, the slightly less than an hour and a half spent on formal deliberations does not show that they failed to consider and give effect to the mitigating evidence.

(Doc. No. 104 at 11.) Petitioner made no objection to this conclusion and does not now even argue why the ability of a three-judge panel to consider the evidence as it hears it does not materially distinguish this from a jury case. Nor does Petitioner even now point to any United States Supreme Court case holding that a certain minimum amount of time in deliberation is constitutionally required.

It is at this point in the instant Motion that the Petitioner takes issue with the Court's discounting of Judge Bixler's Affidavit. He argues:

> The Bixler Affidavit is not hearsay since it is a sworn statement. His recollection of the deliberative process is not hearsay. Even if it were hearsay, due to the inherent reliability of testimony from a judge who actually sat on the panel and was part of the deliberations, it would be admissible under the residual exception under Fed. Evid. Rule 807.

(Motion Doc. No. 114, at 19-20.)

10

To return to basics for a moment, the definition of hearsay in Fed. R. Evid. 801[3] in no way excludes "sworn statements" and Petitioner's counsel offer no authority for such an exclusion. Judge Bixler's Affidavit was in fact classic hearsay – an out-of-court statement offered in this proceeding to prove the truth of its contents. Affidavits have repeatedly been held to be hearsay. *See, e.g., Moore v. United States*, 429 U.S. 20, 21-22 (1976). As Graham notes, "inability to conduct cross-examination is the essential factor underlying the rule excluding hearsay." M. Graham, Federal Practice and Procedure: Evidence § 7001 at 17 (Interim Edition). As to purported admissibility under Fed. R. Evid. 807, this Court is uncertain whether Judge Bixler was still living at the time the Affidavit was offered here; if he was not, Petitioner could not have met the preconditions for offering the affidavit under Rule 807. In any event, Petitioner never objected to the Supplemental Report and Recommendations which is the place where the Court made its ruling on the Bixler Affidavit. Thus Petitioner is barred from appealing on this point. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). Thus he should be denied a certificate of appealability on this claimed error.

8. **The trial court erred by interpreting Ohio law as mandating a death sentence in this case and this Court should have granted habeas relief on that basis.**

In his eighth claimed error, Petitioner asserts this Court was in error for failing to conclude that the death sentence in this case is unconstitutional because the trial court found it to be mandatory (Motion, Doc. No. 114, at 20-21, related to Fourth Ground for Relief). This claimed error is indistinguishable from the fifth claimed error and Petitioner should be denied a certificate of

---

[3]"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).

appealability on the same grounds.

9.      **The trial court erred in failing to merge the capital specifications in Count Four of the Indictment and this Court should have granted habeas relief on that basis.**

In his ninth claimed error, Petitioner asserts that this Court erred in not finding constitutional error in the Ohio courts' failure to merge the specifications to Count 4 of the Indictment which charged Petitioner with murdering Mr. Wilkerson in the course of a "burglary and/or robbery" (Motion, Doc. No. 114, at 21-23, related to Twenty-Second Ground for Relief).

The Ohio Supreme Court dealt with this claim as follows:

> In his fourth proposition of law, appellant argues that Count Four was invalid because it charged him with murder during a "burglary and/or robbery." ... However, he conceded that he never raised this issue at trial. Consequently, it is waived, There is no plain error, because appellant was separately convicted of both aggravated burglary (Count One) and aggravated robbery (Count Two) with respect to Wilkerson. Therefore, the outcome would not clearly have been otherwise had the indictment been worded differently. *See, e.g.*, *State v. D'Ambrosio* (1993), 67 Ohio St. 3d 185, 197-198, 616 N.E.2d 909, 919.

*Keene*, 81 Ohio St.3d at 664, 693 N.E.2d at 260-63. In the instant Motion, Petitioner claims that he requested these specifications be merged, but he conceded in the Ohio Supreme Court that he had failed to make that request to the trial court. Petitioner offers no argument for the proposition that this ruling of the Ohio Supreme Court – essentially that this claim is procedurally defaulted – is contrary to clearly established federal law. Petitioner should be denied a certificate of appealability on the same grounds.

10.     **The state courts erred in failing to correct the record to reflect accurately the time when the three-judge panel completed deliberations and returned to the courtroom. This**

12

**Court should have granted habeas relief on that basis**

In his tenth claimed error, Petitioner asserts that this Court erred when it failed to find that the death sentence was unconstitutional because the state courts failed to correct the record to show that the trial judges completed their deliberations fifteen minutes earlier than the stenographic record reflects (Motion, Doc. No. 114, at 23-24, in connection with the Twenty-Third Ground for Relief).

The stenographic record of trial indicates the trial panel retired at 3:37 p.m. and returned a verdict at 4:55 p.m. One of Petitioner's trial counsel filed a motion to correct the record to reflect that the panel returned fifteen minutes earlier, at 4:40 p.m. In ruling on this argument, the Ohio Supreme Court held:

> In his twenty-second proposition of law, appellant claims that the panel actually returned at 4:40 p.m., not 4:55 p.m. It is undisputed that, pursuant to App.R. 9(E), appellant filed a motion in the trial court to correct the record; in support, he adduced an affidavit by trial counsel stating that the panel returned at 4:40 p.m. The trial court denied the motion. Noting that the record was made "contemporaneously," the court declined to modify it based on the year-old recollection of trial counsel. Appellant argues that the trial court violated App.R. 9(E) by denying his motion.
>
> [Ohio] App.R. 9(E) states in part, "If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by the court and the record made to conform to the truth." Thus, "it is within the province of the trial court to resolve disputes about the record on appeal." *State v. Schiebel* (1990), 55 Ohio St.3d 71, 81, 564 N.E.2d 54, 66. Here, the trial court did resolve the dispute; it found the year-old recollection of the former counsel for an interested party insufficiently persuasive to impeach the stenographic record. "Where it is supported by competent, reliable evidence, such ruling will not be reversed by a reviewing court absent an abuse of discretion." *Id.* at 82, 564 N.E.2d at 67. Appellant's twenty-first and twenty-second propositions of law are overruled.

*Keene,* 81 Ohio St.3d at 665, 693 N.E.2d at 260-63. There is no clearly established federal

13

constitutional law which requires a State to "correct" the record of a trial to reflect the year-old recollection of one of the party's trial attorneys as opposed to the contemporaneous record made by a court reporter.  That is not debatable among jurists of reason.  Petitioner should be denied a certificate of appealability on his tenth claimed error.

**11.** **The trial court erred when it refused to permit discovery and a hearing on Petitioner's claim of racially selective prosecution.**

**12.** **The trial court erred when it refused to dismiss the capital specifications upon adequate proof that they were the result of selective prosecution.**
**This Court should have granted habeas relief on both these bases.**

In his eleventh claimed error, Petitioner asserts that the Common Pleas Court should have granted him discovery and a hearing on the grounds he was selectively prosecuted on account of his race (Motion, Doc. No. 114, at 24-25, related to Fifth Ground for Relief).  In his twelfth claimed error, he asserts that he presented sufficient evidence of selective prosecution, even without any discovery, to require dismissal of the capital specifications (Motion, Doc. No. 114, at 26-27, related to Sixth Ground for Relief).

The Ohio Supreme Court's thorough analysis of these two claims is as follows:

> Appellant filed a motion in the trial court to dismiss the death specifications from the indictment for "discriminatory enforcement." Appellant claimed that the Montgomery County Prosecuting Attorney discriminates against black defendants in exercising his discretion to seek the death penalty.  The trial court denied the motion to dismiss, and also denied appellant's requests for discovery and an evidentiary hearing on his discriminatory-prosecution claim.

> In his first proposition of law, appellant claims that the trial court should have afforded discovery and a hearing on his discriminatory-prosecution claim.  He relies on both Crim. R. 16 and federal constitutional law.  We begin by analyzing his Crim. R. 16 claims.

[Ohio Crim. R. 16 analysis omitted.]

Having rejected appellant's state-law claim, we must assess appellant's claim that the trial judge had a constitutional obligation to allow discovery.

In *United States v. Armstrong,* the court held that a defendant, in order to obtain discovery on a selective-prosecution claim, must "produce some evidence that similarly situated defendants of other races could have been prosecuted, but were not *** ." n1 517 U.S. at 469, 116 S.Ct. at 1488, 143 L.Ed.2d at 701. The standard is deliberately "rigorous," 517 U.S. at 468, 116 S.Ct. at 1488, 143 L.Ed.2d at 701, because "the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims." *Id.* at 464, 116 S.Ct. at 1486, 134 L.Ed2d at 698.

> n1 *Armstrong* does not expressly state that the right to discovery on a claim of facially discriminatory prosecution is grounded in the Constitution (and hence applicable to state as well as federal prosecutions). However, the parties to this case have proceeded on the assumption that the discovery right is constitutionally grounded. We think that assumption correct, since the discovery right outlined in *Armstrong* derives from, and is meant to enforce, the Fourteenth Amendment's prohibition of racially discriminatory prosecutions.

Appellant failed to produce some evidence that similarly situated defendants could have been prosecuted but were not.

Appellant points to the treatment of his white co-defendant, Mathews. Mathews was indicted with death specifications, but the prosecutor dropped the specifications in exchange for Matthew's testimony against appellant. Why, appellant asks, did the prosecutor not bargain with him and seek the death penalty for Mathews?

Appellant was the triggerman in four of the five aggravated murders involved here. Mathews was charged with only two of these murders. In neither case did Mathews pull the trigger. Indeed, the record discloses no clear evidence that Mathews actually intended the deaths

of Wilkerson and Abraham.  Mathews, therefore, is not a "similarly situated" defendant.

Appellant also cites the case of three white defendants who went on what appellant describes as a killing spree involving the robbery, burglary, and murder of two victims.  Appellant alleges that "the same" death specifications could have been lodged, yet the Montgomery County Prosecutor did not seek the death penalty. However, the state contends that the evidence against these defendants was significantly weaker than the evidence against appellant.  Two of the defendants received plea bargains and testified against the third; in spite of this, the third defendant was acquitted of one of the two murders.

Appellant claims that sixty-four percent of capital indictments in Montgomery County since 1981 have been lodged against black defendants, while the county's population was only seventeen percent black.  However, as the court of appeals noted, this statistic creates no inference of discrimination by itself.  Appellant did not show the percentage of black and white defendants in potentially capital cases who were indicted without capital specifications.  Without that, there can be no meaningful comparison.

Appellant's contrary argument appears to rest on a presumption that, if seventeen percent of the county's population is black, then blacks must have committed about seventeen (or, at any rate, substantially less than sixty-four) percent of potentially capital crimes.  Appellant argues that even to question that presumption would constitute forbidden racial stereotyping.  However, that cannot be correct, for the *Armstrong* court itself rejected a presumption " 'that people of all races commit all types of crimes.' " ... 517 U.S. at 469, 116 S.Ct. at 1488, 134 L.Ed2d at 701, quoting *United States v. Armstrong* (C.A.9, 1995), 48 F.3d 1508, 1516-1517.


In any event, statistical evidence does not satisfy *Armstrong's* requirement that the defendant identify similarly situated defendants who could have been prosecuted, but were not.  "The general rule [is] that in cases involving discretionary judgments 'essential to the criminal justice process' statistical evidence of racial disparity is insufficient to infer that prosecutors in a particular case acted with a discriminatory propose."  *United States v. Olvis* (C.A.4, 1996), 97 F.3d 739, 746, quoting, *McCleskey v. Kemp* (1987), 481 U.S. 279, 297, 107 S.Ct. 1756, 1769-1770, 95 L.Ed2d 262, 281.  The state has

16

no duty to explain such a statistical disparity.  *Olvis,* 97 F.3d at 746.

Appellant also points out that the Montgomery County Prosecuting Attorney has never obtained a death sentence against a white defendant.  This is quite irrelevant, however, since appellant claims discrimination in charging practices.

We conclude that appellant failed to show "some evidence" that similarly situated defendants of other races could have been charged with death penalty specifications but were not.  Therefore, he did not establish a constitutional right to discovery on his claim.

Appellant also claims that he was entitled to an evidentiary hearing on his due-process claim.    Again, he raises both a federal constitutional claim and a state-law claim.

Citing *United States v. Hazel* (C.A.6, 1983), 696 F.2d 473, 475, appellant contends that due process entitled him to a hearing because he presented sufficient facts to raise a reasonable doubt as to the prosecutor's purpose.  However, for the same reasons that he was not entitled to discovery, he was not entitled to a hearing.  The facts he presented do not raise a reasonable doubt as to the prosecutor's purpose.
In his fourteenth proposition of law, appellant argues that the evidence he submitted was by itself enough to show racial bias on the part of the county prosecutor.  Therefore, he argues, his convictions should be reversed.  n2 Yet, appellant candidly admits that he "did not prove that the prosecutor purposefully intended to discriminate against him.  Therefore, he has not met the burden for this type of claim as enunciated in *McCleskey v. Kemp* ***."

> n2 Presumably, appellant means his death sentences should be reversed; he makes no claim that the prosecutor's decision to prosecute him in the first place was tainted by discrimination.

This concession would seem fatal to appellant's claim.  However, appellant argues that – despite *McCleskey* – he was not required to prove purposeful discrimination against him.
First, he argues that the state, by successfully opposing his motion for discovery and a hearing, made it impossible to establish discriminatory purpose.  Thus, he argues, the prosecutor "waived the

*McCleskey* requirements." But we can see no sense in penalizing the prosecutor for successfully opposing appellant's motion.

Next, appellant tries to distinguish *McCleskey* on its facts. But the requirement of proving purposeful discrimination was not a novel creation of the *McCleskey* court and cannot be limited to the specific facts of *McCleskey*. Rather, it is a basic and generally applicable principle of Fourteenth Amendment equal protection analysis that a party claiming an equal protection violation has the burden of proving purposeful discrimination. *McCleskey,* 481 U.S. at 292, 107 S.Ct. at 1767, 95 L.Ed2d at 278*, quoting Whitus v. Georgia* (1967), 385 U.S. 545, 550, 87 S.Ct. 643, 646, 17 L.Ed2d 599, 603-604. *See also*, *Armstrong*, 517 U.S. at 465, 116 S.Ct. at 1487, 134 L.Ed2d at 699, quoting *Wayte v. United States* (1985), 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547, 556.

[Ohio constitutional analysis omitted.]

Appellant concedes that he has not met his burden of proving that the prosecutor purposely discriminated against him in charging him with capital offenses, and he offers no persuasive reason to relieve him of this burden. We therefore overrule his fourteenth proposition of law.

*Keene,* 81 Ohio St. 3d at 650-654, 693 N.E. 2d at 252-55.

In rejecting the Fifth and Sixth Grounds for Relief, this Court found that the Ohio Supreme Court had correctly identified and applied the relevant United States Supreme Court law, to wit, *McCleskey v. Kemp*, 481 U.S. 279 (1987), and *United States v. Armstrong*, 517 U.S. 456 (1996)(See Report and Recommendations, Doc. No. 96, at 57-58). In objecting to that ruling, Petitioner restates the basic comparative facts with other cases which he offered to the Ohio courts and concludes "[r]easonable minds could differ as to whether or not this was 'some evidence' which warranted discovery" and "[a]s a result of the fact that courts could disagree over the application of this precedent, these issues should be presented to the Court of Appeals." (Motion, Doc. No. 114, at 24-

25).  This argument misses the point and is indeed fatal to Petitioner's claim: if reasonable jurists could disagree on the application of the relevant precedent, then the Ohio Supreme Court's application cannot be objectively unreasonable.  But the federal courts, both district and appellate, are authorized to reverse a state court ruling on a constitutional claim in a habeas case only if it is objectively unreasonable.  *Williams v. Taylor,* 529 U.S. 362, 403-404 (2000).

> The [federal habeas] court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  *Id.,* at 407-408, 120 S.Ct. 1495.   The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one.  *Id.,* at 409- 410, 120 S.Ct. 1495.   See also *id.,* at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

*Bell v. Cone*, 535 U.S. 685; 122 S. Ct. 1843, 1849-50; 152 L. Ed. 2d 914 (2002).  The Magistrate Judge expressly relied on *Bell v. Cone* in the Supplemental Report and Recommendations (Doc. No. 104 at 14) and Petitioner made no objection.

Petitioner's eleventh and twelfth claimed errors are without merit and he should be denied a certificate of appealability on them.

13.   **The trial court erred in announcing that it would delay a ruling on Petitioner's motion for change of venue until after *voir dire* was attempted, thereby forcing Petitioner unconstitutionally to waive his right to trial by a jury uninfluenced by negative pretrial publicity.  This Court should have granted habeas relief for that error.**

19

As might be expected with a series of five murders in separate incidents over the Christmas holidays, the crimes with which Petitioner was charged received a great deal of pretrial publicity; the instant Motion quotes from it for four pages.  Petitioner's trial counsel moved for a change of venue, but the trial judge "made it clear he intended to defer a ruling on a change of venue until *voir dire* had been completed...."  (Motion, Doc. No. 114, at 33).

In the original Report and Recommendations, the Magistrate Judge noted that Petitioner had cited no clearly established federal law to the effect that a criminal defendant has the right to know, in advance of a jury waiver, how the trial judge is going to rule on a motion for change of venue (Doc. No. 96 at 63).   He has still not done so.

The Supreme Court has held that habeas courts must weigh the amount of pretrial publicity against the thoroughness of *voir dire* in determining whether a defendant was prejudiced.  *Murphy v. Florida,* 421 U.S. 794 (1975), and *Dobbert v. Florida,* 432 U.S. 282 (1977). In denying habeas relief, the Sixth Circuit has approved trials proceeding in venues where pretrial publicity was as bad or worse than here.  *See, for example, Ritchie v. Rogers*, 313 F. 3d 948 (6th Cir. 2002)(mother convicted of beating her young daughter to death for interrupting her while having sex with a neighbor, shortly after national publicity on the Susan Smith drownings in South Carolina); *Nevers v. Killinger,* 169 F. 3d 352 (6th Cir. 1999)(Detroit police officer convicted of murder of an arrestee even though Mayor said on television that he was guilty) ; *Brofford v. Marshall*, 751 F. 2d 845, 848-52 (6th Cir. 1985); *Jenkins v. Bordenkircher*, 611 F. 2d 162 (6th Cir. 1979).

Thus the law is clearly established that a thorough voir dire may in most cases correct for even very bad pretrial publicity.  It logically follows that a trial court cannot properly decide a motion for change of venue until he or she has tested the venire in voir dire.  Petitioner would turn this law on its head by finding a constitutional violation whenever a court, in the face of bad publicity, waited

until after *voir dire* to decide on a change of venue.  While it is certainly arguable as a matter of policy whether the law ought to proceed in that way, reasonable jurists would not say that that was the state of the law when Petitioner was tried.  Petitioner should therefore be denied a certificate of appealability on his thirteenth claimed error.

**14.     This Court erred in not granting habeas relief with regard to the suggestive identification procedures used by the Dayton Police.**

In this claimed error, Petitioner asserts this Court should have granted him relief on his Ninth Ground for Relief which asserted that the procedures used by the Dayton Police in obtaining an identification by Kathy Henderson were unduly suggestive because the hairstyles of the other subjects in the photo lineup were not sufficiently similar to Mr. Keene's and that this photo lineup tainted her in-court identification (Motion, Doc. No. 114, at 33-34).  Ms. Henderson's identification is relevant only to Count Eight of the Indictment for aggravated robbery.

Petition claims this Court erred in not "apply[ing] any federal precedent" and in not "engag[ing] in a constitutional analysis of this ground."  (Motion, Doc. No. 114, at 34).  To the contrary, the analysis of Supreme Court precedent occurs on three pages of the original Report and Recommendations (Doc. No. 96 at 66-68); it includes *Simmons v. United States*, 390 U.S. 377 (1968) on which Petitioner relies (Motion, Doc. No. 114, at 34) as well as *Stovall v. Denno,* 388 U.S. 293 (1967), and *Neil v. Biggers,* 409 U.S. 188 (1972).  It then proceeds to apply the analysis from these cases to the instant case over the space of three pages (Doc. No. 96 at 71-73).

Having independently analyzed the applicability of suggestive identification precedent, the Court went on to note that the Ohio Supreme Court had decided this claim on the basis that any possible error was harmless.  The Report and Recommendations then discusses at length the United

States Supreme Court precedent on harmless versus structural error, notes that suggestive identification error has been found to be subject to harmless error analysis by the Supreme Court, and then concludes that the Ohio Supreme Court's application of that harmless error analysis to this case is not objectively unreasonable (Report and Recommendations, Doc. No. 96, at 68-71, 73-74).

In the face of this lengthy analysis, Petitioner now argues "It is reasonable to assume that reasonable minds would differ as to the application of the above-referenced federal standards to this fact pattern and as such an appeal on this ground for relief should go forward." (Motion, Doc. No. 114, at 34). This argument completely misses the point of the Supreme Court's "objectively reasonable" jurisprudence under the AEDPA. If reasonable judicial minds could differ as to how to apply the relevant precedent to this case and the Ohio Supreme Court applied the correct precedent, then the Ohio Supreme Court's decision was not objectively unreasonable and this Court committed no arguable error in accepting it. Because Petitioner has admitted reasonable judicial minds could come to the same conclusion the Ohio Supreme Court did, he should not be granted a certificate of appealability on his fourteenth claimed error.

**15. This Court erred in not granting habeas corpus relief on Petitioner's Tenth Ground which claimed his waiver of jury trial was involuntary and/or unintelligent because of his propensity to acquiesce to authority figures.**

In his suppression hearing, Petitioner presented testimony from Dr. Eugene Cherry, a psychologist, that Mr. Keene is a passive person and a follower and therefore should not be found to have waived his rights unless he "actively asserted" his understanding of those rights. That testimony was then applied to his later waiver of jury trial rights. As this Court understands the argument, it is that a person with a personality such as Mr. Keene's will answer "yes" to leading questions about his

rights from authority figures such as police officers and judges when instead, to make sure he understands what rights he is giving up, he should be asked to explain those rights affirmatively to the Court.  This result is said to be compelled by the "undisputed expert testimony" of Dr. Cherry.

The consequences of adopting Petitioner's position would be momentous.  Without any doubt, Mr. Keene was the *de facto* leader of a group of young people who committed multiple crimes of self-indulgence over multiple days, including the murders of five people.  If such a person can be found to be "passive" and "acquiescent," then one would have to reasonably suspect that most persons accused of similar crimes were also passive and acquiescent.  After confirming that "diagnosis" with appropriate psychological testing after arrest, the criminal justice system would then be required to provide them with the equivalent of a crash course in criminal procedure so that they could explain to a trial judge without prompting the rights they were giving up by waiving a jury or eventually pleading guilty.  In fact, to ensure that their confessions were sufficiently voluntary, the system would have to provide both the psychological testing and the mini-law school course before a *Miranda* waiver would be acceptable.  While presumably rational people could debate the advisability of such a "system," no one can credibly argue that it is the criminal justice system we already have as mandated by clearly established United States Supreme Court precedent.  Petitioner should therefore be denied a certificate of appealability on his fifteenth claimed error.

16.    **The Ohio courts erred in failing to suppress Petitioner's statements to the Dayton Police and this Court should have granted habeas relief on that basis.**

In his Eleventh Ground for Relief, Petitioner claimed error in the state courts' failure to suppress his confession.  He seeks to appeal this Court's denial of relief on that claim, asserting "[r]easonable courts could disagree on the voluntariness, intelligence and knowledge of the waiver."

23

(Motion, Doc. No. 114, at 38).

In affirming the trial court's denial of the motion to suppress, the Ohio Supreme Court noted that there was conflicting testimony about what happened during the police interrogation, that Mr. Keene's testimony of his own intoxication was contradicted by police officer testimony and the videotape of the confession.[4]  It concluded that, since the factual findings of the trial court were supported by testimony, it was bound by them.  *Keene,* 81 Ohio St.3d at ___, 693 N.E.2d at 257-58. The Court also noted Petitioner's reliance on Dr. Cherry's testimony, both as to his knowledge of his rights generally and as to whether the waiver form was confusing because it only provided one place to sign.  *Id.*

In analyzing this claim, this Court noted the requirement, now clearly established by the Supreme Court in *Colorado v. Connelly,* 479 U.S. 157 (1986), that there must be some coercive police activity to set aside a Miranda waiver and that none had been proved here.  In seeking to appeal this ruling, Petitioner relies solely on his own testimony and that of Dr. Cherry at the suppression hearing, even though Dr. Cherry admitted that his opinions were not really well established.  See Hearing on Motion to Suppress, Part I, Vol. 5, pp. 243-72.  His assertion is that reasonable courts could disagree on whether the waiver was knowing, intelligent, and voluntary.  But that is not the question on appeal.  The simple admission that reasonable courts could disagree is in fact fatal to Petitioner's position.  It is certainly consistent with federal constitutional law that a trial court's findings of fact, if based on competent evidence, are binding on every subsequent court considering those findings.  Factual findings made by state courts are entitled to a high measure of deference

---

[4]A principal reform of capital case management recommended by Governor Ryan's commission in Illinois is the videotaping of confessions in such cases.  See Scott Turow ,Ultimate Punishment: A Lawyer's Reflections on Dealing with the Death Penalty.  The Court notes with approval its use by the Dayton Police in this case.

from federal courts. *Rushen v. Spain*, 464 U.S. 114, 120, 104 S. Ct. 453, 78 L. Ed. 2d 267, 274 (1983); *Marshall v. Lonberger*, 459 U.S. 422, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983); *Sumner v. Mata,* 455 U.S. 591, 101 S. Ct. 764, 66 L. Ed. 2d 722 (1982). Federal courts must give complete deference to evidence-supported state court findings. *Williams v. Withrow*, 944 F. 2d 284, 288 (6th Cir. 1991), *aff'd in part and rev'd in part*, 507 U.S. 680, 113 S. Ct. 1745, 123 L.Ed. 2d 407 (1993). Thus when the Ohio Supreme Court deferred to the trial court's factual findings, it did not unreasonably apply any clearly established federal law.  It was not error for this Court to so conclude and Petitioner should be denied a certificate of appealability on this claimed error.

**17.    The trial court erred in admitting a pair of Fila gym shoes in evidence, the Ohio Supreme Court erred in not reversing on that basis, and this Court erred in not granting habeas relief on that basis.**

In his Twelfth Ground for Relief, Petitioner contended that habeas relief should be granted because a pair of Fila gym shoes was admitted on conflicting testimony about the chain of custody. Noting the conflict, the Ohio Supreme Court found no error because difficulties with the chain of evidence go to weight rather than admissibility.  *Keene,* 81 Ohio St.3d at 662, 693 N.E.2d at 259-60. It found the break in the chain of custody was minor.  *Id*.  Appellant confessed to shooting the owner of the gym shoes after a co-defendant, Smith, force the victim to take them off.  *Id*.

Petitioner argues that "[o]ne can reasonably conclude that the Fila gym shoes were improperly admitted as evidence and that this evidence was inconsistent with the federal guarantees to due process" citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)(Motion, Doc. No. 114,  at 40). While Donnelly has general standards about the fairness of trial, it addresses prosecutorial misconduct in closing argument and says nothing about problems with a chain of custody of evidence.  Even on

25

direct review of a federal conviction, challenges to the chain of custody go to the weight of the evidence, not its admissibility. *United States v. Levy*, 904 F.2d 1026, 1030 (6th Cir. 1990)*, cert. denied sub nom, Black v. United States,* 498 U.S. 1091 (1991). Petitioner has cited no clearly established federal law which the Ohio Supreme Court even arguably violated by not reversing on the basis of this minor problem with the chain of custody.

Petitioner disputes the Ohio Supreme Court's and this Court's harmless error analysis by claiming "there were constitutional problems with the other items of evidence" on which the state courts relied. However, the relevant other evidence here is Petitioner's confession to shooting the owner of the gym shoes and Petitioner has presented no arguable appellate issue as to the confession.

Petitioner should be denied a certificate of appealability on his seventeenth claimed error.


18.    **The state courts erred by allowing other acts evidence to be admitted. This Court should have granted habeas relief on that basis.**

In his Fifteenth Ground for Relief, Petitioner complained of the admission of other acts evidence against him, asserting this made the trial unfair (Motion, Doc. No. 114, at 40-41). In seeking to appeal from the denial of habeas relief on this ground, Petitioner ignores this Court's holding that introduction of irrelevant testimony is to be considered differently in a bench trial than with a jury. See Report and Recommendations, Doc. No. 96, at 85, holding

> In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions. *Smith v. Mitchell,* 348 F.3d 177, 206 (6th Cir. 2003),*citing Harris v. Rivera,* 454 U.S. 339, 346 (1981). In a non-jury trial the introduction of incompetent evidence does not require a reversal in the absence of an affirmative showing of prejudice. *Smith, supra, citing United States v. Joseph,* 781 F.2d 549, 552-53 (6th Cir. 1986). A three-judge panel would not likely be misled by any improper evidence. *Smith, supra, citing Wickline v. Mitchell,* 319 F.3d 813, 823-24 (6th Cir. 2003).

26

He also ignores this Court's ruling that his claim about Nicholas Woodson's testimony is procedurally defaulted because no contemporaneous objection was made. (Report and Recommendations, Doc. No. 96, at 91-93.) He merely argues that "[r]easonable judges may disagree as to the weight of the other evidence properly admitted" and as to whether statements made by Mr. Keene were inadmissible and therefore "this matter should be subject to review on appeal."

This argument again mistakes the standard for appeal. The Circuit Court of Appeals does not sit to re-weigh the evidence properly admitted. Rather, the federal habeas courts must decide if the Ohio Supreme Court's affirmance of the weighing done by the trial court violated clearly established federal law. Since it did not, Petitioner should be denied a certificate of appealability on this eighteenth claimed error.

**19.    The state courts erred in admitting victim impact testimony and this Court should have granted habeas relief on that basis.**

In his Sixteenth Ground for Relief, Petitioner asserted that numerous pieces of victim impact testimony was admitted during the culpability phase of the trial in violation of Ohio Revised Code §§ 2943.041 and 2945.06 and the United States Constitution (Motion, Doc. No. 114, at 41). The Ohio Supreme Court dealt with the victim impact evidence claim as follows:

> In his eleventh proposition of law, appellant argues that the state introduced "victim impact" evidence in the guilt phase, where such evidence is inadmissible. *See, e.g., State v. Taylor,* (1990), 50 Ohio St.3d 24, 553 N.E.2d 576. However, appellant objected to only one of the alleged errors.
>
> Over objection, Gullette's friend, Angela Martin, testified that she had a close relationship with Gullette and that they borrowed each other's clothes. However, the panel properly overruled the objection. Gullette had borrowed Martin's jacket the night she was killed; that was the same jacket stolen from Gullette, and Martin identified it. Martin's relationship with Gullette explains how Martin could identify

27

> the jacket and why Gullette was wearing it.  Thus, it was relevant for a nonvictim-impact purpose.
>
> As to other alleged "victim impact" testimony, appellant did not object, so these issues are waived.  We overrule appellant's eleventh proposition of law.

*Keene,* 81 Ohio St.3d at ___, 693 N.E.2d at 259-60.  This Court analyzed the alleged victim impact testimony under federal procedural default jurisprudence (Report and Recommendations, Doc. No. 96, at 91-93).

Petitioner seeks to appeal this Court's procedural default analysis.  He argues reasonable judges could find he had shown prejudice from the admission of the supposed victim impact testimony, that the contemporaneous objection rule is not regularly enforced in Ohio, and that the contemporaneous objection rule is not an independent and adequate state ground.  He cites no authority for these propositions.  The Sixth Circuit has repeatedly held that the contemporaneous objection rule is an adequate and independent state ground.  *See Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003), *citing  Hinkle v. Randle*, 271 F. 3d 239, 244 (6th Cir. 2001);  *Scott v. Mitchell*, 209 F. 3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982); *see also, Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir. 2000), all cases cited by this Court in the original Report and Recommendations (Doc. No. 96 at 92).  If reasonable judges could find that the contemporaneous objection rule is not regularly enforced, what cases would they look at to so find?  Mr. Keene cites none.  As to the prejudice prong, Petitioner ignores this Court's analysis of the effect of his having been tried by a three-judge panel as opposed to a jury.  And in order to overcome a procedural default, he must show both cause **and** prejudice.  *Reynolds v. Berry*, 146 F. 3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F. 2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F. 3d 594 (6th Cir. 2001).  He has not even suggested what cause he could show, much less why he did not

28

attempt to show it to this Court and why he should be allowed to show cause in the first instance in the Court of Appeals.

Petitioner should be denied a certificate of appealability on his nineteenth claimed error.

**20.     The state courts erred in allowing the testimony of Nicholas Woodson and this Court should have granted habeas corpus relief on that basis.**

In his Eighteenth Ground for Relief, Petitioner claimed the testimony of Nicholas Woodson was irrelevant propensity evidence (Motion, Doc. No. 114, at 44). The Ohio Supreme Court found this claim barred by failure to object contemporaneously and this Court accordingly found the claim procedurally defaulted. Petitioner seeks to appeal this ruling on the same basis as with his nineteenth claimed error, to wit, that the contemporaneous objection rule is not regularly enforced and is not an adequate and independent state ground. He offers no authority for these propositions and therefore has not shown that this Court's ruling on his Eighteenth Ground for Relief is debatable among reasonable jurists.

**21.     The State introduced insufficient evidence that victims Cottril and Washington were witnesses to an offense to establish the relevant aggravating circumstance. This Court should have granted habeas relief on that basis.**

In his Fourteenth Ground for Relief, Petitioner asserted that the State introduced insufficient evidence to prove the aggravating circumstance as to the Cottril and Washington victims were witnesses to a crime and were killed to prevent their testifying in a criminal proceeding. Mr. Keene had argued that Ohio Revised Code §2929.04(A)(8) required that, to fit the statutory definition, the victims had to be witnesses to a crime that their killer had committed, but the Ohio Supreme Court held that the statute only requires that the victims be witnesses to some crime and be killed to prevent

them from testifying.  Petitioner does not challenge the sufficiency of proof that he killed both Cottril and Washington, but they were witnesses not to a crime he committed, but to Demarcus Smith's having shot victim Wright.

An allegation that verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368   (1970); *Johnson v. Coyle*, 200 F. 3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F. 2d 792, 794 (6th Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319.  Of course, it is state law which determines the elements of offenses;  but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

This is essentially a question of the interpretation of an Ohio statute and the Ohio Supreme Court's interpretation of the statute is binding on the federal courts.  Whereas an appellate court on habeas review decides federal law questions *de novo*..., the federal reviewing court is generally bound by state court interpretations of state law. *Vroman v. Brigano*, 346 F. 3d 598, (6th Cir. 2003); *Caldwell v. Russell*, 181 F. 3d 731, 735-36, (6th Cir. 1999); *Duffel v. Dutton,* 785 F. 2d 131, 133 (6th

30

Cir. 1986).  As the Ohio Supreme Court held, the trial court's interpretation is consistent with the plain meaning of the statute and also the evident purpose of the statute; it would hardly be surprising if a statute providing the death penalty for killing crime witnesses did not apply to hit men who were eliminating witnesses to crimes committed by others than themselves.  Petitioner makes no suggestion that the Ohio's Supreme Court's reading represented a change in Ohio law.

In order for a conviction to be constitutionally sound, there must be sufficient evidence for each element, but the elements of crimes are defined by state law.  *In re Winship*, 397 U.S. 358 (1970).  It is true that the State did not present any evidence that Cottril or Washington witnessed any crime that Mr. Keene committed, but it produced ample evidence that they had witnessed crimes committed by others who were associated with Mr. Keene in this crime spree and that they were killed because they were witnesses.

Petitioner should be denied a certificate of appealability on his twenty-first claimed error.

## 22.    The trial court erred in concluding Petitioner was the principal offender as to the murder of Joseph Wilkerson and this Court should have granted habeas relief on this claim.

Also in his Fourteenth Ground for Relief, Petitioner claims there was insufficient evidence to convict him of being the principal offender on the Joseph Wilkerson murder (Motion, Doc. No. 114, at 46-47).  Again this is a question of statutory interpretation.  The testimony was that Petitioner fired a shot which struck Wilkerson in the heart and then Laura Taylor shot him in the head.  The coroner testified that Wilkerson died of multiple gunshot wounds and that Keene' shot to the heart would have been sufficient.  The Ohio Supreme Court stated that it had never held that there could only be one principal offender on a particular murder.  Since both Keene and Taylor fired fatal shots at virtually the same time, both could be principal offenders under Ohio law.

For the reasons set forth with respect to the twenty-first claimed error, this Court had no basis to set aside the Ohio Supreme Court's interpretation of the principal offender statute and Court of Appeals would have no basis to reverse our decision.  Petitioner should be denied a certificate of appealability on his twenty-second claimed error.

23.     **The trial court erred in concluding Petitioner was the principal offender as to the murder of Danita Gullette and this Court should have granted habeas relief on this claim.**

Petitioner claims in his Fourteenth Ground for Relief that there was insufficient evidence he was the principal offender in the murder of Danita Gullette (Motion, Doc. No. 114, at 47).  On this claim, the Ohio Supreme Court wrote:

> Some evidence indicates that the shots fired by appellant in this killing may not have been fatal by themselves.  Appellant said in his confession that he fired "not that many" shots at Gullette.  The two bullets recovered from Gullette's body were fired from two different guns, which means appellant shot her at least once, but it is unknown which gun he fired.  The coroner stated that only one of Gullette's wounds would have been immediately fatal by itself.
>
> Nonetheless, the coroner testified that Gullette died of "multiple" gunshot wounds. His testimony supports an inference that appellant's shots at least contributed to Gullette's death.  Thus, we hold that the evidence was sufficient to prove that appellant was a principal offender in the Gullette murder.  *See Holsemback v. State* (Ala.Crim.App.1983), 443 So.2d 1371, 1381- 1382; *Cox v. State* (1991), 305 Ark. 244, 248-249, 808 S.W.2d 306, 309; *People v. Bailey* (1996), 451 Mich. 657, 676-678, 549 N.W.2d 325, 334.

*Keene,* 81 Ohio St.3d at 655-56, 693 N.E.2d at 256.  Based on his confession, there was sufficient evidence to find that Keene shot Gullette.  Based on the coroner's testimony, there was sufficient testimony to find Gullette died of multiple gunshot wounds, including those Keene fired.  Again, as a matter of interpreting Ohio statutory law, the Ohio Supreme Court found that this met the statute

and this Court is bound by that interpretation.  Petitioner should be denied a certificate of appealability on this claimed error.

24.     **Prosecutorial misconduct rendered the trial unconstitutionally unfair and this Court should have granted habeas relief on that basis.**

In his Seventeenth Ground for Relief, Petitioner complains of numerous instances of asserted prosecutorial misconduct.  He seeks to appeal from this Court's denial of relief on this ground (Motion, Doc. No. 114, at 48-54).

In the original Report and Recommendations, the Court analyzed these claims under governing Sixth Circuit law, *Frazier v. Huffman,* 343 F.3d 780 (6th Cir. 2003), and *Angel v. Overbear,* 682 F.2d 605 (6th Cir, 1982). It also noted that the Ohio Supreme Court had found most of these claims barred by procedural default in failing to make contemporaneous objection.

Part of the claimed misconduct is in the introduction of asserted victim impact testimony with which this Report has already dealt.

Petitioner fails to acknowledge that a three-judge panel was very unlikely to have been swayed by inappropriate argument; the cases on which he relies consider improper arguments made to juries.  Petitioner also fails to make any argument which he would present on appeal about the procedural default findings.

In sum, Petitioner has not shown that this Court's conclusion on his Seventeenth Ground for Relief is debatable among reasonable jurists.  He should therefore be denied a certificate of appealability on this claim.

25.     **The trial court violated Petitioner's double jeopardy rights by sentencing him both for felony murder and the underlying felony.  This Court should have granted habeas**

**corpus relief on this basis.**

In his Twenty-First Ground for Relief, Petitioner argued that he could not, consistent with the Double Jeopardy Clause, be sentenced for both a felony murder and the underlying felony.  He seeks appellate review of this Court's denial of habeas relief on that claim (Motion, Doc. No. 114, 54-55).

However, Petitioner waived his right to appeal from this Court's disposition of this Ground for Relief when he did not object to the original Report and Recommendations conclusion on this ground for relief.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).  Thus he should be denied a certificate of appealability on this claimed error.

### 26.    Because Ohio's death penalty scheme is unconstitutional in several respects, this Court erred in not granting habeas relief on that basis.

In his Twenty-Fifth Ground for Relief, Petitioner asserted that Ohio's death penalty scheme is unconstitutional in various respects.  He now seeks appellate review of this Court's denial of relief on that basis (Motion, Doc. No. 114, at 56-69).  Because he never objected to this Court's proposed disposition of this Ground for Relief in the original Report and Recommendations, he has waived his right to appeal.  He should therefore be denied a certificate of appealability on this claimed error. *United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

### 27.    Ohio's post-conviction statute does not provide adequate corrective process and this Court erred in denying habeas corpus relief on that basis.

In his Twenty-eighth Ground for Relief, Petitioner asserted that Ohio's post-conviction process under Ohio Revised Code § 2953.21 is constitutionally inadequate.  The Sixth Circuit has held that habeas corpus proceedings may not be used to mount a general attack such as this on post-conviction statutes.  *Kirby v. Dutton*, 797 F.2d 245, 246 (6th Cir. 1986).  Stated differently, federal

habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief. *Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir. 2001), *cert denied,* 535 U.S. 940 (2002). The Court cited *Kirby* and *Greer* in recommending that this Ground for Relief be denied (Report and Recommendations, Doc. No. 96, at 129). Petitioner made no objection and is thus barred from appealing. He should not be granted a certificate of appealability on this claimed error. *United States v. Walters,* 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn,* 474 U.S. 140 (1985)

**28.     Petitioner received ineffective assistance of trial counsel for which this Court should have granted habeas corpus relief.**

In his Nineteenth Ground for Relief, Mr. Keene asserted that he received constitutionally ineffective assistance from his trial counsel at both the culpability and mitigation stages of the trial. He now seeks to appeal from this Court's denial of habeas relief on this Ground (Motion, Doc. No. 114, at 71-72). However, he made no objection to the recommendation made by the Magistrate Judge that the Ohio Supreme Court correctly applied the controlling Supreme Court precedent, " *Strickland v. Washington,* 466 U.S. 668 (1984), and its progeny. Because he made no objection, he has waived any error on appeal. *United States v. Walters, supra; Thomas v. Arn, supra.*

**29.     This Court erred in each and every procedural default ruling it made.**

As Petitioner notes, the Court dismissed on procedural default grounds his Seventh, Thirteenth, Fifteenth (in part), Seventeenth (in part), Twentieth, Twenty-Fourth, Twenty-Fifth (in part), Twenty-Sixth, and Twenty-Seventh Grounds for Relief and he seeks appellate review of each of these rulings (Motion, Doc. No. 114, at 73-80).

The Court and Petitioner are largely in agreement about the legal standards for procedural

default. The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Reynolds v. Berry*, 146 F. 3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F. 2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F. 3d 594 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F. 2d, at 138. There is further agreement that a rule is not adequate unless it is firmly established and regularly followed in state practice. *Rogers v. Howes,* 144 F. 3d 990 (6th Cir. 1998); *Jones v. Toombs,* 125 F. 3d 945, 946-47 (6th Cir. 1997); *James v. Kentucky*, 466 U.S. 341, 348-49, 104 S. Ct. 1830, 80 L. Ed. 2d 346 (1984); *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991); *Barr v. City of Columbia*, 378 U.S. 146, 84 S. Ct. 1734, 12 L. Ed. 2d 766 (1964). However, a procedural rule need not be followed in every case; it is sufficient if it is applied in the vast majority of cases. *Byrd v. Collins,* 209 F. 3rd 486, 521 (6th Cir. 2000), citing *Dugger v.*

*Adams*, 489 U.S. 401, 410 n. 6, 109 S. Ct. 1211, 103 L. Ed. 2nd 435 (1989). "[A]n occasional act of grace by a state court in excusing or disregarding a state procedural rule does not render the rule inadequate." *Coleman v. Mitchell (Storey murder)*, 268 F. 3rd 417, 429 (6th Cir. 2001), quoting *Amos v. Scott*, 61 F. 3rd 333, 342 (5th Cir. 1995).

Petitioner notes, as *Maupin* holds, that once a procedural default is shown, it can be excused by a further showing of cause for the default and prejudice resulting from it. *Coleman v. Thompson*, 501 U.S. 722, 749, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *see also Simpson v. Jones,* 238 F. 3rd 399, 406 (6th Cir. 2000).  Petitioner also asserts that one may overcome a procedural default by showing that enforcing it would result in a "miscarriage of justice."  (Motion, Doc. No. 114, at 74.) The "miscarriage of justice" standard, which is sometimes used synonymously with "actual innocence," requires some showing of actual innocence.  In other words, they are the same standard, not alternative ways of avoiding a procedural default. *Calderon v. Thompson,* 523 U.S. 538, 118 S. Ct. 1489, 140 L. Ed. 2d 728 (1998).

Some procedural default rulings were based on the Ohio Supreme Court's enforcement of the contemporaneous objection rule.  Petitioner acknowledges that in *Scott v. Mitchell*, 209 F. 3d 854 (6th Cir. 2000), the court found Ohio's contemporaneous objection rule was an adequate and independent state ground of decision, but contends *Scott* only reviewed the state of Ohio law in 1988 and 1989. Since then, he claims, the Ohio Supreme Court has "occasionally, arbitrarily, and capriciously chosen to review the merits of issues in capital cases rather than apply the contemporaneous objection/plain error rule at least 67 times." (Motion, Doc. No. 114, at 76.)  The asserted instances are set forth in a two-page footnote. *Id.*

The footnote in question is the result either of extremely careless legal research or blatantly

disingenuous citation. Not a single one of the cases cited stands for the proposition for which it is

included. Three full days of judicial law clerk time were required to review the citations to determine

that none of them were in point.[5]

In many of the cited instances, relied on by the Ohio Supreme Court, the state rule in question

is *res judicata*, not failure to make a contemporaneous objection. The Ohio courts have consistently

enforced the criminal *res judicata* rule. *State v. Cole*, 2 Ohio St. 3d 112, 443 N.E.2d 169 (1982);

*State v. Ishmail*, 67 Ohio St. 2d 16, 423 N.E.2d 1068 (1981). The doctrine, as enunciated in *State*

*v. Perry,* 10 Ohio St. 2d 175, 226 N.E.2d 104 (1967), is an adequate and independent state ground.

*Buell v. Mitchell*, 274 F. 3rd 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F. 3d 417 (6th Cir. 2001);

*Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000), *cert. denied* 531 U.S. 1082, 121 S.Ct. 786, 148

L.Ed.2d 682 (2001); *Rust v. Zent,* 17 F. 3d 155, 160-61 (6th Cir. 1994); *Van Hook v. Anderson*, 127

F.Supp.2d 899 (S.D. Ohio 2001). Judge Moore recognizes this as a ruling of the Sixth Circuit in

*Mason v. Mitchell*,320 F.3d 604 (6th Cir. 2003), *citing Coleman v. Mitchell, supra, Rust v. Zent,*

*supra, and Riggins v. McMackin,* 935 F. 2d 790 (6th Cir. 1991).

In every single cited instance where the Ohio Supreme Court did rely on the contemporaneous

objection rule, it also found that there was no plain error. A state appellate court's review for plain

error is enforcement, not waiver, of a procedural default. *Hinkle v. Randle,* 271 F. 3rd 239 (6th Cir.

2001), citing *Seymour v. Walker*, 224 F. 3rd 542, 557 (6th Cir. 2000)(plain error review does not

constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

Petitioner also asserts that "the contemporaneous objection/plain error rule frustrates federal

_____

[5]The review task was exacerbated by counsel's failure to include pinpoint citations to the
purportedly relevant pages in the reported cases. Capital cases result, on average, in the longest
opinions from the Ohio Supreme Court, further lengthening the task. On the importance of
pinpoint citations, see A Uniform System of Citation, 18th edition, at B5.1.2

rights and fails to serve a legitimate state interest" (Motion, Doc. No. 114, at 78). Given that the federal courts also apply the contemporaneous objection rule, this argument borders on the frivolous. States have a very strong interest in the contemporaneous objection rule. *Scott v. Mitchell,* 209 F. 3d 854 (6th Cir. 2000), quoting extensively from *Wainwright v. Sykes*, 433 U.S. 72, 88-90, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977).

In addition to these general shortcomings of Petitioner's procedural default argument, there are deficiencies with the specific claims he makes as to these rulings.

**Seventh Ground for Relief:**

In his Seventh Ground for Relief, Petitioner sought the writ on the grounds that Montgomery County Common Pleas Judge Robert Brown should have recused himself when the case came to be tried before a three-judge panel rather than a jury because he had presided over the suppression hearing. The Ohio Supreme Court rejected this argument on grounds that Petitioner had never moved for Judge Brown to recuse himself (which this Court characterized as a failure to make a contemporaneous objection) and that Petitioner had expressly consented to Judge Brown's participation when he signed the jury waiver. Petitioner seeks to appeal his ruling by arguing first that Judge Brown had said he would recuse himself and second that the contemporaneous objection rule is not an adequate and independent state ground.

Petitioner should not be granted a certificate of appealability as to this Court's ruling on his Seventh Ground for Relief because he has not made a substantial showing of deprivation of any constitutional right in this Ground. It is not disputed that Judge Brown had said he would recuse himself if the case were tried to a three-judge panel, but Petitioner has not shown any way in which this created a duty for him to do so, much less a duty involving any constitutional right. Even if a

39

comment by a judge about recusal could be elevated to the level of being the law of the case, a habeas petitioner has no constitutional interest in enforcement of the law of the case per se. Certainly there is a strong constitutional interest in an impartial tribunal. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988). But Petitioner has not even attempted to make any showing that Judge Brown was prejudiced. His participation in prior proceedings in the case, including the suppression hearing, does not disqualify him. A disqualifying prejudice or bias must ordinarily be personal or extrajudicial. *United States v. Sammons,* 918 F. 2d 592 (6th Cir. 1990); *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1250 (6th Cir. 1989). That is, it "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S. Ct. 1698, 1710, 16 L. Ed. 2d 778 (1966); *see also Youn v. Track, Inc.,* 324 F. 3d 409 (6th Cir. 2003)*;Bradley v. Milliken,* 620 F.2d 1143 (6th Cir. 1980).

Petitioner asserts there is no procedural default on the Seventh Ground for Relief because the Ohio Supreme Court did not unambiguously rely on a procedural default, citing *Harris v. Reed,* 489 U.S. 255, 109 S. Ct. 1038, 103 L. Ed. 2d 308, 317 (1989), which held "federal courts ... will presume there is no independent and adequate state ground for a state court decision when the decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640, 659, (1991) quoting *Michigan v. Long*, 463 U.S. 1032 at 1040-1041, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983). Here is what the Ohio Supreme Court wrote:

> Appellant never filed a motion for Judge Brown's recusal. This failure alone would waive this issue. Furthermore, appellant's written

40

> jury waiver, signed and filed while Judge Brown was presiding, specifically states, "I * * * consent to be tried by a Court to be composed of three Judges, consisting of the Judge presiding at this time and two other Judges to be designated by the Chief Justice * * * ." (Emphasis added.)   We reject appellant's eighth proposition of law.

*State v. Keene*, 81 Ohio St.3d at 666, 693 N.E.2d 246 (1998).  A more explicit reliance on waiver would be hard to imagine.

Finally, Petitioner asserts Judge Brown had an independent duty of recusal under the Code of Judicial Conduct and the Due Process Clause.  This Court agrees that there is such a judicial duty, apart from a party's motion, but only when the judge knows he or she is biased or prejudiced or that an objective observer would reach that conclusion.  Here there is simply no evidence that Judge Brown was biased.

**Thirteenth Ground for Relief**

With respect to this Ground for Relief, Petitioner relies only on his argument that the contemporaneous objection rule is not adequate and independent.[6]  That argument is dealt with above.

**Fifteenth Ground for Relief**

Petitioner's Fifteenth Ground for Relief is pleaded as follows:

> The trial court erred by allowing the state to repeatedly introduce other acts evidence at Mr. Keene's trial, and thus denied his rights to a fair trial, due process and a reliable determination of his guilt and sentence as guaranteed by the Fifth, Sixth, Eighth, Ninth and

---

[6]All of Petitioner's argument has been directed to the adequacy prong of this requirement. He has shown no ground fro believing that the contemporaneous objection rule is not independent of federal law.

Fourteenth Amendments to the United States Constitution.

On Respondent's Motion, this Court found that that part of the Fifteenth Ground for Relief which claimed the Fila gym shoes were improper other acts evidence was defaulted because it had never been presented to the Ohio courts.

Here is what the Court wrote:

> Respondent claims that this Fifteenth Ground for Relief is partially defaulted insofar as it makes a claim that the admission in evidence of a pair of Fila gym shoes was improper other acts evidence because this claim was never presented to the Ohio courts. Petitioner counters that in his appeal to the Ohio Supreme Court, he argued that, because the Fila gym shoes were found on Demarcus Smith rather than on Petitioner, they were irrelevant and their admission in error.

> In the Ohio Supreme Court, Petitioner claimed in his Seventh Proposition of Law that other acts evidence had been improperly admitted to impeach his character in violation of Ohio R. Evid. 404. See *State v. Keene*, 81 Ohio St.3d 646, at 661 (1998). No mention is made of the Fila gym shoes as somehow constituting improper other acts evidence. Instead, the gym shoes are argued about in the Seventeenth Proposition of Law as improperly admitted because of an improper chain of custody.

> The claim that admission of the Fila gym shoes is improper other acts evidence has never been presented to the Ohio courts. A claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation. *Levine v. Torvik*, 986 F. 2d 1506 (6th Cir. 1993); *Riggins v. McMackin,* 935 F. 2d 790 (6th Cir. 1991). Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue. *Franklin*, 811 F. 2d 322 at 326; *McMeans,* 228 F. 3rd 674, 681, citing *Petrucelli v. Coombe*, 735 F. 2d 684, 688-89 (2d Cir. 1984). In further specifying the *Daye* standards, the Seventh Circuit has held that both the operative facts and the controlling legal principles must be presented to the state court. *Verdin v. O'Leary*, 972 F. 2d 1467 (7th Cir. 1992), citing *Picard v. Connor*, 404 U.S. 270, 277, 92 S. Ct. 509, 513, 30 L. Ed. 2d 438 (1971), and *Tamapua v. Shimoda*, 796 F. 2d 261 (9th Cir.

> 1986)(Kozinski, J.). Making a chain of custody argument does not fairly present a claim that the evidence in question constitutes improper other acts evidence.

Report and Recommendations (on procedural default), Doc. No. 73, at 8-9.

Petitioner now claims this ruling was in error because he did raise the Fila gym shoes in the Ohio Supreme Court in a context other than complaining about the chain of custody, to wit, he argued that because they were found on Demarcus Smith, they were irrelevant to the case against Mr. Keene. While Petitioner did make that argument in the Ohio Supreme Court, this Court expressly noted that he had done so (see immediately preceding quotation) and concluded that that was not a complaint about other acts evidence. In his instant Motion, Petitioner does no more than repeat the fact that he argued made the argument about the shoes being found on Smith rather than Keene. Petitioner does not even attempt to show why this Court's ruling is in error except by repeating the irrelevant point he made earlier in the case to the Ohio Supreme Court. He should not be granted a certificate of appealability as to this claimed error.

**Seventeenth Ground for Relief**

On Respondent's Motion, the Court found that that portion of the Seventeenth Ground for Relief (prosecutorial misconduct) which complained of the prosecutor's use of Jones Pettus' testimony to gain sympathy in the mitigation phase of the trial was procedurally defaulted because there had been no contemporaneous objection, the ground on which the Ohio Supreme Court relied. Petitioner now seeks to appeal that ruling. He claims "evidence from the trial court record constitutes clear and convincing evidence that the Ohio Supreme Court's holding was erroneous." (Motion, Doc. No. 114, at 79. However, the evidence he points to at Trial Transcript p. 1303 is during the guilt phase which he even admits ("during the trial phase"). He does not explain how, as a matter of law

43

under the contemporaneous objection rule, an objection made during one phase of a trial somehow carries over to a subsequent phase.  He does not show that trial counsel somehow asked for, much less received, a "continuing" objection to this use of the testimony.  He is left with his alternative argument that the contemporaneous objection rule is not adequate and independent, which has been dealt with above.  He should not be granted a certificate of appealability on this claimed error.

**Twentieth Ground for Relief**

In his Twentieth Ground for Relief, Petitioner argued it violated his due process right not to be tried on a duplicitous indictment when the trial court permitted the felony murder charge to go forward with the specification that the underlying felony was "burglary and/or robbery."  This Court dismissed this claim on procedural default grounds because the Ohio Supreme Court had found it waived by counsels' failure to object.  Petitioner had argued in opposition to dismissal that the Ohio Supreme Court's alternative "no plain error" ruling meant that it had not clearly relied on the failure to object as required by the unambiguous statement rule of *Harris v. Reed, supra.*  The Court rejected that argument, noting that the Sixth Circuit had rejected that argument in *Scott v. Mitchell*, 209 F. 3d 854 (6th Cir. 2000).

In seeking to appeal, Petitioner does not even acknowledge the ruling in *Scott v. Mitchell.* Nor does he acknowledge the authority to the same effect after *Scott.*  But since *Scott* the Sixth Circuit has held that a state appellate court's review for plain error is enforcement, not waiver, of a procedural default.  *Hinkle v. Randle,* 271 F. 3rd 239 (6th Cir. 2001), citing *Seymour v. Walker*, 224 F. 3rd 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).   Thus the Sixth Circuit has shown no

inclination to overrule *Scott* and Petitioner should be denied a certificate of appealability on this claimed error.

**Twenty-Fourth, Twenty-Fifth, Twenty-Sixth, and Twenty-Seventh Grounds for Relief**

In these four grounds for relief, Petitioner asserted that Ohio's method of execution is unconstitutional (24), that Ohio's death penalty scheme violates international law (25), and that Ohio's processes for selecting juries, grand juries, and grand jury forepersons discriminated against African-Americans.  The Ohio Supreme Court found all of these claims waived because they were never presented to the lower courts and this Court agreed, finding all these claims procedurally defaulted.

Petitioner now seeks to appeal those rulings, relying in part on his claim that the contemporaneous objection rule is not adequate and independent.  Here the Ohio Supreme Court did not rely on lack of contemporaneous objection, but lack of any objection at all in the lower courts.  Obviously Ohio, like any State, has a strong interest in having constitutional objections raised in the first instance in the trial courts so that an adequate record can be made and to preserve the truly appellate character of the higher courts.

Petitioner also claims he can excuse any procedural default by showing ineffective assistance of counsel.  But at every point in this case where he has made that argument, it has been purely conclusory, without any proffered argument about why what trial counsel did fell below an objective standard of performance and how he was prejudiced thereby.  Now he claims "this Court should have granted a hearing on this question."  When the Court granted Respondent's summary judgment motion on procedural default, it left Petitioner an option to make a more detailed showing with respect to ineffective assistance of counsel as cause, but Petitioner never attempted to do so (See Doc. No.

73). The Court in fact allowed Petitioner to depose his trial attorneys in an attempt to explore the ineffective assistance of counsel claim, but they failed to take the depositions.[7] While ineffective assistance can constitute cause, the burden is on a petitioner to demonstrate that ineffectiveness. He cannot appeal and then introduce evidence of ineffectiveness at the appellate level.

Petitioner should be denied a certificate of appealability as to each of his procedural default claimed errors.

**30. This Court erred in denying Petitioner an evidentiary hearing.**

Petitioner claims this Court erred in every aspect of its denial of an evidentiary hearing (Motion, Doc. No. 114, at 80-82). However, he merely recites the evidence he intended to offer at a hearing without explaining why he believes this Court's denial of a hearing was arguably in error or showing how other reasonable jurists, faced with similar offers of evidence, have allowed evidentiary hearings.

In denying an evidentiary hearing, the Court explained its reasoning at some length (Doc. No. 74). Generally, those reasons were that Petitioner had failed to explain what evidence he intended to offer (as opposed to merely presenting the names of persons who would testify) and why that evidence had not been presented to the state courts as required by 28 U.S.C. §2254(e)(2) as interpreted by the Supreme Court in *Michael Williams v. Taylor*, 529 U.S. 420, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000). The Court excluded Petitioner's unnamed expert on the Ohio death penalty

---

[7]Permission to depose trial counsel was entered September 12, 2000, and counsel were given until October 31, 2000, to complete those depositions (Doc. No. 29). On April 18, 2001, the Court ordered Petitioner to show cause why he should not be precluded from deposing counsel since he had delayed so long in doing so (Doc. No. 50). Petitioner made no response. Finally, on June 21, 2001, the Court entered an order precluding the depositions (Doc. No. 57).

under Fed. R. Evid. 702 on the grounds that Petitioner had not shown how such testimony would be helpful to this Court. Finally, the Court overruled Petitioner's "grandstanding" plan to call Ohio Supreme Court Justice Paul Pfeifer to testify on the legislative intent of a portion of Ohio's death penalty statute.[8]

Petitioner has offered no argument in his Motion as to why this decision was arguably wrong and thus is not entitled to a certificate of appealability to challenge it on appeal.

**31. This Court erred in denying a certificate for interlocutory appeal.**

On November 29, 2001, Petitioner sought a certificate for an interlocutory appeal under 28 U.S.C. §1292(b) on the following questions

1. "Whether a federal habeas court should apply the standards for granting an evidentiary hearing to a petitioner's discovery requests." (Doc. No. 66 at 3)

2. "Whether a habeas court may deny discovery on the basis that the petitioner failed to meet the standard for relief." *Id*. at 7.

3. "Whether a ground for relief alleging a three-judge panel's failure to abide by Ohio's death penalty sentencing statutes sets forth a claim cognizable in habeas." *Id*. at 9.

In denying the Motion, the Court accepted hypothetically that these three questions might be "controlling questions of law" as required by 28 U.S.C. §1292(b), concluded that allowing an appeal would not "materially advance the ultimate termination of the litigation because the Sixth Circuit was

---

[8]Justice Pfeifer was a leading member of the Ohio Senate when Ohio's current death penalty legislation was enacted in the 1980's. However, the views which Justice Pfeifer was expected to express had already been expressed in dissenting opinions in the Ohio Supreme Court. A federal court is bound by statutory interpretations concurred in by a majority of a state supreme court. *Caldwell v. Russell*, 181 F. 3d 731 (6th Cir. 1999).

at that point at half strength and it had taken Petitioner five months to request the certificate from the date the relevant order was entered.

Petitioner now seeks to appeal that denial.  He cites no authority for the proposition that denial of a certificate for interlocutory appeal can ever be error, much less authority to prove this particular denial was error.  Certainly if the Sixth Circuit grants a certificate of appealability as to any claimed error related to these three questions and reverses this Court's decision on one of them so as to require remand and further proceedings, it might be speculated that getting those questions decided three years ago (assuming the Sixth Circuit would have accepted the appeal and decided it within a year) would have materially advanced the termination.  But that is not sufficiently probable speculation to deserve encouragement for its pursuit.  Petitioner should be denied a certificate of appealability on this claimed error.

**32.     This Court erred in denying Petitioner's Motion for Discovery.**

Petitioner sought a broad range of discovery.  He proposed to depose all three trial judges, all the Assistant County Prosecutors involved with the case, six Dayton Police Officers, a co-defendant, two witnesses, and several others.  He sought leave to issue subpoenas for a breathtakingly broad set of documents.[9]  The Court granted some discovery and denied others.  Petitioner now seeks to appeal each of the denials, or at least has listed all the discovery he didn't get in this portion of his Motion (Motion, Doc. No. 114, at 86-88).  His entire argument for appealability consists of citing the *Bracy*

---

[9]E.g., all documents in the Prosecutor's Office describing all Montgomery County homicides from January 1, 1981, to the present (¶ 1); all notes of the trial judges and their law clerks about the case (¶¶ 2 and 3).

*v. Gramley*, 520 U.S. 899 (1997), good cause standard and declaring "[a] court of appeals should be permitted to review this matter as it could dispute the Court's decision." Id. at 88. The speculation that a court of appeals could disagree hardly constitutes a showing that reasonable jurists would disagree.

Petitioner should be denied a certificate of appealability on his thirty-second claimed error for appeal.

### Conclusion

Having reviewed each of the errors which it appears Petitioner wishes to present on appeal, the Court concludes that Petitioner has failed to demonstrate as to any of them that reasonable jurists would disagree with this Court's conclusions or that he should be encouraged to proceed further. The Motion for Certificate of Appealability should be denied in its entirety.

September 7, 2005.

s/ **Michael R. Merz**
Chief United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).