RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 08a0165p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT



MARVALLOUS KEENE,

    *Petitioner-Appellant,*

    *v.*

BETTY MITCHELL, Warden,

    *Respondent-Appellee.*

No. 05-3538

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 00-00421—Sandra S. Beckwith, Chief District Judge.

Argued: January 28, 2008

Decided and Filed: April 25, 2008

Before: MERRITT, SILER, and SUTTON, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Pamela Prude-Smithers, PUBLIC DEFENDER'S OFFICE, OHIO PUBLIC
DEFENDER COMMISSION, Columbus, Ohio, for Appellant. Thomas E. Madden, OFFICE OF
THE ATTORNEY GENERAL OF OHIO, Columbus, Ohio, for Appellee. **ON BRIEF:** Pamela
Prude-Smithers, Kelly L. Culshaw, PUBLIC DEFENDER'S OFFICE, OHIO PUBLIC DEFENDER
COMMISSION, Columbus, Ohio, for Appellant. Thomas E. Madden, OFFICE OF THE
ATTORNEY GENERAL OF OHIO, Columbus, Ohio, for Appellee.

_____

## OPINION

_____

    SILER, Circuit Judge. Marvallous Keene, an Ohio death row inmate, appeals from the
district court's denial of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.
Two issues were certified for appeal: (1) whether Keene was denied equal protection when the
prosecutor allegedly selectively prosecuted him because he is African-American; and (2) whether
his due process rights were violated when a pretrial identification procured by allegedly unduly
suggestive procedures was admitted into evidence at trial. We affirm the district court's denial of
Keene's habeas petition.

No. 05-3538                    *Keene v. Mitchell*                                    Page 2

## BACKGROUND

In 1992, Keene went on a crime spree and committed multiple homicides. The details of his crime spree can be found at *State v. Keene*, 693 N.E.2d 246, 250-52 (Ohio 1998). He was indicted on eight counts of aggravated murder, six counts of aggravated robbery, one count of aggravated burglary, one count of burglary, two counts of kidnapping, and two counts of attempted aggravated murder. *Id.* at 251-52. The first murder count carried six death specifications (course of conduct, escaping detection, two aggravated robbery, two aggravated burglary), the second murder count carried four death specifications (course of conduct, witness-murder, two kidnapping), the third count carried three death specifications (course of conduct, witness-murder, kidnapping), and the fourth and fifth counts each carried two death specifications (course of conduct, aggravated robbery). *Id.* All counts carried a firearm specification. *Id.* at 252. Keene waived his jury trial rights and a three-judge panel found him guilty of all the charges. *Id.* Following the guilt phase, the panel merged the aggravated murder charges and reduced the number of those convictions to be considered in the sentencing phase to five. *Id.* The panel imposed five sentences of death. *Id.* The convictions and sentences were affirmed on direct appeal. *State v. Keene*, 1996 WL 531606, at *70 (Ohio Ct. App. Sept. 20, 1996), *aff'd*, 693 N.E.2d at 267.

In 2000, Keene filed a petition for a writ of habeas corpus in the district court pursuant to 28 U.S.C. § 2254. He raised 30 claims of constitutional error, but the magistrate judge reported that his arguments lacked merit and that his petition should be denied. In 2005, the district court overruled Keene's objections and adopted the magistrate judge's report and recommendations.

## ANALYSIS

We review de novo the district court's denial of a petition for a writ of habeas corpus. *Cone v. Bell*, 492 F.3d 743, 750 (6th Cir. 2007). Keene's habeas petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996 because he filed his petition after the effective date of the Act, April 24, 1996. *Whiting v. Burt*, 395 F.3d 602, 609 (6th Cir. 2005). An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). Clearly established Federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision. *McCalvin v. Yukins*, 444 F.3d 713, 719 (6th Cir.) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)), *cert. denied*, 127 S. Ct. 510 (2006).

### *Equal Protection Claim*

Keene first argues that his equal protection rights were violated because the prosecutor for Montgomery County, Ohio, sought the death penalty against him because he is African-American. In support of this argument, he asserts that African-Americans constitute 17 percent of the county's population but account for 64 percent of capital indictments. He points to a "factually similar aggravated murder" case in which the prosecutor did not seek the death penalty against three white males. He argues that the other adult defendant in this case, Heather Matthews, who is a white female, was similarly situated to him but was not charged with capital specifications. The Ohio Supreme Court denied Keene relief on this claim because it found that there was no evidence that similarly-situated defendants could have been prosecuted but were not. *Keene*, 693 N.E. 2d at 253. The Ohio Supreme Court did not violate clearly established Federal law when it denied him relief

on this claim because he was unable to make a showing of bias under *McCleskey v. Kemp*, 481 U.S. 279, 292-93 (1987); and *Coleman v. Mitchell*, 268 F.3d 417, 441-42 (6th Cir. 2001).

The Ohio Supreme Court stated that Keene's argument regarding the racial disparity:

> appears to rest on a presumption that, if seventeen percent of the county's population is black, then blacks must have committed about seventeen (or, at any rate, substantially less than sixty-four) percent of potentially capital crimes. Appellant argues that even to question that presumption would constitute forbidden racial stereotyping. However, that cannot be correct, for the *Armstrong* court itself rejected a presumption "that people of *all* races commit *all* types of crimes."

*Keene*, 693 N.E.2d at 254. We find this reasoning persuasive. A defendant who alleges an equal protection violation bears the burden of proving the existence of purposeful discrimination. *United States v. Armstrong*, 517 U.S. 456, 465 (1996); *McCleskey*, 481 U.S. at 292. In *McCleskey*, the Supreme Court held that a study indicating that the death penalty in Georgia was imposed more often on black defendants and killers of white victims than on white defendants and killers of black victims failed to establish that any of the decision makers in the habeas petitioner's case acted with discriminatory purpose in violation of the Equal Protection Clause. 481 U.S. at 292. Each decision to impose the death penalty is made by a jury "unique in its composition" and "the Constitution requires that its decision rest on consideration of innumerable factors that vary according to the characteristics of the individual defendant and the facts of the particular capital offense." *Id.* at 294. Thus, in *Coleman*, we rejected a habeas petitioner's equal protection challenge based on a study that found a racial discrepancy between the African-American population in Ohio (9 percent) and African-American representation on Ohio's death row (49 percent) because the petitioner could not make a showing of discrimination specific to him under *McCleskey*. *Coleman*, 268 F.3d at 441. Like the habeas petitioner in *McCleskey*, Keene "offers no evidence specific to his own case that would support an inference that racial considerations played a part in his sentence." 481 U.S. at 292-93.

Keene's argument that the prosecutor did not seek the death penalty against similarly-situated white defendants has no merit. In addition to showing a discriminatory purpose, an equal protection claimant must show that a prosecutorial policy had a discriminatory effect. *Armstrong*, 517 U.S. at 465. To establish a discriminatory effect in a race case, the claimant must show that similarly-situated individuals of a different race were not prosecuted. *Id.* There were significant differences between Keene's prosecution and the allegedly similar case where the prosecution did not seek the death penalty against three white defendants.

Three white men, Elofskey, Howe, and Polson, robbed and murdered two men under the guise of providing sexual favors in exchange for money. *State v. Howe*, 1994 WL 527612, at *1-2 (Ohio Ct. App. Sept. 30, 1994). These defendants were accused of murdering two individuals, while Keene had five murder convictions that the panel considered at sentencing. Elofskey and Polson agreed to plead guilty and cooperate with the prosecution by testifying against Howe. *Id.* at *1. Keene and Howe are not similarly situated because the evidence against Howe was much weaker than the evidence against Keene. The jury acquitted Howe for one of the two murders for which he was charged. *Id.* at *3. Moreover, unlike Keene, Howe was acquitted of the firearm specifications attached to all of the charges against him. *Id.* Thus, Keene was not similarly situated to Elofskey, Polson, or Howe.

Keene argues that his co-defendant, Matthews, is similarly situated to him and the prosecutor's decision not to seek the death penalty against her shows the prosecutor's racial bias. However, Mathews is not similarly situated because, unlike Keene, she was not the triggerman for any of the murders. *Keene*, 693 N.E.2d at 254. She was charged with only two of the murders and,

while she participated in those murders, there was "no clear evidence" that she "actually intended" the deaths of the two victims. *Id.* In contrast to Mathew's relatively minor role in only two of the murders, Keene was the triggerman in four out of the five aggravated murders. *Id.* at 253. Keene's equal protection rights were not violated because he has not demonstrated that the prosecutor's decision to pursue the death penalty against him was motivated by a discriminatory purpose and he has not shown a discriminatory effect.

### *Eyewitness Testimony*

Keene argues that his due process rights were violated when a pretrial identification procured by unduly suggestive procedures was admitted into evidence at trial. From two sheets of police photographs, Kathie Henderson identified Keene as the man who stole her car from her at gunpoint. She testified that she did not recall giving a description of the man to the police. She later testified that she told the police that the man "had a hairstyle like the boy in the movies- the box, squared hair, you know." She picked Keene from the photo sheets but no other person in the photo sheets had a box haircut.

The Ohio Supreme Court and the district court found that even if the identification procedure was unduly suggestive, any error was harmless. We agree. The admission of the pretrial identification did not violate clearly established Federal law. "The Supreme Court has held that an identification violates a defendant's right to due process where the identification procedure was so unnecessarily suggestive as to run the risk of irreparable mistaken identification." *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005) (citing *Neil v. Biggers*, 409 U.S. 188, 198 (1972)). However, we consider "the reliability of the identification in determining its admissibility; if an identification is reliable, it will be admissible even if the confrontation procedure was suggestive." *Carter v. Bell*, 218 F.3d 581, 605 (6th Cir. 2000) (citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)). We consider the totality of the circumstances to determine whether an identification is reliable. *Howard*, 405 F.3d at 472. In considering the totality of the circumstances, we pay special attention to five factors. *Id.* First, we consider the opportunity of the witness to view the defendant at the initial observation, second we consider the witness' degree of attention, third we consider the accuracy of the witness' prior description of the defendant, fourth we consider the level of certainty shown by the witness at the pretrial identification, and finally we consider the length of time between the initial observation and the identification. *Carter*, 218 F.3d at 605 (citing *Biggers*, 409 U.S. at 199-200). We must weigh these factors against the corrupting effect of the suggestive identification. *Howard*, 405 F.3d at 472.

Even if the identification was unduly suggestive, it was reliable under the totality of the circumstances. First, Henderson had ample opportunity to view Keene at the initial observation. We are more likely to find an identification reliable when the witness was able to view the assailant with a heightened degree of attention, as compared with disinterested bystanders or casual observers. *See Haliym v. Mitchell*, 492 F.3d 680, 705 (6th Cir. 2007). Henderson had ample opportunity to observe Keene because they were separated only by the width of her vehicle as they stood near a well-lit gas station. He asked her for a quarter and she looked at him and informed him she did not have one. A few minutes later he held her at gunpoint and stole her car, undoubtedly calling her undivided attention to him. Second, she had reason to pay a high degree of attention to him. After he asked for a quarter, Henderson saw the man talking to a third person. The third person told the man "If you're- do what you're going to do. If you're going to kill her, come on." The man who asked for the quarter walked back to Henderson's car, pointed a gun at her, and said "You'll die today." Henderson looked at the man's face and paid special attention to his eyes. Third, Henderson's prior description of Keene that she gave to the police was accurate, although not very detailed. She testified that the man who accosted her had a box style haircut, and Keene had such a haircut. Fourth, she displayed a high degree of certainty at the pretrial identification. Finally, the

No. 05-3538                    *Keene v. Mitchell*                                    Page 5

time period between the initial observation and the identification was short.  She identified Keene from two sheets of photographs only two days after the incident.

Moreover, taking into consideration other circumstances, Henderson's identification is reliable because there is overwhelming evidence that Keene accosted Henderson at the gas station and stole her car.  Keene confessed to stealing a car at the gas station on the morning in question. *Keene*, 693 N.E.2d at 258.  Mathews testified that she saw him do it. *Id.*  Keene was in Henderson's car when he was arrested. *Id.*  Keene switched the plates on Henderson's car with those of a car belonging to Joseph Wilkerson, whom Keene had murdered. *Id.*  When police found Wilkerson's car, it had Henderson's plates on it. *Id.*  Finally, we note that any error in admitting the identification was harmless because the identification only related to an armed robbery charge for stealing Henderson's car at gunpoint. *Id.*  The identification had no bearing on any of the counts for which Keene received a death sentence. *Id.*

AFFIRMED.